IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GAIL KERNAGHAN,                              )
                                             )        C.A. No.  05-402 (GMS)
     Plaintiff,                             )
                                             )
     v.                                     )
                                             )
METROPOLITAN LIFE INSURANCE                  )
COMPANY, as fiduciary and administrator      )
of The IBM Long-Term Disability Plan,        )
                                             )
     Defendant.                             )

**PLAINTIFF'S OPENING BRIEF**
**IN SUPPORT OF PLAINTIFF'S MOTION**
**<u>FOR SUMMARY JUDGMENT</u>**


Rick S. Miller (#3418)
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899-1351
(302) 575-1555
Attorney for Plaintiff

Dated: March 30, 2006

# **TABLE OF CONTENTS**

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Statement of the Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . . 1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       The Defendant's Decision to Terminate the
       Plaintiff's LTD Benefits is an Abuse of Discretion . . . . . . .  10

       A.  Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . 10

       B.  ERISA Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . 10

       C.  Merits of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

Page

## Cases

Byrom v. Delta Family Care-Disability and Survivorship Plan,
    343 F. Supp.2d 1163 (N.D. Ga. 2004) . . . . . . . . . . . . . . . . . . . . . . . 19

Courson v. Bert Bell NFL Player Ret. Plan,
    214 F.3d 136 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Evans v. UnumProvident Corp.,
    434 F.3d 866 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hunter v. Federal Express Corp.,
    2004 WL 1588229 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lasser v. Reliance Standard Life Ins. Co.,
    344 F.3d 381 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McDonald v. Western-Southern Life Ins. Co.,
    347 F.3d 161 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Migliaro v. IBM Long Term Disability Plan,
    231 F. Supp.2d 1167 (M.D. Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . 20

Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997) . . . . . . . . . . 11

Pa. Coal Ass'n. v. Babbitt, 63 F.3d 231 (3d Cir. 1995) . . . . . . . . . . . . . . 10

Sanderson v. Continental Cas. Co.,
    279 F. Supp.2d 466 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 16

## <u>TABLE OF AUTHORITIES (CONT'D.)</u>

Skretvedt v. E.I. Dupont de Nemours & Co.,
     268 F.3d 167 (3d Cir. 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Vick v. Metropolitan Life Ins. Co.,
     -- F. Supp.2d  --, 2006 WL 416185 (E.D. Mich.) . . . . . . . . . . . 13,18

### <u>Statutes</u>

Employee Retirement Security Act of 1974 ("ERISA") . . . . . . . . . . .  passim

### <u>Other Authorities</u>

Fed. R. Civ. P. 56(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATEMENT OF THE NATURE AND STAGE
## OF THE PROCEEDINGS

Gail Kernaghan ("plaintiff") filed this suit under the Employee

Retirement Security Act of 1974 ("ERISA") to challenge the termination of

her benefits under the IBM Long Term Disability Plan ("LTD Plan").

Defendant Metropolitan Life Insurance Company ("defendant" or

"MetLife") provides claims review for the LTD Plan and is a fiduciary under

the LTD Plan.  (D.I. 5, ¶2).[1]  Discovery has been completed.  This is the

plaintiff's opening brief in support of her motion for summary judgment.

---

[1]Citations to the Court's docket are hereinafter referred to as (D.I. ____).

1

## SUMMARY OF THE ARGUMENT

I.  The plaintiff is entitled to summary judgment in this case because the administrative record demonstrates that the defendant abused its discretion in terminating the plaintiff's LTD benefits.  The defendant acted in an arbitrary and capricious fashion by relying on an opinion of a physician consultant who did not examine the plaintiff and did not address the critical findings of the plaintiff's treating physicians and a prior IME doctor.  The physicians who have examined the plaintiff, including an independent examiner hired by the defendant, have concluded that the plaintiff remains disabled from any gainful occupation. Furthermore, the labor market survey relied upon by the defendant does not take into consideration critical aspects of the plaintiff's medical history including her use of chronic pain medications and her depression.

## STATEMENT OF FACTS

The plaintiff was hired by IBM in 1985.  (ML634).[2]   At the time she applied for LTD benefits, the plaintiff was an advisory programmer for IBM. (ML638).  In January 1993, the plaintiff broke her back while sledding. (ML631,642).  In August 1994, the plaintiff applied for LTD benefits. (ML631).  Her treating physicians found her to be disabled from any occupation.  (ML643, 646).

On January 20, 1995, the defendant approved the plaintiff's LTD claim.  (ML378).  In 1997, the defendant scheduled an IME for the plaintiff with a neurosurgeon, Dr. Yanez.  (ML246).  Dr. Yanez agreed with the treatment proposed by plaintiff's treating physicians.  (ML248).  The doctor further stated that he could not opine on whether she was able to return to work.  (Id.).

In June 1999, the plaintiff's treating physician, Dr. Mousavi, again stated that the plaintiff was disabled from all work.  (ML146).  He noted her progress was unimproved and that the suffered from depression.  (ML147). His diagnosis was repeated in March 2001.  (ML502).

In June 2001, the defendant employed a physician consultant, Dr.

---

[2]Citations to the administrative record are hereafter referred to as "ML_____."

3

Jeffrey Kahn, to give an opinion as to the plaintiff's disability. (ML493). Dr. Kahn stated that a functional capacity evaluation ("FCE") would not be necessary unless the plaintiff was being prepared to return to work in something greater than a sedentary or light duty capacity. (Id.). Dr. Kahn did recommend an independent medical examination ("IME"). (Id.). He stated that he did not believe she was disabled from "any occupation" but would not comment as to her specific occupation. (ML 494). He stated that she could work part-time in a sedentary position. (Id.).

In August 2002, and again on March 31, 2003, and again on November 20, 2003, the plaintiff's treating physician, Dr. Upadhyay filled out the defendant's form giving an evaluation of the physical activities from which the plaintiff was restricted. (ML106). Among other things, the doctor restricted the plaintiff to a total of six hours sitting per day, with no more than 30 minutes prolonged sitting. (Id.). In February 2002, Dr. Upadhyay completed a functional capacity evaluation in which he stated that the plaintiff had a permanent injury, which was stable on medication. (ML492). The doctor further stated that her medications caused sedation and decreased concentration. (Id.). The doctor concluded she remained permanently disabled from any occupation. (Id.).

In April 2002, the defendant hired Dr. James Bonner to conduct an independent medical examination ("IME") on the plaintiff. (ML482). After reviewing the plaintiff's medical records and conducting a physical examination that lasted over hone hour (ML487), Dr. Bonner concluded as follows:

> In summary, this patient has evidence of chronic pain syndrome secondary to burst fracture of L3 with ongoing evidence of lumbar radiculopathy. She also has evidence of some cognitive dysfunction secondary to medication. In addition, she is an insulin dependent diabetic. Presently, her objective findings do correlate with her subjective complaint and she is a credible historian with no evidence of inappropriate pain behavior. The patient remains disabled from her occupation. Her physical capacities would fall in the classification of sedentary/light with the ability to get up and move around, *but is significantly limited by her present medications*. (ML484)(emphasis added).

In July 2002, the defendant conducted surveillance on the plaintiff. The report of the investigator revealed no outside activity on the part of the plaintiff. (ML109-110).

In February 2004, the defendant sent a nurse to visit with the plaintiff to conduct a home medical assessment. (ML97). The nurse noted that the plaintiff was friendly and cooperative throughout the visit. (Id.). The nurse concluded that the plaintiff's "potential to return to work is impacted by the

claimant's perception of her pain." (ML101).[3]

At the defendant's request, the plaintiff underwent an FCE on April 26, 2004. (ML82). The physical therapist who administered the test, noted that the plaintiff gave maximum effort. (Id.). The therapist concluded that based on her physical abilities, the plaintiff could be employed in a sedentary capacity, for eight hours per day, five days per week. (Id.). The defendant sent a copy of the therapist's report to the plaintiff's treating physician and solicited his comments. (ML52).

Next, the defendant hired a vocational consultant to determine the availability of sedentary duty employment in the Delaware area. (ML39). The consultant concluded that sedentary duty jobs existed in the Delaware geographic area for which the plaintiff was suited. The only deterrent, according to the consultant, was the fact that the plaintiff had been out of the work force for so long. (ML47).

On October 19, 2004, the defendant terminated the plaintiff's LTD benefits to be effective November 19, 2004. The defendant concluded that the plaintiff was capable of performing sedentary work and that such work

---

[3]This comment was repeated almost verbatim by the physician consultant referenced in the appeal decision dated January 6, 2004. (ML3).

was generally available in the Delaware area.  (ML24).

On October 29, 2004, Dr. Upadhyay re-dictated a report originally dictated in May 2004.  (ML18).  The report was provided to the defendant. In his report, Dr. Upadhyay repeated his conclusion that the plaintiff remained totally disabled from any occupation.  (ML19).  He stated she was taking several types of medications.  He also discounted the findings of the FCE stating:

> This functional capacity evaluation does not include or test the effects of prolonged sedentary activity, such as prolonged sitting, standing, and work place environment activities for more than a four hour period.  It also does not test day in and day out, week upon week effect of this type of work duty on the patient's low back condition. (Id.).

On November 10, 2004, the plaintiff's former husband sent a letter to the defendant describing the myriad ways and profound manner in which her disability has impacted her life.  (ML12).

On January 6, 2004, the defendant completed the review of the administrative appeal filed by the plaintiff.  (ML1).  The defendant upheld the original ruling terminating LTD benefits. As part of appellate review, the defendant used an Independent Physician Consultant to once again review the medical records.  The Consultant did not examine the plaintiff.

7

Assuming (without conceding) that the appeal decision is a thorough and accurate restatement of the Consultant's report, for the most part, all the Consultant did was re-state the findings in some of the medical records. The Consultant's conclusion was as follows:

> Objectively, she is able to participate in sedentary-to-light activities that she chooses to pursue such as laundry, driving, computer use, occasional volunteer at the library, etc. I do not see a reason to restrict sedentary-to-light activity that she wishes to pursue on a medical basis. Restrictions in regard to lifting greater than 15-20 lb on an occasional basis, frequent push/pull work and frequent overhead work is warranted given her history of L3 compression fracture with mild degenerative disk disease and right shoulder tendinopathy. She should be allowed to change position on an every 30- to 60- minute basis. (ML719).

The IPC noted Dr. Upadhyay's critique of the FCE as a diagnostic tool, but did not offer her own opinion. (ML717). The IPC also noted the evidence in the file that the plaintiff suffered from cognitive dysfunction. (ML718). The IPC did not question Dr. Bonner's assessment of cognitive dysfunction, but she did conclude that because no testing had been done, there was no objective support for it in the file. (Id.). Although the IPC was aware of the plaintiff's medication regiment, she did not offer an opinion as to the impact of the plaintiff's chronic use of pain medications on her functionality.

8

Although she noted them in her report, the IPC also did not comment on the findings of the treating physicians, and the IME doctor, Dr. Bonner, who all concluded that the plaintiff was totally disabled from any occupation. Finally, the IPC apparently did not review, and certainly did not comment on, the records from Dr. Mousavi indicating that the plaintiff suffered from depression.  The IPC did note Dr. Upadhyay's statement that the plaintiff suffered from anxiety disorder secondary to chronic illness. (ML716).  But again, she failed to comment on that particular problem.

# ARGUMENT

## THE DEFENDANT'S DECISION TO TERMINATE THE PLAINTIFF'S LTD BENEFITS IS AN ABUSE OF DISCRETION.

### A.  Standard for Summary Judgment.

A court will grant summary judgment where the record does not disclose any genuine issues of material fact, and where the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must demonstrate that no genuine issues of material fact exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, n.10 (1986).   If the moving party has sustained this burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is an issue for trial.  Id. at 587.  The Court views the facts in the record, including all reasonable inferences to be drawn therefrom, in a light most favorable to the non-moving party.  Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### B.  ERISA Standard of Review.[4]

Where an ERISA plan grants the fiduciary discretionary authority, a

---

[4]Plaintiff concedes that (i) the LTD Plan grants discretionary authority to the defendant and (ii) that the LTD Plan is funded by the employer, IBM, rather than the defendant.  Therefore, plaintiff agrees that the proper standard of review is "arbitrary and capricious."

court must apply the arbitrary and capricious standard of review, under
which the fiduciary's determination will be upheld unless it was made
"without reason, [is] unsupported by substantial evidence, or erroneous as a
matter of law." Skretvedt v. E.I. Dupont de Nemours & Co., 268 F.3d 167,
174 (3d Cir. 2001)(citations omitted). "A decision is supported by
substantial evidence if there is sufficient evidence for a reasonable person to
agree with the decision." Courson v. Bert Bell NFL Player Ret. Plan, 214
F.3d 136, 142 (3d Cir. 2000). In exercising its review, the Court must
consider the whole record before the fiduciary at the time of the fiduciary's
decision. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997).
The arbitrary and capricious standard is not merely a "rubber stamp" for the
fiduciary's decision. McDonald v. Western-Southern Life Ins. Co., 347 F.3d
161, 169 (6th Cir. 2003). The standard must include "some review of the
quality and quantity of the medical evidence and the opinions of both sides
of the issues." Id. at 172.

### C.    The Defendant's Termination of the Plaintiff's LTD Benefits was an Abuse of Its Discretion.

The LTD Plan reads in pertinent part,

Under the Long-Term Disability Plan. . . totally disabled means
that, because of sickness or injury, you can not perform the
important duties of your occupation or any other gainful

11

occupation for which you are reasonably fit by your education, training or experience. (ML1).

In its decision to terminate the plaintiff's LTD benefits, the defendant determined that (1) the plaintiff could perform sedentary work on a full-time basis and (2) gainful occupations which are sedentary in nature exist in the plaintiff's geographic area.  The conclusion that the plaintiff can perform even sedentary work on a full-time basis lacks reason because it conflicts with the medical evidence in the record that the plaintiff suffers from a chronic physical disability, has cognitive deficits due to narcotic pain medications and suffers from depression.

The defendant abused its discretion by placing undue weight on the opinion of the Independent Physician Consultant ("IPC") and rejecting without explanation the opinions of the plaintiff's treating physicians and the defendant's own Independent Medical Examiner ("IME").  The IPC's report is severely deficient because there is no indication that the IPC reviewed the entire medical file, and there is no indication that the IPC actually refuted the findings of the treating doctors or the IME doctor.

The IPC did not examine the plaintiff.  The IPC performed only a "paper review" of certain evidence.  Although a paper review is permissible

under ERISA, the failure to conduct a physical examination "may raise questions about the thoroughness and accuracy of the benefits determination." Evans v. UnumProvident Corp., 434 F.3d 866, 877 (6th Cir. 2006). See also Hunter v. Federal Express Corp., 2004 WL 1588229 (E.D. Pa.) at *11, fn.17 ("We merely emphasize that the opinions of physicians who examine a patient are inherently more reliable that the opinions of those who do not."). In this case, it is reasonable to infer that the defendant chose not to order another IME for the plaintiff because it did not care for the result it received from the Bonner IME. The defendant pre-ordained the result. It wanted to terminate the plaintiff's benefits and the best way to ensure that happened was to have a physician do a record review. Otherwise it ran the risk that a physician performing an actual examination would draw the same conclusion as Dr. Bonner.

In addition, the Court must take into account the inherent conflict of interest that arises when an ERISA fiduciary such as the defendant employs physicians to perform file reviews. See Vick v. Metropolitan Life Ins. Co., --F. Supp.2d --, 2006 WL 416185 (E.D. Mich.) at *9. The defendant has a clear incentive to contract with physicians who are inclined to find in the defendant's favor. Id. Accordingly, the IPC's report should not be accorded

13

the weight of the treating physicians, much less the weight of Dr. Bonner's report, which was an IME report with findings contrary to the interests of the defendant.

The quality of the IPC report is also deficient. It is neither thorough nor accurate. The IPC focuses solely on one narrow issue: the conclusion that the plaintiff is capable of sedentary work. Neither the IPC nor the defendant address the following issues that are evident in the administrative record:

A) Dr. Upadhyay's opinion that the FCE is a poor gauge for assessing vocational disability because the FCE is merely a snapshot of the plaintiff's physical abilities. The FCE can not and does not measure the day-to-day toll of employment on the plaintiff. It is undisputed that she has a chronic pain condition that requires narcotic pain management.

B) Dr. Bonner's assessment that the plaintiff suffers from cognitive dysfunction due to her pain medications. The record does not reflect that the IPC, the defendant, or even the defendant's vocational expert took into consideration the fact that the plaintiff will be on narcotic pain medications for the foreseeable future and the impact those medications have on her disability and employability. Indeed, given the positions located by

14

the vocational expert, nearly all of which require managerial responsibilities, one would logically conclude that the daily use of narcotic pain medications and resultant cognitive dysfunction would figure prominently in the analysis. There is more to work than sitting in a chair, particularly when, as a manager, a person must interact with others and apply abstract thought to solve problems. Neither the IPC, the defendant's benefit determination, nor the defendant's vocational expert considered the impact of the plaintiff's reliance on medications on these issues.[5]

The IPC did decry what she believed to be a lack of objective testing to confirm the cognitive dysfunction. But that is not the same as stating that Dr. Bonner was wrong in his assessment. If anything, the lack of objective testing militates more against the defendant's benefit adjudication. There is only one diagnosis in the file, that the plaintiff suffers from cognitive dysfunction. If the defendant believed that diagnosis to be incorrect, it should have ordered a neuro-psychological evaluation to confirm its suspicions. But the defendant did no such thing, and the IPC did not

---

[5]Even the nurse consultant hired by the defendant concluded that the plaintiff's "perception of her pain" influenced her ability to return to work. The IPC repeats that conclusion in her report, but performs absolutely no analysis on it. Even if the plaintiff's pain was only "perceived," a conclusion that can not be drawn from the medical record, it would still impact her ability to function in the work force.

15

conclude that the diagnosis was wrong.

C) The IPC also does not discuss Dr. Mousavi's conclusion that the plaintiff suffers from depression or Dr. Upadhyay's conclusion that she suffers from anxiety disorder. Moreover neither the defendant nor the defendant's vocational expert factor the plaintiff's depression or anxiety disorder into the employability analysis. The plaintiff's depression or anxiety disorder are not considered either as disabling conditions in and of themselves, or as contributing factors acting in concert with her physical conditions and medication issue.

This Court has held that an ERISA fiduciary such as the defendant must give reasons and bases for its decision to credit certain evidence, and must reconcile conflicting evidence. Sanderson v. Continental Cas. Co., 279 F. Supp.2d 466, 475 (D. Del. 2003). The defendant in this case does neither. The defendant does not explain why it rejects the reports of the plaintiff's treating physicians and the IME doctor, Dr. Bonner. The defendant also does not explain why the IPC's conclusion that the plaintiff may perform sedentary tasks of her own choosing is entitled to greater weight than the conclusions of the other medical professionals that the plaintiff remains disabled due to her severe physical ailments, her cognitive difficulties, and

16

her depression.  Furthermore, the defendant can not simply point to the

IPC's report as a way of reconciling the conflicting medical evidence

because the IPC does not refute the conflicting opinions either.

The defendant may not reject reliable medical evidence without some

objective basis for its conclusion:

> [O]nce a claimant makes a *prima facie* showing of disability
> through physicians' reports. . . and if the insurer wishes to call
> into question the scientific basis of those reports (as Reliance
> has attempted to do here), then the burden will lie with the
> insurer to support the basis of its objection.

Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 391 (3d Cir. 2003).

The defendant in the case at bar fails at this task.  Dr. Upadhyay stated that

the FCE was not a reliable indicator and gave valid reasons to support his

conclusions.  The defendant was silent as to those opinions and offered no

scientific testimony to refute it.  Similarly, Dr. Bonner stated that the

plaintiff has cognitive dysfunction tied to her use of pain killers.[6]  And Dr.

Mousavi stated that the plaintiff suffers from depression, largely brought on

---

[6]The Court should note that there is not a shred of evidence that the plaintiff will not require pain killers for the foreseeable future.  No doctor, not even the IPC, has opined that the plaintiff's physical condition has improved, or is likely to improve.  Furthermore, the defendant can point to nothing in the medical record that her condition has improved from the time of Bonner's IME to this date.  Without evidence of improvement in the plaintiff's medical condition, one wonders how the defendant could suddenly conclude she is not disabled after nearly ten years of concluding otherwise.

by her physical condition.  The defendant offers nothing objective or scientific to refute the opinions of these medical professionals.

The case at bar resembles the <u>Vick</u> case, <u>supra</u>.  In <u>Vick</u>, MetLife chose to rely upon the reports of two physicians it employed to do file reviews.  The court found those file reviews to be incomplete and contradictory to the objective evidence relied upon by the treating physicians.  2006 WL 416185  at *12.  The court found that MetLife abused its discretion by *not* crediting the reliable evidence set forth in the record by the treating physicians.  <u>Id.</u> at *11.  MetLife has repeated that failure here.  It has chosen to disregard, for no stated reason, the opinions of Drs. Upadhyay, Bonner and Mousavi that the plaintiff is totally disabled.  Dr. Bonner's opinion, of all, should carry the most weight with the defendant since he was chosen by the defendant, and he actually examined the plaintiff.  The defendant never explains why Dr. Bonner's opinion is no longer valid.

Against all of the medical evidence supporting the conclusion that the plaintiff remains totally disabled, the single piece of evidence arguably supporting the defendant's conclusion is the FCE.[7]  This test was not

---

[7]One can not consider the IPC's report as independent evidence because all the IPC did was recite the findings of the FCE and rely on those findings.

18

administered by a physician, it was administered by a physical therapist.  As
already stated, a physician has questioned the results of the FCE as a poor
indicator of the day-in and day-out toll a job takes on the body.  Dr.
Upadhyay is not alone in this critique.  In Byrom v. Delta Family Care-
Disability and Survivorship Plan, 343 F. Supp.2d 1163 (N.D. Ga. 2004), the
court found that the FCE could not compete with the opinions of qualified
physicians, "[t]hat plaintiff might be able to perform these activities for a
short duration during a physical therapist's test, however, does not convince
the Court that he could do so on a sustained basis for an eight hour day."  Id.
at 1184.   The Byrom court held that it was unreasonable for the defendant to
accept the findings of the FCE, prepared by a non-physician, over the
opinions of physicians, including an IME doctor.  Id.  at 1185.  Yet, that is
exactly what the defendant is trying to do in this case.  The defendant has
relied on a single FCE prepared by a non-physician instead of the opinions
of physicians, including a physician (Dr. Bonner) who was hired by the
defendant to perform an IME.  Like the Byrom court, this Court should find
that the defendant is acting unreasonably in taking that position.

In Migliaro v. IBM Long Term Disability Plan, 231 F. Supp.2d 1167
(M.D. Fla. 2002), the court also rejected the findings of an FCE and an IME

in favor of the opinions of the plaintiff's treating physicians.[8]  The court held

that MetLife had "engaged in a selective review of medical evidence to deny

benefits."  Id. at 1179.  The court determined that because the plaintiff's

treating physicians relied on objective evidence for their opinions, the

subjective statements of the IME and FCE providers should not be relied

upon.  Id. at 1180.  Similarly, in this case, the treating physicians and Dr.

Bonner have consistently relied upon objective evidence in arriving at their

opinions.  The defendant has not provided anything in the form of objective

evidence to refute these opinions.

Lastly, and perhaps most importantly, an objective reading of the

IPC's report does not even support the conclusion that the IPC was of the

opinion that the plaintiff could return to work full time.  The IPC does not

state that anywhere in her report.  The IPC agrees that the plaintiff should be

permitted, from a medical standpoint, to engage in the activities she chooses

to pursue "such as laundry, driving, computer use, occasional volunteer at

the library, etc."  This is a far cry from concluding that she can work full

---

[8]Interestingly, in Migliaro, the court applied a heightened standard of review to the very
LTD Plan that is at issue in this case.  Id. at 1178.  This was based on the finding that MetLife
made the benefits decisions and paid the claims.  Id.  However, based on the defendant's
discovery answers in the case at bar, the defendant claims that the LTD Plan is actually funded
by the employer, IBM, rather than by MetLife.  It is unknown to the plaintiff why there is a
discrepancy between this case and Migliaro.

20

time as a marketing project manager for a Fortune 500 company.  Perhaps

the reason why the IPC chose not to opine on the subjects of cognitive

dysfunction, depression and the shortcomings of the FCE is because she

believed such matters were beyond the scope of her assigned task.  The IPC

may have concluded that she was simply giving an opinion as to whether the

plaintiff could physically carry on the chores of daily life, not whether she

could maintain gainful employment.  This was probably also the reason why

the IPC did not challenge or refute the opinions of the treating physicians

and the IME doctor that the plaintiff was totally disabled from work.  The

IPC stated simply that the plaintiff could perform the sedentary activities of

her daily life.  The IPC did not state that the plaintiff was capable of holding

down full-time gainful employment.

    In summary, the medical evidence contained in the administrative

record of this case supports only one conclusion, that the plaintiff continues

to be totally disabled from gainful employment.  The defendant abused its

discretion by failing to credit the reliable evidence supplied by the plaintiff's

treating physicians and Dr. Bonner the IME doctor.  The defendant further

abused its discretion by ascribing undue weight to the report of the IPC

which, properly read, does not even state the conclusion the defendant

21

wishes to draw from it.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court grant plaintiff's motion for summary judgment and find that the defendant abused its discretion in terminating the plaintiff's LTD benefits.

Respectfully submitted,

FERRY, JOSEPH & PEARCE, P.A.

By:     /s/Rick S. Miller
        Rick S. Miller (#3418)

Dated: March 30, 2006

22

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that two copies of the foregoing

Plaintiff's Opening Brief in Support of Her Motion for Summary Judgment

were served on March 30, 2006, upon the following counsel of record in the

manner indicated:

**<u>By Hand:</u>**

Tanya Jefferis, Esquire
McCarter & English, LLP
919 N. Market Street, Suite 1800
Wilmington DE 19801

Under penalty of perjury, I declare the foregoing is true and correct.


/s/Rick S. Miller
Rick S. Miller (#3418)