IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GAIL KERNAGHAN, | ) | |
| | ) | C.A. No. 05-402 (GMS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, as fiduciary and administrator of | ) | |
| The IBM Long-Term Disability Plan, | ) | |
| | ) | |
| Defendant. | ) | |

**APPENDIX TO PLAINTIFF'S OPENING BRIEF
IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

FERRY, JOSEPH & PEARCE, P.A.

/s/Rick S. Miller
_____
Rick S. Miller (#3418)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899-1351
(302) 575-1555
Attorney for Plaintiff

Dated: March 30, 2006

## **TABLE OF CONTENTS**

A. Excerpts of the Administrative Record, numbered ML1 through ML719.

05011C115862

**Metropolitan Life Insurance Company**

# MetLife®

MetLife Disability
PO Box 14590
Lexington KY 40511-4590

January 6, 2004

GAIL KERNAGHAN
363 VALLEY MIST DRIVE
CLAYTON DE 19938

Re: Long Term Disability
Claim No.: 699501171006
Group No.: 35750
Group: International Business Machines

Dear Ms. Kernaghan:

We have completed our review of the termination of your claim for disability benefits. The original decision to deny benefits was upheld upon appeal review for the following reasons:

According to the International Business Machines Corporation's Long Term Disability plan,

> "Under the Long-Term Disability Plan, totally disabled means that during the first 12 months after you complete the waiting period, you cannot perform the important duties of your regular occupation with IBM because of a sickness or injury. After expiration of that 12 month period, totally disabled means that, because of a sickness or injury, you can not perform the important duties of your occupation or any other gainful occupation for which you are reasonably fit by your education, training or experience. You must be under the appropriate care and treatment of a doctor on a continuing basis. At your own expense, proof of disability, satisfactory to MetLife, must be submitted to MetLife."

We have reviewed your entire claim, including the following information that was submitted.

A review of your file reveals that you last worked on November 21, 1994 and filed a disability claim for the diagnosis of an L-3 compression fracture. You worked at IBM as a Program Manager. Based on the information submitted, Long Term Disability benefits were paid to you through November 18, 2004. This review is conducted for benefits beyond November 18, 2004.

We received your request for an appeal on December 3, 2004. Your letter indicated that you had read your case file and could understand the difficulties that were faced in the management of your disability claim. You noted conflicting reports and findings that supported your disability as well as your ability to work. You requested that we look at the data from your physicians who had treated you on a consistent basis. They were the ones who could provide a clear and objective response to your condition. You indicated that you had to live with the fluctuations in pain that are often difficult to qualify. You explained that extended work creates pain that resulted either taking medication that destroyed your cognitive ability or resulted in bed rest. You indicated that you were unable to provide the consistent effort necessary to be gainfully employed.

ML00001

J50110(15862

2

Also, enclosed with your appeal request was a letter from Dr. Asit Upadhyay, D.O. dated October 29, 2004. He noted that this was a redictation from the original dictation of May 17, 2004. He indicated that the original dictation was lost. He noted that he first treated you on January 4, 2002. He stated that you had a 10-year history of back problems. You had sustained a L3 burst fracture that was treated conservatively.

Dr. Upadhyay impression was that you suffered from chronic low back pain, status post L3 compression burst fracture with mechanical low back pain and SI joint dysfunction with right greater trochanteric bursitis and iliotibial band syndrome. He noted that you were additionally diagnosed with anxiety disorder secondary to chronic illness along with diabetes.

Dr. Upadhyay stated that he reviewed the functional capacity evaluation dated May 3, 2004. While he felt the report was elaborate, thorough, and lengthy, he stated is was inaccurate. He stated that he felt that it does not test day in and day out, week upon week, the effect this type of work duty would have on your low back condition. He felt the test was inadmissible. He concluded by stating your injuries are permanent in nature.

We also reviewed the letter from your ex-husband, John Kernaghan dated November 10, 2004.

As part of the appeals process, and to provide you with a full and fair review, your file was referred to an Independent Physician Consultant, Board Certified in Physical Medical and Rehabilitation.

The Consultant reviewed the records of Dr. Upabhyay that began on April 5, 2002. He noted that you were following up with complaints of right shoulder and back problems. You were noted to be on Vicodin and Xanax. Neurontin and Paxil were started but that caused hallucinations. You were documented to be 5'5" tall and 198 pounds. Dr. Upabhyay noted you to have a non-antalgic gait and was able to mount and dismount from the exam table readily. You had tenderness of extension in the glenohumeral joint, and there was no impingement documented on examination. You were tender over the SI joint on the right and over the greater trochanteric bursa. The iliotibial band also increased in tone and tenderness. His assessment was chronic low back pain secondary to right SI joint dysfunction, lumbar facet syndrome improved and right shoulder pain, and will need to rule out rotator cuff injury.

A MRI of the right shoulder was ordered, and you were instructed to continue your home exercise program. You were advised to continue Vicodin and Zanaflex, and Depakote was added to titrate up to 1 gm over the next month. Paxil and Neurontin were discontinued.

The MRI of the right shoulder dated April 8, 2002 showed minimal supraspinatus tendinosis without rotator cuff tear, minimal-to-mild subacromial bursal fluid consistent with very low grade bursitis. No labral tear was documented.

Your home visit from Crawford representative, Ms. Palish, RN, dated February 11, 2004 indicated you were pleasant and cooperative during the interview. Your sister and brother-in-law were visiting but were not present for the interview. You wore casual pants and top and comfortable shoes. Ms. Palish noted that you ambulated slowly and required change of position every 30 minutes. You were noted to be left-hand dominant and you were able to relate the specifics in regard to your sledding injury with her daughter on November 22, 1994.

ML00002

J50110115862

3

The Consultant indicated that the records reflect you initially wore a body brace for a period of 6 months and then on and off for an additional 2 years to reduce your low back pain. Physical therapy had not been helpful for your pain. The Consultant noted that although Dr. Upabhyay has provided work capacities for you, you indicated you were concerned that you would not be able to perform within these capacities on a consistent basis. You indicated you had right hip radicular discomfort 3-4 times per month described as a burning-type of pain. This was relieved with bed rest and medication. You reported ability to lift 5-10 pounds, being able to lift small bags of groceries without difficulty. You also reported sitting and a standing ability to 30 minutes at a time and ability to walk approximately 2 hours with rest. It appeared you were independent with all activities of daily living, however you needed assistance with housework and your driving was limited to short distances.

For pain, you were taking Vicodin three times a day. You were water walking at the YMCA two days per week. The notes indicated that you were unable to increase your Neurontin dosage due to hallucinations. You had recently started Lidoderm patches as needed for pain relief.

You reported cognitive dysfunction secondary to narcotic pain medication such as forgetting to turn off the stove and inability to drive more than short distances. The Consultant noted that you perceived yourself as totally disabled because you were uncertain when your pain would increase and how long it would last. You reported at times your pain lasted for 2-3 days requiring bed rest.

The Consultant indicated that you had no plans to attempt to return to work given your prior attempt to work several years ago, and considered yourself to be totally disabled. You felt that you would not be able to perform consistently at the capacities delineated by Dr. Upabhyay on November 20, 2003. Your potential to return to work was felt to be impacted by your perception of pain.

The Consultant also noted that subsequent to this, a Functional Capacity Evaluation was completed April 26, 2004 and April 27, 2004. This was felt to be consistent with a sedentary level demanding 8 hours per day with the need to alternate sitting and standing activities frequently. It was indicated that you gave maximal effort during the evaluation. Your range of motion of the right shoulder was limited to forward flexion of 170° extension to 30°, abduction to 170°, internal rotation to 20°, and external rotation to 80°. Right shoulder strength was noted to be in the 4+ to 4- range. Left shoulder range of motion was within normal limits, and strength was 4+ range throughout. You reflexes were noted to be 2+ and symmetric bilaterally in the upper and lower extremities.

The file reflected that you completed all tests items, and demonstrated safe performance of body mechanics with occasional verbal cueing.

You demonstrated appropriate pacing and good general awareness of safe techniques. Your movement was smooth and coordinated throughout all test items. You were felt to have excellent ability to elevated work rotational activities, crawling, kneeling, crouching, standing tolerance and ambulation activities, good ability to forward reaching, repetitive squat and sit tolerance. You were below average in general grip strength and hand coordination.

The Consultant noted that as of your last office visit in September 2004 your medications included Neurontin, Prozac, Vicodin and Zanaflex.

3

ML00003

05011C115862

4

The Consultant indicated that were able to live independently taking care of your personal needs, cooking and laundry. You were able to drive short distances and participate in an exercise program such as deep water walking on a consistent basis. You also indicated that when able, you volunteer at a library assisting clients with the use of the Internet. The Consultant stated that it appears you are limited by your perception of your pain and the disability that it leaves you with.

Objectively, the Consultant concluded that you were able to participate in sedentary-to-light activities that you choose to pursue such as laundry, driving, computer use, occasional volunteer at the library, etc. The Consultant did not see a reason to restrict sedentary-to-light activity that you wished to pursue on a medical basis. However, you should be restricted in regard to lifting greater than 15-20 pounds on an occasional basis, frequent push/pull work and frequent overhead work which is warranted given your history of a L3 compression fracture with mild degenerative disk disease and right shoulder tendinopathy. You also should change positions on an every 30- to 60-minute basis.

In completing our appeal review, your medical records do not indicate anything that would prevent you from doing work at a sedentary level. The information in your file does not provide evidence of any new complication or deterioration in your condition that would prevent you from performing any occupation, based on your education, training and experience.

In summary, benefits must be administered in accordance with the employer's plan and this requires that the disability is defined and medically substantiated by the providers with comprehensive and specific information. This is not to say you were not experiencing difficulty. However, with the medical records available for review, we were unable to conclude any functional limitations or restrictions that would prevent you from performing job duties of other occupations. Therefore, the original determination to terminate Long Term disability benefits as of November 18, 2004 was appropriate.

Upon request, MetLife will provide you with a copy of the documents, records or other information we have that are relevant to your claim and identify any medical or vocational expert(s) whose advice was obtained in connection with your claim. You also have the right to bring civil action under Section 502 (a) of the Employee Retirement Income Security Act of 1974.

You have exhausted your administrative remedies under the plan, no further appeals will be considered.

The Employee Service Center (ESC) has been advised of the termination of your LTD benefits. It is **IMPORTANT** that you immediately contact the ESC at 1-800-796-9876 regarding your status, since your IBM medical benefits are affected by this change. If you wish to be considered for return to work at IBM, you must contact the ESC at the above number and they will refer you

4

ML00004

05011C-15862

5

to the appropriate individual for assistance. **If you do not contact the ESC within 30 days from the date of this letter, IBM will consider you to have voluntarily resigned, and all benefits will cease.**

Sincerely,

Linda Rogers
Procedure Analyst
MetLife Disability
800-300-4296

0412C3007846

*Gail Kernaghan*
*363 Valley Mist Drive*
*Clayton, Delaware 19938*

November 5, 2004

MetLife Disability.
P.O. Box 14592
Lexington, KY 40511-4592

RE: MetLife Disability Claim 699501171006, Group Number 35750/IBM, IBM Serial
Number 142425, Social Security Number 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
October, 19, 2004 Letter from Theresa Zammiello, Termination of Disability
Benefits, effective 11/18/04
Functional Capacity Evaluation Summary Report from 04/27/04 compiled by
Dorothy Brown, PT.
April 15, 2002, report from Dr. Bonner, MD, independent evaluation by UNIVAL
Requested by MetLife
ATT: October 29, 2004 Re-dictated evaluation notes of Dr. Asit Upadhyay D.O.,
FAAPMR
November 10, 2004 Letter from John Kernaghan

In accordance with the procedures outlined in the October 19, 2004, termination of long-term disability benefits, I am requesting an appeal of this decision. After phone conversations with Theresa Zammiello, and Jean Bowman, RN, it is my understanding that this termination process was initiated as the result of the Isernhagen Work Systems Functional Capacity Evaluation Report, dated April 27, 2004. If this is an incomplete assessment of the situation, I would appreciate clarification so that I can make a complete response as part of this appeal process.

I would like to clarify a procedural error that potentially could have prevented this termination process. I received a copy of a memo sent to Dr. Upadhyay, dated May 14, 2004, requesting his review of the results of the FCE. On June 7, 2004, I attempted to contact Theresa Zammiello, to update her on the doctor's response. I spoke with a call center representative by the name of Kristin. She informed me that the case managers were very busy, that she was not to bother them, and that she needed to handle the call herself. I informed Kristin that Dr. Upadhyay's report was complete but had been sent out to dictation. The average turn-around for dictation was three weeks. I specifically requested that MetLife contact me if the report was not received in that time frame. She assured me that she would document this and it would be taken care of. I never received another reply from MetLife so assumed that the response had been received, and that all issues had been satisfied. When I received the termination notice, I was disconcerted to

ML00006

0412C3007846

learn that Kristin did not follow-up as she had promised. If she had, this might have all been avoided.

I would first like to establish the foundation of my disability. After an accident in 1993, I have had intractable pain on the right side of my body, centered in the lower back, which was the site of the burst L3 fracture, as well as right hip, and right leg. I have undergone a battery of tests, which have determined that surgical intervention will not resolve the problem. In the ensuing years, this pain has not subsided, and the medications that I take for some relief, have had detrimental effects on my ability to perform some mental or cognitive tasks. I hope that I can convey how frustrating this disability has been to me. I had different plans for myself. I worked a full-time job, attended graduate school in computer science, and as a result, IBM hired me. I became a manager in less than five years, when seven was the norm. My performance evaluations were consistently above expected levels, and I won several awards for my work. I did not then, nor do I now, wish to remain in the state that I am in, but I cannot control my health. This pain is often unremitting and is exacerbated by many factors. I have attempted to control/alter some parameters to improve the quality of my life, but to no avail. That does not mean that I will give up. It is difficult for most, to grasp the unpredictability of my days. This pain, when aggravated, takes control of not only my physical state, but my mental state as well. I will display inappropriate emotions, which are outside the norm for any social environment, let alone a work environment, or worse, make illogical decisions that affect my financial or personal life. I am unable to predict the severity or frequency of these incapacitating episodes. I have tried to adapt my life to find a balance between the pain and the drug side effects. These adaptive techniques do not lend themselves to any work environment, where schedules need to be met, or productivity a factor of time. I have been in a position of hiring/firing personnel, and I could not in good conscience hire someone like myself.

The criteria used to evaluate my capacity to return to work was the Isernhagen Work Systems Functional Capacity Evaluation. This test may be a reasonable test to perform on someone whose employable skills are strictly of the physical nature. In that situation, it may be valid to perform two three-hour tests and based on the outcome, make extrapolations for a daily, and even weekly performance success. Unfortunately, this test does not appropriately assess my disability. If I can use a simple analogy, it is like ordering a random blood sugar instead of a hemoglobin A1c to assess a diabetic's state of glucose control. A snapshot, like that performed by this FCE, does little to assess my abilities to have the endurance, consistency, and capabilities of clear rationale thinking to perform that tasks associated with my job and/or any job of my skill set. The only portion of the FCE that might have had bearing on my ability to perform my job, was the task involved with hand coordination. This involved not only physical activity, but also minimal brain activity involved with attention span. The results of this test were below average, yet glossed over in the assessment. Cognitive testing in combination with mild physical activity would be the more appropriate test of my ability to perform my skill set.

The staff at MetLife has indicated that they are looking for objective data to support my claim. Unfortunately, even the Isernhagen FCE is a subjective test. Although, the process

ML00007

0412C3007846

itself uses strict guidelines to minimize the variables in the assessment, the physical therapist has to use subjective judgment to assess the client's ability and effort. You have the supporting reports of three pain managers, all doctors, who have assessed my condition over time, not just the six hours allocated to this one test. Dr. Greenhouse, Dr. Mousavi, and Dr. Upadhyay, each concur that my condition has not improved over time and that I am unable to work in any meaningful manner. It is long-term endurance, and rationale complex thought processing that is diminished to the point of being unemployable. In addition, you have the results of your own independent evaluation of Dr. James Bonner, dated 4/2002, which concurs with my own pain managers' assessment. Dr. Upadhyay's response to the 4/27/04 FCE is attached. He indicates that the FCE testing is inaccurate in its ability to assess my current condition and should be inadmissible as a method for determining termination of benefits. He also re-iterates that I am occupationally unable to work in any capacity.

In phone discussions, it became apparent that there is confusion about the content of the "Physical Capacities Evaluation", specifically Item 1. I was informed that Item 1 requested the amount of time/workday that an individual could sit + stand + walk. It was my impression that this was sit "or" stand "or" walk, since each factor had a maximum acceptable limit of eight hours. The first result is a cumulative result and potentially can result in a 24-hour workday. One of the nurse managers had added these factors to indicate that I could work a full day. If that was the correct procedure, then each of the Physical Capacities Evaluation forms have been filled out incorrectly since the forms were changed in 2002. I can do nothing to correct this discrepancy, besides recommend that the form might need clarification. These reports were filled out by the pain manager with the premise of a "best case" scenario i.e. on a "good day" what would be one's potential.

I have for the first time read my entire case file and can understand the difficulties you must face in the management of my disability case. There are conflicting reports and findings that support my disability as well as my ability to work I can only state that subjectivity runs in both directions. The results of the home visit were a particular example. Little time was spent discussing my situation; most of the time was spent discussing antiquing and the nurse's desire to find a few good shops in the area. I can only request that you look at the data from those who have seen me on a consistent basis. My doctors are the ones who can give you the clearest and objective responses of my situation. My doctors have repeatedly stated that there is no improvement in my condition. I have had to live with the fluctuations in pain that are often difficult to qualify. I can only re-emphasize that extended work creates pain, which results either in taking medication that destroys my cognitive ability or results in bed rest; both scenarios make me ineffective as an employee. It is my assertion that I am unable to provide the consistent effort necessary to be gainfully employed. My work history has indicated that I was on the fast track to success when the accident occurred. Until that time, nothing could stop my desire to succeed. It would be extremely foolish for me to vegetate with the disability income when I could be happy in a challenging work situation making two to three times the income I now have, but I cannot.

0412C3007846

I would also like to place into evidence a letter from my estranged husband. I realize that he has no medical information to provide, but would like to demonstrate that this disability has had a pervasive effect on my entire life, not just my job. I have failed in my marital obligations also, and as a result lost my marriage.

I would appreciate an open dialog with the appeals staff. I cannot fathom making such a far-reaching decision without open lines of communication. Please do not hesitate to contact me at 1-302-659-1293 for any clarifications. I thank you in advance for your time and consideration.

Sincerely,

*[signature]*

Gail A. Kernaghan

jer



0412C3007846



**Delaware Back Pain & Sports Rehabilitation Centers**

*Depend on us to get you better faster.*

- **Depend on teamwork for better health:**
  - Physical medicine & rehabilitation
  - Interventional pain management/injections
  - EMG
  - Chiropractic care
  - Rehabilitation therapy
  - Exercise physiology
  - Psychology/pain management counseling
  - Massage therapy
  - Wellness/nutrition programs
  - QFCEs

- **Nonsurgical solutions:**
  - Auto, work & sports injuries
  - Back & neck pain
  - Shoulder pain
  - Leg, ankle & foot pain
  - Hand & wrist pain (carpal tunnel syndrome)
  - Arm pain
  - Arthritis, neuritis & bursitis pain
  - Headaches

- **Effective rehabilitation:**
  - Musculoskeletal injury
  - Nerve injury
  - Postsurgical rehabilitation
  - Sciatica
  - Stroke
  - Postpolio syndrome
  - Spinal cord & brain injury
  - Joint replacement



October 29, 2004

Kathryn Snell, R.N.
P.O. Box 14590
Lexington, Kentucky 40511-4590

RE:    Gail Kernaghan (DOB: 8/15/52)

Dear Ms. Snell:

This is a redictation of the original dictation dated 5/17/04. That note was dictated, lost, and is not recovered yet.

Gail Kernaghan was seen by me in initial consultation on January 4, 2002. She was referred by her primary care physician, Dr. David Reyes. At that time, she reported being a 49-year-old female with a ten year history of low back problems. She sustained an L3 burst fracture that was treated conservatively. Since that time, she has had chronic low back pain. She underwent approximately six months of therapy in her initial treatment. Subsequent to that, she had been treated with Vicodin and Baclofen and was taking Ambien, a benzodiazepine, for sleep. The patient was switched over to OxyContin from Vicodin and continued on Baclofen.

Her remaining history shows pertinence including diabetes, and a history of rheumatic fever with subsequent heart murmur. She had a strong family history of coronary artery disease and hypertension. Socially and occupationally, the patient worked as a program manager for IBM, which was a desk job, however, she was not working at the time of my initial visit because of low back pain.

My initial impression was that the patient suffered from chronic low back pain, status post L3 compression burst fracture along with mechanical low back pain and SI joint dysfunction with right greater trochanteric bursitis and iliotibial band syndrome. The patient was additionally diagnosed with anxiety disorder secondary to chronic illness along with diabetes. Her initial treatment was primarily pharmacologic.



**Six convenient locations:**
Fox Run Office Park Plaza: (302) 529-8783 • 2006 Foulk Road, Suite D, Wilmington, DE 19810 • Fax: (302) 529-7470
Medical Arts Complex: (302) 764-0271 • 700 Lea Boulevard, Suite 102, Wilmington, DE 19802 • Fax: (302) 762-4076
Omega Professional Center: (302) 733-0980 • 17-B Omega Drive, Newark, DE 19713 • Fax: (302) 733-7493
Glasgow Medical Center: (302) 832-8894 • 2600 Glasgow Avenue, Suite 210, Newark, DE 19702 • Fax: (302) 832-8897
Walker Square: (302) 730-8848 • 830 Walker Road, Suite 11-1, Dover, DE 19901 • Fax: (302) 730-8846
Smyrna: (302) 389-1725 • 29 N. East Street • Smyrna, DE 19977 • Fax: (302) 389-1003
www.delawarebackpain.com

0412C3007846

RE: Gail Kernaghan
Date: 10/29/04
Page 2

The complete details of my initial visit with Ms. Kernaghan can be noted in the typed report of 1/04/02. Gail Kernaghan was seen in follow up evaluation by me on 1/22/02, 2/19/02, 4/05/02, 4/22/02, 6/06/02, 8/01/02, 8/29/02, 10/01/02, 3/05/03, 5/28/03, 7/24/03, 10/16/03, 1/08/04, 6/04/04, 9/13/04. It is suggested that these notes are reviewed in their entirety.

When the patient was last seen by me, she continued to complain of chronic low back pain and was taking several medications including but not limited to Neurontin, Prozac, Vicodin, and Zanaflex.

Her most recent renal and hepatic screens were noted to be normal. Most recent MRI available to us, is dated October 12, 2002, which reads out as a right S1 sacral region bone contusion with compression fracture and end plate fractures or Schmorl's nodes at L3. An x-ray of the LS spine dated 9/14/00 demonstrated 25% destruction of the L3 vertebral body with disc degeneration at the two levels above at L2-3 and L3-4.

In preparing for this report, I had an opportunity to review a functional capacity evaluation dated 5/03/04. While this summary is rather elaborate, thorough and lengthy in nature, it is inaccurate. This functional capacity evaluation does not include or test the effects of prolonged sedentary activity, such has prolonged sitting, standing, and work place environment activities for more than a four hour period. It also does not test day in and day out, week upon week effect of this type of work duty on the patient's low back condition. This test therefore is inadmissible.

In conclusion, Gail Kernaghan suffers from chronic lumbosacral spine pain secondary to an L3 burst fracture with resulting disc disruption at L2-3 and L3-4 resulting in discogenic lumbar spine pain. Her injuries are permanent in nature.

Occupationally, Ms. Kernaghan is unable to work in any capacity due to her lumbar spine condition. She should be restricted at home to sedentary duty activities.

All of the expert medical opinions above have been given to within a reasonable degree of medical probability. If you have any further questions regarding this matter, please contact me in writing at the Dover address.

Sincerely,

Asit P. Upadhyay, D.O., FAAPMR

APU/mc

ML00011

August 23, 2004



Healthcare Management
Vicki C. Bussmann
Branch Manager

Deanna Denmead
Met Life Disability
P.O. Box 14590
Lexington, KY 40511-4590

|         |                      |   |                                                          |
|---------|----------------------|---|----------------------------------------------------------|
| Re:     | Claimant             | : | Gail Kernaghan                                           |
|         | Met Life Claim No.   | : | 699501171006                                             |
|         | SSN                  | : | 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                                              |
|         | DOB                  | : | 8/15/52                                                  |
|         | Employer             | : | IBM                                                      |
|         | Report No.           | : | Unknown                                                  |
|         | DOD                  | : | 11/22/94                                                 |
|         | D/Referral           | : | Unknown                                                  |
|         | Diagnosis            | : | Chronic low back pain, right shoulder pain, lumbar facet syndrome. |
|         | Vendor Tax I.D. No.  | : | 58-0506554                                               |
|         | Job Title            | : | Project Manager                                          |
|         | Length/Service       | : | 10 Years                                                 |
|         | Salary at DOD        | : | $55,000.00                                               |
|         | Our File No.         | : | 306-14228                                                |

## TRANSFERABLE SKILLS AND LABOR MARKET SURVEY REPORT

### INTRODUCTION

Crawford Healthcare Management Services was requested by Deanna Denmead to perform a transferable skills analysis and labor market survey for Gail Kernaghan.

At your request, I did review records that included a home visit/medical assessment completed by Sherry Palish, R.N., C.C.M. dated 2/11/04 and a functional capacity evaluation completed by Brown and Associates in Dover, DE on 4/27/04.

### VOCATIONAL/EDUCATIONAL HISTORY

Based on the home visit report from Sherry Palish, Mrs. Kernaghan worked for IBM for 10 years. Her last position was as a software project office program manager (D.O.T. # 189.167-030). She was also considered a project director (D.O.T. # 189.117-030). She was required to be able to operate the system and negotiate with various departments for certain deliverables. She was also responsible for performance and educational plans. She was the manager for 22 employees of IBM and for 33 software vendors.

600 Reed Road ♦ Broomall PA 19008 ♦ PH: 610-359-1860 ♦ FX: 610-359-1491

ML00039

RE:  Kernaghan, Gail
     Page 2
     August 23, 2004

Based on the Dictionary of Occupational Titles, she also performed duties that correlate to a contract specialist (D.O.T. # 162.117-018).

She reported to Sherry Palish that she had a Bachelor's Degree in Biology and Chemistry from Bowling Green College in Ohio in 1974. She stated that she received a Master's Degree in Computer Science at Cleveland State University in 1986.

Prior to working at IBM, she indicated that she was a hospital lab technician in Lorraine, Ohio.

## MEDICAL HISTORY

Based on the interview with Sherry Palish, R.N., Gail indicated that she injured her low back and shoulder in a sledding accident on 11/22/94. She indicated that she is able to lift 5-10 lbs.; able to walk for approximately two hours with rest; and sit and stand for approximately 30 minutes at a time. She reports difficulties with decreased range of motion in her right shoulder and low back. She had indicated that she gained approximately 80 lbs. since her injury.

Based on the functional capacity evaluation that was completed on 4/26 and 4/27/04, it was determined that Gail is capable of performing sedentary work. She demonstrated the ability to lift up to 12.5 lbs. on an occasional basis. It was noted that she appeared to have weakness in both of her upper extremities. She demonstrated "excellent abilities in elevated work, vocational activities, crawling, kneeling and crouching." She also demonstrated good abilities in forward bending and repetitive squatting and sitting. She demonstrated excellent abilities in standing tolerance and ambulation activities.

Based on the functional capacity evaluation, I took into consideration sedentary employment.

## RESULTS AND OUTCOMES OF TRANSFERABLE SKILLS ANALYSIS

Based on her work history, she has demonstrated a Specific Vocational Preparation of 8, which means it has taken her 4-10 years to master the techniques and acquire the information needed to perform at a specific job-worker situation.

She has demonstrated the ability to apply principles of logical or scientific thinking to define problems, collect data, establish facts and draw valid conclusions. She is able to interpret an extensive variety of technical instructions in mathematical or diagrammatic form. She is able to deal with

Aug 27 04 01:05p        Eleanor Miller           215-632-1687                    p.4

040827F06623

RE: Kernaghan, Gail
    Page 3
    August 23, 2004

several abstract and concrete variables. She has demonstrated the ability to work with exponents and logarithms. She is able to handle mathematical operations to frequency distributions, reliability of tests, normal curve, analysis of variance, correlation techniques and sample theory.

Based on her work history, she also has demonstrated the ability to write manuals, critiques and reports. She has demonstrated the ability to review scientific and technical journals, financial reports and legal documents.

Based on her work history, she has demonstrated above-average aptitude for general learning ability, verbal aptitude, numerical aptitude and clerical aptitude. She has demonstrated average aptitudes for spatial aptitude and form perception.

She has demonstrated the ability to coordinate data, negotiate with people, speak and do presentations in front of people, and handle things.

Based on the above-mentioned transferable skills analysis, she would be capable of performing the following occupations:

| JOB TITLE | D.O.T. # | ANNUAL SALARY |
|---|---|---|
| Purchasing Manager | 162.117-014 | $ 56,800.00 |
| Contract Administrator | 162.117-014 | $ 56,800.00 |
| First Line Supervisor/ Manager, Nonretail Sales Workers | 187.167-098 | $ 65,610.00 |
| Program Manager | 189.167-030 | $101,060.00 |
| Employment Agency Manager | 187.167-098 | $ 55,610.00 |

These wages are based on the Occupational Employment Statistics Survey collected in the State of Delaware in the year 2001.

### RESULTS OF LABOR MARKET SURVEY

I contacted employers using Monster.com and America's Job Bank for organizations who had previously advertised job openings within the past six months to determine employers with potential jobs for the labor market survey. The following jobs and employers were contacted for the labor market survey:

ML00041

Aug 27 04 01:05p    Eleanor Miller    215-632-1687    p.5
040827F06623

RE: Kernaghan, Gail
    Page 4
    August 23, 2004

Position No. 1:

| | | |
|---|---|---|
| Position | : | Quality Team Leader/Department Manager |
| Employer | : | Bank of America |
| Location | : | Dover, DE |
| Telephone | : | 302-741-1675 |
| Contact | : | Julie, Human Resources Assistant |
| Wage | : | $30,000-$40,000 per year |
| Educational Requirements | : | Minimum 3 years of substantive management experience; action-oriented and strong leadership and implementation skills; proficient with Microsoft Office; demonstrate ability to plan, design and act as a change agent. Effective at transplanting customer solutions and processes for improving the customer experience. Demonstrate project manager experience. |
| No. of Employees in Occupation | : | 10 |
| Physical Requirements | : | This is a sedentary position in a controlled environment in an office. She would be able to periodically get up and walk around the office. |
| Consultant's Assessment | : | She would be qualified for this position. |
| D/Available | : | 8/04 |

Position No. 2:

| | | |
|---|---|---|
| Position | : | Procurement Services Manager |
| Employer | : | Dade Behring |
| Location | : | Newark, DE |
| Telephone | : | 302-631-6000 |
| Contact | : | Janice Warren, Human Resources |
| Wage | : | $57,500-$115,000 per year |
| Educational Requirements | : | Bachelor's Degree with 5-7 years experience; the ability to work with salespeople, vendors, manufacturing, logistics and supply chain planning professors globally. |
| No. of Employees in Occupation | : | One as Manager, and may have one assistant. |
| Physical Requirements | : | This is a sedentary position with the ability to occasionally stand and walk with lifting less than 10 lbs. This appears to be a position she would be capable of performing. |

ML00042

040827F06623

RE: Kernaghan, Gail
    Page 5
    August 23, 2004

| | | |
|---|---|---|
| Consultant's Assessment | : | She would be qualified for this position. |
| D/Available | : | Has been available within the past 6 months. |

Position No. 3:

| | | |
|---|---|---|
| Position | : | Supply Manager, Buyer or Procurement Manager |
| Employer | : | Agilent Technologies |
| Location | : | Wilmington, DE |
| Telephone | : | 877-424-4536 |
| Contact | : | Darlene, Director of Supplies |
| Wage | : | $50,000 $60,000 per year |
| Educational Requirements | : | Bachelor's Degree in Business Administration or equivalent with 7 years relevant experience; strong math skills including arithmetic, algebra and statistics. Strong communication skills and proficiency in Microsoft Office. |
| Physical Requirements | : | The employer indicated that she may be considered appropriate for this type of position. |
| No. of Employees in Occupation | : | As a manager there is only one job, and other people are assistant buyers. |
| Consultant's Assessment | : | She would be qualified for this position. |
| D/Available | : | Has been available within the past 6 months. |

Position No. 4:

| | | |
|---|---|---|
| Position | : | Procurement Manager |
| Employer | : | Bank One Corporation |
| Location | : | Wilmington, DE |
| Telephone | : | 302-594-4000 |
| Contact | : | Felicia O'Briason, Human Resources |
| Wage | : | $50,000-$60,000 per year |
| Educational Requirements | : | Bachelor's Degree and advanced degrees desirable plus minimum 5 years relevant experience in sourcing or project management. Must have strong interpersonal and written skills. Must have experience coordinating and managing cross-functional team to achieve project objectives. Financial modeling skills and proficiency in Microsoft Office. SAP knowledge is preferred. |

ML00043

RE:  Kernaghan, Gail
     Page 6
     August 23, 2004

Physical
Requirements          :  This is a sedentary position with the ability
                         to stand and walk occasionally.

No. of Employees
at Occupation         :  One with an assistant

Consultant's
Assessment            :  Based on her skills, this position appears to
                         be appropriate for her; however, considering
                         that she has been out of the workforce for
                         many years, this may be a deterrent for
                         hiring her.  In addition, since I am unsure
                         as to whether she has SAP knowledge and the
                         employer indicated this would be preferred
                         but not required, she may not be considered
                         one of their top candidates.

D/Available           :  7/04


Position No. 5:

Position              :  Marketing Project Manager
Employer              :  Bank One Corporation
Location              :  Wilmington, DE
Telephone             :  302-594-4000
Contact               :  Felicia O'Briason, Human Resources
Wage                  :  $50,000-$60,000 per year

Educational
Requirements          :  Bachelor's Degree plus 7 years relevant
                         experience or advanced degree.  Must have
                         strong verbal and written skills.  Prefers
                         someone with direct mail or credit card
                         experience.

Physical
Requirements          :  This is a sedentary position in a controlled
                         office environment.

No. of Employees
at Occupation         :  As a Marketing Project Manager, there is only
                         one position; however, there are several
                         Project Managers in other departments at Bank
                         One Corporation.

Consultant's
Assessment            :  She may not be considered for this position
                         because they were looking for someone with
                         direct mail or credit card experience.
                         However, other employers may not require the
                         industry-specific experience.

D/Available           :  This position has been available within the
                         past six months.

Aug 27 04 01:06p    Eleanor Miller    215-632-1687    p.8

040827F06623

RE:  Kernaghan, Gail
     Page 7
     August 23, 2004

Position No. 6:

| | | |
|---|---|---|
| Position | : | Operations Assistant Manager |
| Employer | : | TransCore |
| Location | : | Dover, DE |
| Telephone | : | 717-443-8561 |
| Contact | : | Judy Hummel, Human Resources, Hummeltown, PA |
| Wage | : | $50,000.00 range per year |
| Educational Requirements | : | Two years' management experience in a customer service or call center environment preferred. Bachelor's Degree in Business Administration or two-year degree with relevant work experience. |
| Physical Requirements | : | This is a sedentary position at the Dover, DE site. There is occasional standing and walking. |
| No. of Employees at Occupation | : | They have three at this specific location; however, they have jobs throughout Delaware and the United States. |
| Consultant's Assessment | : | Based on her work history and educational background, she appears to be someone who would be considered qualified for this position. |
| D/Available | : | This position was advertised on America's Job Bank in 8/04. |

Position No. 7:

| | | |
|---|---|---|
| Position | : | Customer Service Program Manager |
| Employer | : | Juniper Bank |
| Location | : | Wilmington, DE |
| Telephone | : | 302-255-8211 |
| Contact | : | Angel Karra, Human Resources |
| Wage | : | $60,000-$65,000 per year |
| Educational Requirements | : | Bachelor's Degree plus 3-5 years of project management or customer service support with strong verbal and written communication skills. Proven leadership skills and organizational skills. |
| Physical Requirements | : | This is a sedentary position but would require occasionally traveling between two buildings within Wilmington, DE. |

ML00045