0403-1030786

RE: Gail Kernaghan
2/11/2004
Page 2 of 5

activities of daily living secondary to low back pain and decreased shoulder range of motion.

Travel time to the claimant's home was 1-1/2 hours each way. I requested and obtained approval from Deanna Denmead for the additional travel expenses required to perform this assessment.

Mrs. Kernaghan is a 51-year old left-hand dominant female who was employed by IBM as a software project office program manager. She reports this position as being responsible for coordinating all aspects of release of a large software product, operating the system, negotiating with various departments for certain deliverables and completing performance and educational plans.

On 11/22/94, the claimant had an accident while sledding with her daughter, which caused her to land on her back. She was taken via truck to the emergency room of Kingston Hospital in Kingston, NY. She stated that an x-ray revealed a burst L3 fracture. She was then referred to an orthopedic specialist, Alan Carl, in Albany, NY. She was taken via ambulance to Albany Medical Center, where she spent one week in the intensive care unit for a spinal injury, and then another two weeks on the med-surg floor, for a total of three weeks in the hospital. She reported that she was in a body brace for a period of six months. Claimant reports the she wore the body brace off and on for an additional two years because it helped to reduce the low back pain. She stated that she stopped wearing it secondary to weight gain, and that it no longer fit.

After approximately three months, formal physical therapy was initiated; however she reports that it was not helpful and that she has been left with intractable pain.

She has been treated by Dr. Upadhyoy, a pain management specialist, for the last couple of years. She states that Dr. Upadhyoy has provided work capacities for her, but she is concerned that she cannot perform within these capacities on a consistent basis.

## CURRENT MEDICAL TREATMENT

Mrs. Kernaghan's current disabling condition is constant low back pain, which she says radiates into her right hip if she over-exerts herself. She says that she experiences the right hip radicular discomfort approximately 3-4 times per month, and that it is a burning-type of pain. She stated that this discomfort is relieved by bedrest and medication.

She states that she is able to lift about 5-10 lbs. She bases this on the fact that she is able to bring home a few grocery bags from the store without difficulty. She reports being able to walk for approximately two hours with rest. She states that she can sit and stand for approximately 30 minutes at a time. Mrs. Kernaghan reports difficulty with decreased range of motion in her right shoulder and low back pain.

Mrs. Kernaghan described herself as very active prior to the injury. She stated that she actively ran and exercised. She reported that she has gained 80 lbs. since this injury. She states that although she is independent with all activities of daily living, she requires assistance with housework, which she states that her husband does. She reports that she is able to dust and make the beds; however, cannot push-pull secondary to her right shoulder complaints. She stated that

0403·1030786

RE: Gail Kernaghan
2/11/2004
Page 3 of 5

reaching for windows causing an increase in back pain. She states that she is able to shower, but cannot bathe because she is unable to get in and out of the tub. She states that she is able to drive short distances and can perform grocery shopping if she shops only for a small amount of groceries at a time. She states that it is difficult to get them from the car into her home because of the amount of lifting and bending required.

Mrs. Kernaghan is currently taking Vicodin ES three times per day for pain. In addition to the medications, the claimant's current treatment is water walking at the YMCA two times per week. She also takes a muscle relaxant, Zanaflex, once in the evening, and Neurontin, 300 mg. at bedtime, which is a neuropathic pain reliever. She reports that attempts are being made to increase the Neurontin; however, an increase has caused her to experience hallucinations. She says that these hallucinations are all Disney characters. She is taking insulin for a history of adult onset diabetes. She is also using Lidoderm patches to her low back as needed for relief of discomfort. She stated that she is also on Prozac, an anti-depressant. The claimant notes some cognitive dysfunction secondary to the narcotic pain medication such as forgetting to shut off the stove and an inability to drive more than short distances while taking narcotics.

Per Mrs. Kernaghan, her prognosis for recovery is poor. The claimant's perception is that she is totally disabled because she never knows when her pain will increase and how long it will last. She stated that when she has pain, it may last for 2-3 days, and she requires bedrest. I have no available medical disability reports to confirm this information by a physician.

The claimant's current physicians include Asit P. Upadhyay, D.O., Delaware Back Pain and Sports Rehabilitation, 830 Russell Road, Suite 111, Dover, DE 19901, tel. 302-389-2225. The claimant stated that she sees him approximately three months for medication management. She is also under the care of endocrinologist Ripo Hundal, M.D., Christiana Care Diabetes Center. She reports that she sees him every three months for control of her diabetes. The claimant reports that her family doctor is David Reyes, 29 Goodin Avenue, Dover, DE, tel. 302-735-7780. She states that she sees him as needed.

The claimant is 5'5" tall and weighs 204 lbs.

## DAILY ACTIVITIES/PHYSICAL THERAPIES

Mrs. Kernaghan reports that she gets up at approximately 9 A.M. She states that it takes her approximately one hour to get moving, and this requires a hot shower. She stated that she then eats breakfast, which consists of bacon or sausage and tea, talks on the phone, reads and watches TV. She has lunch between 1-2 P.M. which consists of half a sandwich. She states that she does make dinner. She report that after dinner she reads or watches TV. Mrs. Kernaghan states that she enjoys reading. She goes to sleep at 11 P.M.

The claimant resides in a two-year old three-bedroom ranch-style home in a rural area of Delaware. There is an apartment built onto the house which the claimant stated was built for her daughter, now 22 years old. The daughter has since married and lives nearby, but is supportive in the care of her mother. The claimant is currently in the process of going through a divorce and reports that her husband of 18 years is now living in the apartment. The claimant reports that her

0403 1030786

RE: Gail Kernaghan
2/11/2004
Page 4 of 5

husband helps with the bills, and her income sources include a $35,000.00 per year disability benefit. The house was well-kept, neat, clean and uncluttered. There is a barn in the back and an old donkey who resides near the bar. The claimant stated that the donkey is her husband's, and that he cares for this animal. The claimant reports that both the husband and her neighbors help with the lawn work.

She states that she does laundry using small loads to decrease the amount of weight she has to lift and transfer from the washer to the dryer. Her laundry area is located on the ground floor, and both the washer and dryer are top loading.

She reports that she is able to drive to doctors' appointments, to the grocery store and short distances of less than 30 minutes. She reports having difficulty sitting for more than one hour. I observed her to require frequent change of positions during sitting. Mrs. Kernaghan has a decreased range of motion in her right shoulder. She states that she has the most difficulty with reaching behind activities, such as hooking and unhooking her bra.

When ambulating, Mrs. Kernaghan's gait was slow, and she appeared to have some difficulty with ambulation upon initially arising from the chair. She reported that this was due to low back discomfort. The claimant stated that she does not use any assistive devices.

Mrs. Kernaghan lives in a one-story, three bedroom home, and does not appear to have any difficulty accessing any portion of her home. She stated that her and her husband moved two years ago because she was having difficulty climbing stairs from her low back discomfort, and therefore needed a one-story home with laundry facilities on the main floor. The claimant also reported that she bought a top load washer and dryer to avoid bending.

## WORK HISTORY

Mrs. Kernaghan worked at IBM in many positions for 10 years. Her last job was that of a software project office program manager. She reported that her job was a sedentary position, specifically office work and computer. She reported that in her job, she was responsible for the coordination of all aspects of release of a large software product. She stated that she was required to operate the system and negotiate with various departments for certain deliverables. She reported that she was also responsible for performance and educational plans. She stated that she was a manager responsible for 22 employees of IBM and for 43 software vendors.

The claimant received a Bachelor's Degree in Biology and Chemistry at Bowling Green College in Ohio in 1974. She stated that she received a Masters Degree in Computer Science at Cleveland State University in 1986.

She reports that prior to her position at IBM, she was a hospital lab technician in Lorraine, Ohio.

## MOTIVATION/POTENTIAL FOR RETURN TO WORK

Mrs. Kernaghan stated that she has no plans to return to work in the immediate future due to her current physical limitations. She states that she had attempted to return to work part time with

0403 1030786

RE: Gail Kernaghan
2/11/2004
Page 5 of 5

IBM several years ago. She stated that an ergonomic work station was provided, and that she was able to tolerate working four hours per day, but unable to work consistently.

Specifically, she stated she would work for approximately one week to 10 days, then would have a setback which required her to be in bed for several days. She stated that over a two-year period she attempted to increase her work capacities but was unable to do so. She reports that she was taken out of work for a permanent disability in 1995.

Based on the capacities provided by pain management specialist Dr. Upadhyay, the claimant would be able to perform work in a sedentary capacity. However, I discussed these capacities with the claimant and she stated that although she agrees with them, she does not feel that she could perform consistently over an extended period of time because this would put her "back into bed."

Mrs. Kernaghan stated that although mentally she would like to work, she has no desire to seek employment because physically she considers herself to be totally disabled. She is currently in the process of going through a divorce with her husband. She stated that her husband no longer wants to "live with an invalid." I asked her if she will be able to afford to keep the home on her own. She said that she has plans to rent out the apartment attached and the barn. She is hoping that with this added income and the $35,000.00 she receives from the disability carrier, that she will be able to make ends meet.

**IMPRESSIONS**

During our initial interview, Mrs. Kernaghan was able to sit for approximately 30 minutes at a time before requiring a change of position. Her gait was slow. Although she agreed with the physical capacities provided by Dr. Upadhyay D/S 11/20/03, she stated that she does not feel that she can perform consistently in these capacities due to her pain.

The potential to return to work is impacted by the claimant's perception of her pain. In order to address the claimant's return to work potential, you may want to consider a functional capacity evaluation. This will confirm and clarify the claimant's functional capabilities. You also might want to consider having a vocational consultant complete a transferable skills analysis to determine what positions can be explored in a labor market survey. The claimant has a computer in her home, and states that she is computer literate. It is my opinion that she would not need to update her skills to find employment. Also, since the claimant is computer literate, you may want to explore options to gainfully employ the claimant from her home. This way, she could take breaks as needed.

CRAWFORD AND COMPANY

Sherry Palish, R.N., C.C.M.
Medical Services Consultant

SP:edm

ML00101

Claim #: L4457117006

## Physical Capacities Evaluation — MetLife

Name of Claimant: **Gail Kernaghan**   SSN: **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**

Important: Please complete the following items based on your clinical evaluation of the claimant and other testing results. Any items that you do not believe you can answer should be marked n/a (not answerable).

Note: In terms of an 8 hour workday "occasionally" equals 0% to 33%; "frequently," 34% to 66%; "continuously," 67% to 100%.

**I.** In an 8-hour workday, claimant can: (Circle full capacity for each activity)

| | | No | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | (hrs.) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A.) | Sit | No | - | 1 | 2 | 3 | 4 | 5 | **6** | 7 | 8 | (hrs.) |
| B.) | Stand | No | - | 1 | **2** | 3 | 4 | 5 | 6 | 7 | 8 | (hrs.) |
| C.) | Walk | No | - | 1 | **2** | 3 | 4 | 5 | 6 | 7 | 8 | (hrs.) |

**II.** Claimant can lift:

| | | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|---|
| A.) | Up to 10 lbs. | ( ) | ( ) | ( ✓ ) | ( ) |
| B.) | 11 - 20 lbs. | ( ) | ( ✓ ) | ( ) | ( ) |
| C.) | 21 - 50 lbs. | ( ✓ ) | ( ) | ( ) | ( ) |
| D.) | 51 - 100 lbs. | ( ✓ ) | ( ) | ( ) | ( ) |
| E.) | 100 + lbs. | ( ✓ ) | ( ) | ( ) | ( ) |

**III.** Claimant can carry:

| | | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|---|
| A.) | Up to 10 lbs. | ( ) | ( ✓ ) | ( ) | ( ) |
| B.) | 11 - 20 lbs. | ( ✓ ) | ( ) | ( ) | ( ) |
| C.) | 21 - 50 lbs. | ( ✓ ) | ( ) | ( ) | ( ) |
| D.) | 51 - 100 lbs. | ( ✓ ) | ( ) | ( ) | ( ) |
| E.) | 100 + lbs. | ( ✓ ) | ( ) | ( ) | ( ) |

**IV.** Claimant can use hands for repetitive action such as:

| | | Simple Grasping | | Pushing & Pulling | | Fine Manipulating | |
|---|---|---|---|---|---|---|---|
| | | Yes | No | Yes | No | Yes | No |
| A.) | Right | ✓ | | | ✓ | ✓ | |
| B.) | Left | ✓ | | | ✓ | ✓ | |

**V.** Claimant can use feet for repetitive movements as in operating foot controls:

| Right | | Left | | Both | |
|---|---|---|---|---|---|
| Yes | No ✗ | Yes | No ✗ | Yes | No ✗ |

**VI.** Claimant is able to:

| | | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|---|
| A.) | Bend | ( ) | ( ✓ ) | ( ) | ( ) |
| B.) | Squat | ( ) | ( ✓ ) | ( ) | ( ) |
| C.) | Crawl | ( ✓ ) | ( ) | ( ) | ( ) |
| D.) | Climb | ( ✓ ) | ( ) | ( ) | ( ) |
| E.) | Reach above shoulder level | ( ) | ( ✓ ) | ( ) | ( ) |

**VII.** Restriction of activities involving:

| | | None | Mild | Moderate | Total |
|---|---|---|---|---|---|
| A.) | Unprotected heights | ( ✗ ) | ( ) | ( ) | ( ) |
| B.) | Being around moving machinery | ( ) | ( ✗ ) | ( ) | ( ) |
| C.) | Exposure to marked changes in temperature & humidity | ( ) | ( ✗ ) | ( ) | ( ) |
| D.) | Driving automotive equipment | ( ✗ ) | ( ) | ( ) | ( ) |
| E.) | Exposure to dust, fumes & gases | ( ) | ( ) | ( ✗ ) | ( ) |

Remarks (on above, or other functional limitations): **must prolong sit 30 min**

Date: **8/29/02**   Signature of Physician: [signature]

no change 3/31/03

no change 11/20/03

030806052223

July 11, 2002

Steve D'Argenio
MetLife Disability
Oriskany, NY

RE:   CLAIMANT:   Gail Kernaghan
      FILE#:        699501171006
      INSURED:   IBM

Dear Steve:

Please find enclosed the results of our investigation on Gail Kernaghan. If you have any questions or concerns, please do not hesitate to call us at 1-800-253-5990.

We thank you for assigning this case to us. We look forward to hearing from you again soon. NWI is committed to servicing our customers 7 days a week, 24 hours a day. Please think of NWI for all of your investigative needs.

Thanks again!


THE NWI TEAM

ML00108

030606052223

NWI INVESTIGATIVE GROUP, INC.
NWI CASE# 41322 Disability
Your File#: 699501171006

# INVESTIGATION RESULTS

**Claimant:** Gail Kernaghan
**Insured:** IBM
**Type of Claim:** Disability
**D.O.L.:** 11/22/1994
**Injury:** Back
**Your File#:** 699501171006
**Address Given:** 363 Valley Mist Drive
Clayton, DE 19938

**Date Opened:** 7/2/2002        **Date Completed:** 7/10/2002

## OBSERVATIONS

On Saturday, July 6, 2002, Investigator conducted an early morning through mid afternoon surveillance at Claimant's residence located at 363 Valley Mist Drive in Clayton, DE. Investigator did not observe any outside Claimant activity for the duration of the day. Investigator noted that the weather on this day was hazy, hot, and humid.

On Sunday, July 7, 2002, Investigator conducted an early morning through mid afternoon surveillance and Investigator observed no outside Claimant activity. Investigator noted that the weather on this day was hazy, hot, and humid.

Investigator's Note: Investigator was unable to obtain video of Claimant's residence and vehicle due to Claimant's residence being situated off of the main road approximately 500 yards down a private drive.

ML00109

030806052223

NWI INVESTIGATIVE GROUP, INC.
NWI CASE# 41322 Disability
Your File#: 699501171006

## INVESTIGATION DETAIL

**DATE:**
Saturday
July 6, 2002
6:00 a.m.

Investigator arrived at Claimant's residence located at 363 Valley Mist Drive in Clayton, DE. Investigator observed the residence to be situated off of the main road approximately 500 yards down a private drive. Investigator observed the names "Kernaghan" and "Gallagher" on the mailbox. Investigator observed no sign of outside Claimant activity at this time. Investigator established a suitable surveillance position approximately fifty yards west of Claimant's mailbox with a view of the entrance and driveway.

At 8:26 a.m., Investigator observed a red Chevrolet Blazer exit the driveway. There appeared to be only one male occupant.

At 9:00 a.m., Investigator confirmed Claimant's presence at the residence

At 4:00 p.m., Investigator terminated surveillance and departed the area due to the lack of outside Claimant activity. The weather on this day was hazy, hot, and humid.

**DATE:**
Sunday
July 7, 2002
6:00 a.m.

Investigator arrived at Claimant's residence located at 363 Valley Mist Drive in Clayton, DE. Investigator observed no sign of outside Claimant activity. Investigator established a suitable surveillance position approximately fifty yards west of Claimant's mailbox with a view of Claimant's driveway entrance.

At 9:30 a.m., Investigator confirmed Claimant's presence at the residence.

At 12:00 p.m., Investigator conducted a spot check of the residence and observed no outside Claimant activity.

At 12:12 p.m., Investigator approached a neighbor's residence to conduct neighborhood canvassing at 239 Valley Mist Drive and received no response. Investigator resumed surveillance.

At 1:30 p.m., Investigator confirmed Claimant's presence at the residence.

-3-

ML00110

030806052223

NWI INVESTIGATIVE GROUP, INC.
NWI CASE# 41322 Disability
Your File#: 699501171006

At 4:00 p.m., Investigator terminated surveillance and departed the area due to the lack of outside Claimant activity. The weather on this day was hazy, hot, and humid.

CB/MD:lc
MM

**NOTE:** All original videotapes will be saved for 3 years.

ML00111

**MetLife**

## Attending Physician's Statement of Functional Capacity

The information provided is to be used for claims evaluation and auditing purposes only.
The patient is responsible for having this form completed without expense to Metropolitan or the Employer.

| Patient Name | Group Number | Social Security # |
|---|---|---|
| First: Gail  Middle: _____  Last: Kernaghan | 35750 | 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 |

### 1. History and Diagnosis

A. Date symptoms first appeared/or accident occurred: _____ 19 __
B. Date patient ceased work: _____ 19 __
C. Date of most recent examination: 10-5, 19 99
D. Frequency of visits: _____
E. Past history:
F. Subjective symptoms:
G. Objective findings (including test results):

H. Primary diagnosis affecting work ability: Radiculopathy
I. Secondary diagnosis affecting work ability:
J. Present and future course of treatment: Baclofen, Ambien, Hydrocodone
K. Other known injuries or presently active diseases that may affect work abilities:

### 2. Does patient's medical condition allow exposure to the following; please check appropriate box and explain any limitation below:

|  | No Limitation | Some Limitation | Avoid Completely | Cannot Determine |
|---|---|---|---|---|
| Dust/Gases/Fumes |  | ✓ |  |  |
| Chemicals/Solvents |  | ✓ |  |  |
| Temperature Extremes |  | ✓ |  |  |
| Noise Levels |  | ✓ |  |  |
| Allergenic Agents |  |  |  |  |
| Stairs/Ladders |  |  | ✓ |  |
| Scaffolds/Heights |  |  | ✓ |  |
| Enclosed Spaces |  |  | ✓ |  |
| Drafts/Damp Areas |  |  | ✓ |  |

Explanation:

### 3. Because of the patient's medical condition, are there any limitations on any of the following activities; please check appropriate box and explain any limitation below:

|  | No Limitation | Some Limitation | Avoid Completely | Cannot Determine |
|---|---|---|---|---|
| Transportation |  | ✓ |  |  |
| Standing |  | ✓ |  |  |
| Sitting |  | ✓ |  |  |
| Change of Position (sitting/standing) |  | ✓ |  |  |
| Assuming Cramped/Unusual Positions |  | ✓ | ✓ |  |
| Reaching (forward/overhead) |  |  | ✓ |  |
| Pushing/Pulling/Twisting (arm/leg controls) |  |  | ✓ |  |
| Grasping/Handling |  |  | ✓ |  |
| Finger Dexterity | ✓ |  |  |  |
| Repetitive Movement (hands/feet) |  |  |  |  |
| Climbing (stairs/ladders/scaffolds) |  |  | ✓ |  |
| Balancing (exposure to falling) |  |  | ✓ |  |
| Bending/Stooping/Squatting |  |  | ✓ |  |
| Operating Truck/Dolly/Small Vehicle |  |  | ✓ |  |
| Operating Heavy Equipment |  |  | ✓ |  |
| Operating Electrical Equipment |  |  | ✓ |  |
| Concentrated Visual Attention |  |  | ✓ |  |
| Other |  |  |  |  |

Explanation:

JUL 0 9 1999

ML00146

MA8807.GRN(1094)

4. Evaluation of carrying and lifting abilities includes both the intensity and frequency of the activity. For each weight class listed below, please indicate the reasonable top limit of the frequency. Please provide an explanation below with any additional comments regarding limitations on duration, handlability and distance (in front of body and above floor).

| Intensity in Pounds | Frequency: Percentage of Workday | | | |
|---|---|---|---|---|
| | Never | Less than 20% | 20% -60% | Greater than 60% |
| 0-15 | ✓ | | | |
| 16-30 | ✓ | | | |
| 31-45 | ✓ | | | |
| Greater than 45 | ✓ | | | |

Explanation:

5. Is there a past or present psychological problem that might interfere with patient's ability to work? If yes, please list your findings according to the DMS-III multiaxial classification.

Yes ☑    No ☐    Not Determined ☐

Explanation:

*depression*

6. If you have any additional information that is relevant to patient's work ability, please indicate below:

7. Progress Evaluation

☐ Recovered    ☐ Improved    ☑ Unimproved    ☐ Retrogressed

(Please check appropriate box and explain below)
Explanation:

8. Disability Evaluation

Is patient now totally disabled?
If No, when was patient able to resume work activities?
If Yes, when do you think patient will be able to resume work activities?
Approximate Date:
Indefinite:
Never:
Cannot Determine:

For Any Occupation
Yes ☑    No ☐    Cannot Determine ☑
_____ 19 _____    Cannot Determine ☑
_____ 19 _____

For His/Her Occupation
Yes ☐    No ☐    Cannot Determine ☐
_____ 19 _____    Cannot Determine ☐
_____ 19 _____

Name of Physician: Mousavi MN
Board Certified Specialty: Pain management

Street Address:            City or Town:            State:

Telephone Number:    Date:    Signature:

ALL DELMARVA NEUROLOGY
AND PAIN CENTER
701 MIDDLEFORD ROAD
SEAFORD, DE 19973
302-629-0266

(MM3128.GRN(1294))         ML00147

JUL-09-1997 16:36        UNIVAL                            313 973 2734    P.02/05

**J. RAFAEL YANEZ, M.D., F.A.C.S.**
NEUROLOGICAL SURGERY
1001 S. Bradford Street
Suite 9
Dover, DE 19901

302 674-9100 • FAX: 302 674-9114

RECEIVED JUN 1 9 1997

5 June 1997

Ms. Pam Brzozowski
Administrative Assistant
UNIVAL
2890 Carpenter Road, Suite 1400
P. O. Box 130770
Ann Arbor, Michigan 48113-0770

        Re: Gail Kernaghan

Dear Ms. Brzozowski:

The patient is evaluated at your request with specific attention to "radiculopathy L5-S1 and chronic lower back pain and any other physical complaints the patient has, within your specialty."

Her reason for this consultation she stated:

> "1/93 burst L3 fracture, incomplete fusion, prior. Pain is of distinctive types:
> 1) musculature - tightness in whole of back
> 2) pressure from bones rubbing. Can be as small as an uncomfortable ache to as severe as an overwhelming nausea, prevents one from thinking/acting clearly
> 3) right hip pain/ache
> 4) intermittent sciatica right side"

She feels that her back pain is constant, meaning daily, exacerbated by standing, sitting or walking and accompanied by intermittent right hip pain which is "deep inside". The back pain would occur three and a half to four days out of a week and the pain in the hip 25% of those days. The pain in the hip goes below into the anterior lateral aspect of the leg into the last two toes with a sensation of pins, needles and tingling. She feels in general, considering her condition from the onset following the accident on January 7, 1993, she is worse. She tells me she is not working and on disability since January 1995. She feels she is not able to work because of the pain in the back. She feels she is able to sit for an hour but at the end of it she has to change or lay down and eventually in this way she gets better. She does a lot of reading in bed, walks three or four times a day approximately a total of a mile, she assists to fitness class to the "aqua-fit" two days a week, spends time on the phone, watching television in bed and she drives approximately half an hour a day.

ML00246

Re: Gail Kernaghan                         2                        5 June 1997

She denies any problems with the left leg or lower left back or increase in the pain with increased abdominal pressure (Valsalva).

I received the following records:

    1) Evaluation and follow-up by her neurologist, Dr. Mousavi of Seaford, Delaware, from the initial consultation 8/16/95 to the last visit 1/7/97.

    2) A Thomas Jefferson Pain Center evaluation, 10/8/96 by Dr. Eric Ratner attending anesthesiology dictated by Tom McGrath, M.D., Fellow Jefferson Pain Center.

    3) A four and a half page office record of December 2, 1994 from Dr. Allen Carl, M.D. apparently her orthopedist in Albany.

    4) A letter from UNIVAL May 15, 1997 requesting this evaluation and asking nine questions to be answered.

    5) IBM statement of employer asking of application for long-term disability benefits to Met Life 6/16/94; a form of "training, education and experience statement" of Met Life of 2/18/95; a "personal profile evaluation" to Metropolitan Life Insurance of 10/2/95; a statement of attending physician for application for long-term disability benefits IBM signed by Allen Carl, M.D., orthopedics on 10/25/94; another form for long term disability benefits signed by the same Dr. Carl on 8/4/94; another disability evaluation, part of a form (signed by a Barry Greenhouse, M.D., anesthesiologist Albany 6/10/94) and two "physician's report for physical capacity, illegible signature, non-dated, with the specialty "neurology".

Missing from your packet were the EMG report, the MRI lumbo-sacral spine report, any information regarding the accident, no records from her initial family physician and no x-ray films or reports of any kind.

The patient brought the MRI films and they were returned to her. They were not accompanied by any reports.

The patient presented by herself and was examined in the presence of my nurse and my findings and opinions were not discussed with her.

My examination revealed a pleasant, middle aged lady of medium build, black hair cut short, eye glasses, revealing her chronologic forty-four years of age who states she is right handed. She was dressed casually in shorts. She has no difficulty in expressing herself quite clearly and pleasantly. She walks without any obvious difficulty or abnormalities of gait. After unrobing, the spinal curvatures were seen totally normal without evidence of any congenital or acquired stigmata. The tiptoe and heel walking was normal. The