**IBM**  Statement of Attending Physician (Surgeon)  **MetLife**

Application For Long Term Disability Benefits

Employee Name: Gail Kernaghan

Social Security No. _____

Employee Address: 21 Edgewood Dr, Rhinebeck, NY 12572

Please complete this form in its entirety by providing all medical history from the date the patient first became disabled. A recent medical exam is required which must be no more than two months old when the claim is received by Metropolitan. Missing information will delay the processing of this claim.

The patient has authorized release of any and all information pertaining to this claim to Metropolitan Life Insurance Co. The information provided is to be used for claims evaluation and auditing purposes only.

The patient is responsible for having this form completed without expense to Metropolitan or IBM.

Return completed statement to employee for transmittal to MetLife.

### 1. History

|   | Mo | Day | Year |
|---|---|---|---|
| A. Date symptoms first appeared/or accident occurred: | 1 | 17 | 93 |
| B. Date of first visit: | 1 | 17 | 93 |
| C. Date last seen: | 8 | 4 | 94 |
| D. Date of next exam: | Blocks in the OR |  |  |

E. Has patient ever had same or similar condition(s)?  Yes ☑  No ☐

S/P L3 burst fx.

If yes give details and dates of past history including all medical and surgical reports, diagnostic testing, x-rays, electrocardiograms, and hospitalization.

S/P L3 burst fx 1/17/93

F. The present condition of the patient:

Ambulatory ☑   Bed confined ☐   House confined ☐   Hospital confined ☐   Institutionalized ☐

### Diagnosis

**State Primary Diagnosis Affecting Work Ability**

S/P L3 burst fx
DDD.

**State Secondary Diagnosis Affecting Work Ability**

**List Objective Findings** (give dates and reports of surgery, x-rays, electrocardiograms, etc.)

S/P PSF L2-5

**List Objective Findings** (give dates and reports of surgery, x-rays, electrocardiograms, etc.)

**List Subjective Symptoms**

Back Pain

**List Subjective Symptoms**

### Is This Disability Incurred or Suffered as a result of:

| | Yes | No |
|---|---|---|
| Active Participation in a Riot | ___ | ___ |
| Addiction to Alcohol or Narcotic Drugs | ___ | ___ |
| Engaging In A Criminal Act | ___ | ___ |
| War, Insurrection, or Rebellion | ___ | ___ |

### Treatment Plan

**Present Treatment Plan**  **Future/Proposed Treatment Plan**

Pt. is unable to do job she was trained to do. Pt. is presently having further testing.

ML00642

Metropolitan Life Insurance

3. **Physical Impairment** as defined in Federal Dictionary of Occupational Titles
   - [ ] Class 1 - No limitation of functional capacity; capable of heavy work * No restrictions. (0-10%)
   - [ ] Class 2 - Medium manual activity * (15-30%)
   - [x] Class 3 - Slight limitation of functional capacity; capable of light work * (35-55%)
   - [ ] Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary *) activity. (60-70%)
   - [ ] Class 5 - Severe limitation of functional capacity; incapable of minimum (sedentary *) activity. (75-100%)
   
   Remarks:

4. Indicate below if you have any additional information that is relevant to this patient's work ability.

   *Pt. is unable to bend, lift, or twist*

5. **Cardiac** (If Applicable)
   (a) Functional capacity ............................. Class 1 (No limitation) [ ]    Class 2 (Slight limitation) [ ]
       (American Heart Ass'n)                           Class 3 (Marked limitation) [ ]  Class 4 (Complete limitation) [ ]
   (b) Blood Pressure (last visit) ...................... _____
                                                            systolic/diastolic

6. **MENTAL/NERVOUS IMPAIRMENT** (if applicable)
   (a) Please define "stress" as it applies to this claimant.
   (b) What stress and problems in interpersonal relations has claimant had on job?
   - [ ] Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitations)
   - [ ] Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations)
   - [ ] Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
   - [ ] Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
   - [ ] Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
   
   Remarks:

7. **Progress Evaluation** (Consider patient's overall progress as of the most recent exam)
   Recovered  Yes [ ]  No [x]     Unimproved   Yes [ ]  No [x]   Explain any changes:
   Improved   Yes [ ]  No [x]     Retrogressed Yes [ ]  No [ ]

8. **Disability Evaluation**   We are seeking your medical opinion on this topic. It will be our responsibility to assess it against vocational data, such as level of earnings (and job availability).

   The following questions take into account whether the patient can perform the important duties of his/her job with reasonable continuity, including commuting to work. They also take into account whether the patient can perform the important duties of any other job with reasonable continuity including commuting to work. In answering these questions please consider his/her age, physical and mental capacities, education, training, and experience.

   |  | For His/Her Occupation |  |  | For Any Occupation |  |
   |---|---|---|---|---|---|
   | Is patient now totally disabled? | Yes [x]  No [ ] | Cannot Determine [ ] | | Yes [x]  No [ ] | Cannot Determine [ ] |
   | If No, when was patient able to resume work activities? | _____ 19 _____ | Cannot Determine [ ] | | _____ 19 _____ | Cannot Determine [ ] |

   If Yes, when do you think patient will be able to resume work activities?
   
   Approximate Date: 10/1 19 94                              19 _____
   Indefinite:       _____                              _____
   Never:            _____                              _____
   Cannot Determine: _____                              _____

   If Yes, is patient a suitable candidate for:
   (a) vocational rehabilitation (retraining for a different occupation)  Yes [x]  No [ ]
   (b) therapeutic (physical) rehabilitation                               Yes [x]  No [ ]

9. In your opinion is the patient competent to endorse checks and direct the use of their proceeds?   Yes [x]  No [ ]

10. **Remarks:** If you have additional information relative to this disability claim, please attach information to the claim.

**It is a crime to fill out this form with facts you know are false or to leave out facts you know are important.**

Allen Carl, MD
**Name of Physician**                                    **Board Certified Specialty**

AMC  Suite A080    New Scotland Ave.    Albany,  NY  12208
**Street Address**              **City or Town**         **State**    **Zip Code**

(518) 262-5636                  8/4/94                   [signature]
**Telephone Number**            **Date**                 **Signature**

ML00643

NYHO-HZ979C

# Functional Limitations

)es patient's medical condition allow exposure to the following? Please check appropriate box and explain any limitation below.

| | Limitations | | | | |
|---|---|---|---|---|---|
| | None | Some | Avoid Completely | Cannot Determine | Other Significant Factors or Comments |
| Dust/Gases/Fumes | ✓ | | | | |
| Chemicals/Solvents | ✓ | | | | |
| Temperature Extremes | ✓ | | | | |
| Noise Levels | ✓ | | | | |
| Allergenic Agents | ✓ | | | | |
| Stairs/Ladders/Scaffolds/Heights | | ✓ | | | |
| Enclosed Spaces | | ✓ | | | |
| Drafts/Damp Areas | | ✓ | | | |

cause of the patient's medical conditions, are there any limitations on any of the following activities? Please check appropriate x and explain any limitation below.

| | Limitations | | | | |
|---|---|---|---|---|---|
| | None | Some | Avoid Completely | Cannot Determine | Other Significant Factors or Comments |
| Commuting: a) Ability to drive b) Use of public transportation | | ✓ | | | |
| Walking | | ✓ | | | |
| Standing | ✓ | | | | |
| Sitting | | ✓ | | | |
| Change of Position (sitting/standing) | | ✓ | | | |
| Assuming Cramped/Unusual Positions | | ✓ | | | |
| Reaching (forward/overhead) | | ✓ | | | |
| Pushing/Pulling/Twisting (arm/leg controls) | | ✓ | | | |
| Grasping/Handling | ✓ | | | | |
| Finger Dexterity | ✓ | ✓ | | | |
| Repetitive Movement (hands/feet) | ✓ | | | | |
| Climbing (stairs/ladders/scaffolds) | | ✓ | | | |
| Balancing (exposure to falling) | | ✓ | | | |
| Bending/Stooping/Squatting | | ✓ | | | |
| Operating Truck/Dolly/Small Vehicle | | ✓ | | | |
| Operating Heavy Equipment | ✓ | | | | |
| Operating Electrical Equipment | ✓ | | | | ML00644 |
| Concentrated Visual Attention | ✓ | | | | |

aluation of carrying and lifting abilities includes both the intensity (how much weight) and frequency (how often) of the activity. r each weight class listed below, please indicate the reasonable top limit of frequency.

| Intensity in Pounds | Frequency: Percentage of Workday | | | |
|---|---|---|---|---|
| | Never | Less than 20% | 20%-60% | Greater than 60% |
| 0-15 | | | ✓ | |
| 16-30 | | ✓ | | |
| 31-45 | ✓ | | | |
| Greater than 45 | ✓ | | | |

**IBM**    Statement of Attending Physician  *(Pain Management Doctor)*    **MetLife**

Application For Long Term Disability Benefits

Employee Name __Gail Kernaghan__    Social Security No. __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__

Employee Address __IBM Prudential__

Please complete this form in its entirety by providing all medical history from the date the patient first became disabled. A recent medical exam is required which must be no more than two months old when the claim is received by Metropolitan. Missing information will delay the processing of this claim.

The patient has authorized release of any and all information pertaining to this claim to Metropolitan Life Insurance Co. The information provided is to be used for claims evaluation and auditing purposes only.

The patient is responsible for having this form completed without expense to Metropolitan or IBM.

Return completed statement to employee for transmittal to MetLife.

1. History

| | Mo | Day | Year |
|---|---|---|---|
| A. Date symptoms first appeared/or accident occurred: | 1 | 17 | 93 |
| B. Date of first visit: | 4 | 13 | 94 |
| C. Date last seen: | 6 | 7 | 94 |
| D. Date of next exam: | 9 | 1 | 94 |

E. Has patient ever had same or similar condition(s)?
   Yes ☐    No ☒

   If yes give details and dates of past history including all medical and surgical reports, diagnostic testing, x-rays, electrocardiograms, and hospitalization.

F. The present condition of the patient:
   Ambulatory ☒   Bed confined ☐   House confined ☐   Hospital confined ☐   Institutionalized ☐

**Diagnosis**

State Primary Diagnosis Affecting Work Ability

State Secondary Diagnosis Affecting Work Ability

List Objective Findings (give dates and reports of surgery, x-rays, electrocardiograms, etc.)

List Objective Findings (give dates and reports of surgery, x-rays, electrocardiograms, etc.)

List Subjective Symptoms
   Back pain

List Subjective Symptoms

Is This Disability Incurred or Suffered as a result of:
| | Yes | No |
|---|---|---|
| Active Participation in a Riot | | X |
| Addiction to Alcohol or Narcotic Drugs | | X |
| Engaging In A Criminal Act | | X |
| War, Insurrection, or Rebellion | | X |

**Treatment Plan**

Present Treatment Plan

Future/Proposed Treatment Plan

ML00645

3. **Physical Impairment** as defined in Federal Dictionary of Occupational Titles
   - [ ] Class 1 - No limitation of functional capacity; capable of heavy work * No restrictions. (0-10%)
   - [ ] Class 2 - Medium manual activity * (15-30%)
   - [✓] Class 3 - Slight limitation of functional capacity; capable of light work * (35-55%)
   - [ ] Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary *) activity. (60-70%)
   - [X] Class 5 - Severe limitation of functional capacity; incapable of minimum (sedentary *) activity. (75-100%)
   - Remarks:

4. Indicate below if you have any additional information that is relevant to this patient's work ability.

5. **Cardiac** (If Applicable)
   (a) Functional capacity ............... Class 1 (No limitation) [X]   Class 2 (Slight limitation) [ ]
       (American Heart Ass'n)              Class 3 (Marked limitation) [ ]   Class 4 (Complete limitation) [ ]
   (b) Blood Pressure (last visit) .......... _____ systolic/diastolic

6. **MENTAL/NERVOUS IMPAIRMENT** (if applicable)
   (a) Please define "stress" as it applies to this claimant.
   (b) What stress and problems in interpersonal relations has claimant had on job?
   - [ ] Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitations)
   - [ ] Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations)
   - [ ] Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
   - [X] Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
   - [ ] Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
   - Remarks:

7. **Progress Evaluation** (Consider patient's overall progress as of the most recent exam)
   Recovered  Yes [ ]  No [X]    Unimproved  Yes [ ]  No [X]    Explain any changes:
   Improved   Yes [ ]  No [X]    Retrogressed Yes [ ]  No [X]

8. **Disability Evaluation**  We are seeking your medical opinion on this topic. It will be our responsibility to assess it against vocational data, such as level of earnings (and job availability).

   The following questions take into account whether the patient can perform the important duties of his/her job with reasonable continuity, including commuting to work. They also take into account whether the patient can perform the important duties of any other job with reasonable continuity including commuting to work. In answering these questions please consider his/her age, physical and mental capacities, education, training, and experience.

   |  | For His/Her Occupation | For Any Occupation |
   |---|---|---|
   | Is patient now totally disabled? | Yes [X]  No [ ]  Cannot Determine [ ] | Yes [X]  No [ ]  Cannot Determine [ ] |
   | If No, when was patient able to resume work activities? | _____19_____  Cannot Determine [ ] | _____19_____  Cannot Determine [ ] |

   If Yes, when do you think patient will be able to resume work activities?
   | | | |
   |---|---|---|
   | Approximate Date: | ___19___ | ___19___ |
   | Indefinite: | X | |
   | Never: | | |
   | Cannot Determine: | | |

   If Yes, is patient a suitable candidate for:  (a) vocational rehabilitation (retraining for a different occupation) Yes [ ]  No [ ]
                                                  (b) therapeutic (physical) rehabilitation                            Yes [ ]  No [ ]

9. In your opinion is the patient competent to endorse checks and direct the use of their proceeds?   Yes [ ]  No [ ]

10. Remarks: If you have additional information relative to this disability claim, please attach information to the claim.

**It is a crime to fill out this form with facts you know are false or to leave out facts you know are important.**

B. Barry Greenhouse, M.D. P.C.          Anesthesologist
Name of Physician                       Board Certified Specialty

3 Columbia Circle       Albany          N.Y.            12203
Street Address          City or Town    State           Zip Code

(518) 464-0039          6/10/94         [signature]
Telephone Number        Date            Signature

ML00646

NYHO-HZ979C

## Functional Limitations

Does patient's medical condition allow exposure to the following? Please check appropriate box and explain any limitation below.

| | Limitations | | | | Other Significant Factors or Comments |
|---|---|---|---|---|---|
| | None | Some | Avoid Completely | Cannot Determine | |
| Dust/Gases/Fumes | ✓ | | | | |
| Chemicals/Solvents | ✓ | | | | |
| Temperature Extremes | ✓ | | | | |
| Noise Levels | ✓ | | | | |
| Allergenic Agents | ✓ | | | | |
| Stairs/Ladders/Scaffolds/Heights | | ✓ | | | |
| Enclosed Spaces | ✓ | | | | |
| Drafts/Damp Areas | ✓ | | | | |

Because of the patient's medical conditions, are there any limitations on any of the following activities? Please check appropriate box and explain any limitation below.

| | Limitations | | | | Other Significant Factors or Comments |
|---|---|---|---|---|---|
| | None | Some | Avoid Completely | Cannot Determine | |
| Commuting: (a) Ability to drive | | ✓ | | | |
| (b) Use of public transportation | | ✓ | | | |
| Walking | ✓ | | | | |
| Standing | | ✓ | | | |
| Sitting | | ✓ | | | |
| Change of Position (sitting/standing) | | ✓ | | | |
| Assuming Cramped/Unusual Positions | | ✓ | | | |
| Reaching (forward/overhead) | | ✓ | | | |
| Pushing/Pulling/Twisting (arm/leg controls) | | ✓ | | | |
| Grasping/Handling | ✓ | | | | |
| Finger Dexterity | ✓ | | | | |
| Repetitive Movement (hands/feet) | ✓ | | | | |
| Climbing (stairs/ladders/scaffolds) | | ✓ | | | |
| Balancing (exposure to falling) | | ✓ | | | |
| Bending/Stooping/Squatting | | ✓ | | | |
| Operating Truck/Dolly/Small Vehicle | ✓ | | | | |
| Operating Heavy Equipment | ✓ | | | | |
| Operating Electrical Equipment | ✓ | | | | ML00647 |
| Concentrated Visual Attention | ✓ | | | | |

Evaluation of carrying and lifting abilities includes both the intensity (how much weight) and frequency (how often) of the activity. For each weight class listed below, please indicate the reasonable top limit of frequency.

| Intensity in Pounds | Frequency: Percentage of Workday | | | |
|---|---|---|---|---|
| | Never | Less than 20% | 20%-60% | Greater than 60% |
| 0-15 | | | ✓ | |
| 16-30 | | ✓ | | |
| 31-45 | ✓ | | | |
| Greater than 45 | ✓ | | | |

# PHYSICIAN CONSULTANT REVIEW

**DATE OF REVIEW:** 12/28/04

**CLAIMANT NAME:** GAIL KERNAGHAN

**CLAIM NUMBER:** 699501171006

**CLAIMANT SS#:** 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

**REFERRAL SOURCE:** Linda Rogers, 315-792-1783

**Diagnosis (es):**

L3 compression fracture with chronic low back pain.

**File History/Summary:**

The employee is a 52-year-old software engineer for IBM with a last date of work of 11/21/94. She apparently was involved in a sledding accident in 1993 with an L3 compression fracture. She returned to work part time for a period of time but was never able to increase her hours to a full-time basis and the part-time work she did after her fracture, she apparently was never consistent in her ability to maintain her schedule. Benefits were paid through 11/18/04 and terminated based on information indicating she could perform sedentary work duties and transferable skills analysis indicating job availability. I am currently being asked to review the medical on appeal for ongoing long-term disability at any occupation.

**Summary of Activity:**

Physician Statement of Functional Capacity from Dr. Mousari, neurology, 03/07/01, indicated no environmental limitations. Physically, there was limitation of transportation, standing for 30 minutes, sitting for 10 minutes, change of position every 30-60 minutes, inability to assume cramped positions, reach forward, push/pull, twist, climb, balance, bend, stoop, squat, operate small and heavy equipment, operate electrical equipment and 30 minutes of concentrated visual attention. She was felt to be able to lift and carry less than 10 lb. She was felt to be disabled for any occupation.

Page 1 of 11

Independent Physician Consultant Review For MetLife Disability

Page 2 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AG-LINYFAXSVR04.

ML00709

CLAIMANT NAME:          GAIL KERNAGHAN

CLAIM NUMBER:           699501171006

CLAIMANT SS#:           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

Independent evaluation by Dr. Bonner, 04/15/02, indicated Ms. Kernaghan suffered a back injury while sledding in 1993 causing a burst fracture to L3. At the time, she was diabetic but diet controlled. Since that time, she complained of back pain and intermittent right lower extremity pain with intermittent paresthesias. She reported cognitive changes due to her medication. Her medications at the time of evaluation included Zanaflex, Neurontin and Vicodin. She was treating with pain management physician who apparently left the country and had not returned and recently started treating with another physician. She reported a 60 lb weight gain since her accident.

Her examination showed full range of motion of the cervical spine and intact and symmetric reflexes of the upper extremities and knees. She had absent ankle reflexes. Straight leg raising was positive at the right at 70° and negative on the left. She had a moderate degree of guarding in the lumbar spine in the area of L3, 4, 5. She was also tender in the right greater sciatic notch and right sacroiliac joint and right greater trochanteric area. She ambulated independently without an assistive device. She was able to come within 4" of touching her toes and complained of discomfort. She had limited right lateral flexion, and full lateral flexion-extension was also limited due to pain. Sensation was intact to light touch. Dr. Bonner felt she had evidence of chronic pain syndrome secondary to her burst fracture at L3 with ongoing evidence of lumbar radiculopathy.

She was felt to have evidence of some cognitive dysfunction secondary to medication, but he did not delineate what findings in his examination lead to this conclusion. He reported she was now an insulin-dependent diabetic. He felt her objective findings correlated with respect to complaints. He indicated her physical capacities would fall in the classification of sedentary-to-light with the ability to get up and move around but was significantly limited by her present medications.

In a followup letter to Ms. Harbin, RN, Dr. Bonner indicated 05/02/02 that Waddell signs were negative, and he recommended continued medical followup, analgesic medication and intermittent outpatient physical therapy.

Page 2 of 11

Independent Physician Consultant Review For MetLife Disability

Page 3 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AG-LINYFAXSVR04.

ML00710

| | |
|---|---|
| CLAIMANT NAME: | GAIL KERNAGHAN |
| CLAIM NUMBER: | 699501171006 |
| CLAIMANT SS#: | 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 |

Records from physical medicine rehabilitation physician Dr. Upabhyay begin 04/05/02. On that day she was following up with complaints of right shoulder and back problems. She was noted to be on Vicodin and Xanax. Neurontin and Paxil were started but caused hallucinations. She was documented to be 5'5" tall and 198 lb. She was noted to have a non-antalgic gait and mount and dismount from the exam table readily. She had tenderness of extension in the glenohumeral joint, and no impingement documented on examination. She was tender over the SI joint on the right and over the greater trochanteric bursa. The iliotibial band also increased in tone and tenderness, I assume, on the right. The assessment was for chronic low back pain secondary to right SI joint dysfunction, lumbar facet syndrome improved and right shoulder pain, rule out rotator cuff injury.

An MRI of the right shoulder was ordered, and she was instructed to continue her home exercise program. She was continued on her Vicodin and Zanaflex, and Depakote was added to titrate up to 1 gm over the next month. Paxil and Neurontin were discontinued. She was noted to be working full time without restrictions and was recommended to continue to do so.

Laboratory evaluation from 04/08/02 documented an ANA borderline at 1-80 both homogenous and speckled pattern, negative lime antibodies, normal CBC, hepatic functional panel, sed. rate, creatinine, kinase and aldolase levels.

MRI of the right shoulder 04/08/02 shows minimal supraspinatus tendinosis without rotator cuff tear, minimal-to-mild subacromial bursal fluid consistent with very low grade bursitis. No labral tear was documented.

Attending Physician Statement of Functional Capacity from Dr. Upabhyay, 04/19/02, indicated she needed to avoid extremes of temperatures, ladders, stairs, scaffold heights, enclosed spaces, drafts and damp areas, cramped and unusual positions, climbing, balancing, bending, stooping, squatting, operating small vehicles, heavy equipment and electrical equipment. She was felt to have no limitation in regard to change of position, grasping, handling, finger dexterity and concentrated visual attention. She was felt to be able to sit a maximum of 30-60 minutes and stand a maximum of 30 minutes. She was able to lift 15 lb less than 20% of the day.

Page 3 of 11
Independent Physician Consultant Review For MetLife Disability

Page 4 of 12 received at 3/28/2006 3:28:50 PM [Eastern Standard Time] on server AB-LINYFAXSVR04.

ML00711

CLAIMANT NAME:      GAIL KERNAGHAN

CLAIM NUMBER:       699501171006

CLAIMANT SS#:       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

He noted medications caused sedation and decreased concentration. She was felt to be unimproved but stable on medications with permanent injury and totally disabled for any occupation as well as her own occupation.

Letter to Dr. Reyes 04/22/02 indicates a referral to a rheumatologist for evaluation of positive ANA and sed. rate.

Followup with Dr. Upabhyay 06/06/02 indicated evaluation by Dr. Tamesis, her right shoulder and elevated rheumatoid neurology. Her pain was stable at 5/10, and she was sleeping well at night. Her depression anxiety resolved on Effexor. Her medications included Effexor XR 75 mg a day, Vicodin 1/2 tablet 2 times a day, Zanaflex 8 mg at night and Neurontin 200 mg at night without side effects. Her examination showed her to have bilaterally tender SI joints. Biceps tendon was nontender. She had tenderness over the anterior deltoid with negative near-impingement sign but positive Hawkins in an equivocal manner. She was felt to have SI joint dysfunction causing low back pain, reactive anxiety and depression, right rotator cuff tendinopathy, elevated sed. rate and ANA followed by rheumatology. Again, she was directed to her home exercise program.

On 08/01/02 followup, Dr. Upabhyay indicates Dr. Tamesis found no significant rheumatologic diagnosis. She reported difficulty dressing due to right shoulder problems. She reported Effexor making her sedated and wished to stop that medication.

On examination, her weight was 206 lb. She moved around the exam room without difficulty. Neurologically, she was intact. Range of motion of the right shoulder showed limitations of forward flexion to 170°, abduction to 90°, and extension to 40°, and low back tenderness in the SI joints bilaterally with range of motion of forward flexion to 50° and extension to around 30°. Her reflexes were 2+ and symmetric in the lower extremities. She was weaned off Effexor over a week's period of time and started on Celexa and continued on Neurontin, Zanaflex and Vicodin. Suggestion of switching from Vicodin to Kadian since she was using her Vicodin regularly was discussed.

Laboratory 08/28/02 showed a normal CBC and hepatic function panel.

Page 4 of 11

Independent Physician Consultant Review For MetLife Disability

Page 5 of 12 received at 3/26/2006 3:28:00 PM [Eastern Standard Time] on server AG-LINYFAXSVR04.

ML00712

CLAIMANT NAME:      GAIL KERNAGHAN

CLAIM NUMBER:       699501171006

CLAIMANT SS#:       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

Followup 08/29/02 indicated ongoing myofascial pain in the right upper trapezius and cervical spine discomfort without any exterior radicular symptoms. She describes some deconditioning in leg weakness and back pain worsened with bad weather. She remained on insulin, Vicodin 3 a day, Celexa, Zanaflex and Neurontin at night. Her weight was stable at 206 lb. Her gait remained non-antalgic, and she was able to mount and dismount the exam table readily. Examination showed tenderness of the trapezius muscles, negative Neer and Hawkins impingement, intact lower extremity reflexes and no ankle clonus. The Impression was for right shoulder myofascial pain, chronic low back pain status post L3 burst fracture and diabetes. She was excused from work and jury duty, and no changes in her medications were noted.

Physical Capacity Evaluation from that day indicated 6 hours of sitting and 2 hours each of standing and walking. She could frequently lift 10 lb and occasionally to 20 lb, and occasionally carry 10 lb. She is capable of simple grasping and fine manipulating on a repetitive basis but no push/pulling. She was felt to be occasionally able to bend, squat, reach above shoulder level but never crawl or climb. She was felt to have moderate restriction in regard to exposure to dust and fumes and mild restrictions in regard to moving machinery and its exposure to changes in temperature and humidity.

In 10/01/02 followup she continued to have ongoing back pain with some pain in her neck. Average back pain was a level of 6. She had no clear radicular symptoms. Her medications were unchanged. Her weight was 208 lb. Her examination was unchanged. Dr. Upabhyay indicated she was unable to use Kadian or MS Contin due to her history of sulfa allergy. Consideration for Duragesic was noted. OxyContin in the past had made her lethargic and irritable. He indicated he would attain a second opinion from his colleague, Dr. Ameer, in regard to drug enforcement administration recommendations.

Personal Profile from 12/2002 from Ms. Kernaghan indicated she was unable to work due to pain resulting from an accident in her lower back and right hip area severe enough to limit her functional thinking. She reported taking Vicodin 3 times a day, -------adine, Celexa, Neurontin, Bextra and insulin. Medications were of no benefit. She was residing with her husband. She documented her height as 5'5" tall and weight as 200 lb. She indicated she arose in the morning at 9 a.m. and retired at 11:30 p.m.

Page 5 of 11
Independent Physician Consultant Review For MetLife Disability

Page 6 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AS-LIBYFAXSVR04.

ML00713

CLAIMANT NAME:     GAIL KERNAGHAN

CLAIM NUMBER:      699501171006

CLAIMANT SS#:      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

She indicated she simplified her personal care and wore simple clothing. She indicated she volunteered in the local library one day a week for 3 hours. She generally assisted patrons on the internet. She did not anticipate return to any type of work due to her illness and erratic ability to be active. She indicated she did laundry, dusting and dishes when she was able to and relied upon her husband to do all heavy housework, lawn care and household repairs. She drove short distances less than 30 minutes with frequent stops. She indicated she participated in reading, television, computer use and deep water walking twice a week for 45 minutes.

Physical Capacity forms filled out by Dr. Upabhyay 03/31/03 and 11/20/03 indicate no change from that filled out on 08/29/02.

Home visit from Crawford representative, Ms. Palish, RN, on 02/11/04 indicated Ms. Kernaghan was pleasant and cooperative during the interview. Her sister and brother-in-law were visiting but were not present for the interview. She wore casual pants and top and comfortable shoes. She ambulated slowly and required change of position every 30 minutes. She was noted to be left-hand dominant and she relates the specifics in regard to her sledding injury with her daughter on 11/22/94.

She initially wore a body brace for a period of 6 months and then on and off for an additional 2 years to reduce her low back pain. Physical therapy has not been helpful for her pain. Though Dr. Upabhyay has provided work capacities for her, she indicates she is concerned she would not be able to perform within these capacities on a consistent basis. She indicated she had right hip radicular discomfort 3-4 times per month described as a burning-type of pain. This was relieved with bedrest and medication. She reported ability to lift 5-10 lb, being able to lift small bags of groceries without difficulty. She reported sitting and standing ability to 30 minutes at a time and ability to walk approximately 2 hours with rest. She reported an 80 lb weight gain since her injury. Though she was independent with all activities of daily living, she reported assistance required with housework and driving short distances only.

For pain, she was taking Vicodin 3 x a day. She was water walking at the YMCA 2 days per week. She was unable to increase her Neurontin dosage due to hallucinations. She had recently started Lidoderm patches as needed for her pain relief.

Page 6 of 11
    Independent Physician Consultant Review For MetLife Disability

Page 7 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AS-LINYFAXSVR04.

ML00714

CLAIMANT NAME:      GAIL KERNAGHAN

CLAIM NUMBER:       699501171006

CLAIMANT SS#:       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

She reported cognitive dysfunction secondary to narcotic pain medication such as forgetting to turn off the stove and inability to drive more than short distances. She perceived herself as totally disabled because she was uncertain when her pain would increase and how long it would last. She reported at times her pain lasted for 2-3 days requiring bedrest.

Her weight was reported at 204 lb. She indicated she arose at 9 a.m. taking 1 hour to get moving and requiring a hot shower. She ate breakfast of bacon or sausage and talked on the phone, read, watched TV and has lunch between 1-2 p.m., generally half a sandwich. She made her own dinner and then watched TV or read. She got tired at 11 p.m. She was going through a divorce of her husband of 18 years. Her 22-year-old daughter was noted to live close by. Her husband continued to assist with bills. Her home was well kept, neat and clean and uncluttered. She was noted to have a donkey residing in the back barn which was cared for by her husband. She was documented to be able to do small loads of laundry, drive less than 30 minutes, sit up to 1 hour and have problems with decreased range of motion of her right shoulder making it difficult to hook and unhook her bra.

She had no plans to attempt to return to work given her prior attempt to work several years ago. She considered herself totally disabled. She felt she would not be able to perform consistently at the capacities delineated by Dr. Upabhyay 11/20/03. Potential to return to work was felt to be impacted by her perception of her pain.

Subsequent to this, a Functional Capacity Evaluation was completed 04/26 and 04/27/04. This was felt to be consistent with a sedentary level demanding 8 hours per day with the need to alternate sitting and standing activities frequently. The patient was felt to give maximal effort during the evaluation. Range of motion of the right shoulder was limited to forward flexion of 170°, extension to 30°, abduction to 170°?-, internal rotation to 20° and external rotation to 80°. Right shoulder strength was noted to be in the 4+ to 4- range. Left shoulder range of motion was within normal limits, and strength was 4+ range throughout. Her reflexes were noted to be 2+ and symmetric bilaterally in the upper and lower extremities.

Ms. Kernaghan completed all tests items regarded of the reported pain level. She demonstrated safe performance of body mechanics with occasional verbal cuing.

Page 7 of 11
Independent Physician Consultant Review For MetLife Disability

Page 8 of 12 received at 3/29/2006 3:28:00 PM [Eastern Standard Time] on server AS-LNYFAXSVR04.

ML00715

CLAIMANT NAME:     GAIL KERNAGHAN

CLAIM NUMBER:      699501171006

CLAIMANT SS#:      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

She demonstrated appropriate pacing and good general awareness of safe techniques. Her movement was smooth and coordinated throughout all test items. She is felt to have excellent ability to elevated work rotational activities, crawling, kneeling, crouching, standing tolerance and ambulation activities, good ability to forward reaching, repetitive squat and sit tolerance. She is below average in general grip strength and hand coordination.

There is a Labor Market Survey dated 04/25/03 in the file. This would appear to be from a different claimant given the diagnosis of asthma and respiratory irritated exposure and job title of territory manager.

Transferrable skills and Labor Market Survey dated 08/23/04 regarding Gail Kernaghan indicates she would be qualified to perform as a procurement manager, customer service manager or employment manager within the Delaware geographic area earning between $40,000-50,000 a year. Positions were considered to be sedentary with considerable capabilities. The only deterrent is due to the fact that she has been out of the workforce for many years.

Letter dated 10/19/04 to Ms. Kernaghan from MetLife indicated termination of benefits effective 11/19/04, given her Employment Stability Assessment and Labor Market Analysis and restrictions and limitations to sedentary-type work. She was, therefore, not felt to be disabled from any occupation.

Letter dated 10/26/04 from Ms. Kernaghan regarding appeal for her disability benefits.

Letter from Dr. Upabhyay dated 10/09/04 indicates there was an original dictation 05/04 that was lost and not recovered. He reviewed her history in his 2-page letter. He notes a history of diabetes, rheumatic fever with subsequent heart murmur, family history of coronary artery disease, hypertension. She is noted to have diagnosis of chronic low back pain status post L3 compression burst fracture along with mechanical back pain and SI joint dysfunction with right greater trochanteric bursitis and iliotibial band syndrome. He notes a diagnosis of anxiety disorder secondary to chronic illness. He notes dates of treatment from 01/04/02 through 09/13/04. Of note, we do not have his office records subsequent to 08/29/02.

Page 8 of 11
Independent Physician Consultant Review For MetLife Disability

Page 8 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AS-LINYFAX8VR04.

ML00716

**CLAIMANT NAME:** GAIL KERNAGHAN

**CLAIM NUMBER:** 699501171006

**CLAIMANT SS#:** 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

As of last office visit 09/04 her medications included Neurontin, Prozac, Vicodin and Zanaflex.

MRI from 10/12/02 showed a right S1 sacral region bone contusion with compression fracture and endplate fractures or Schmorl nodes at L3.

X-ray of the lumbar spine from 09/14/00 demonstrated 25% destruction of L3 vertebral body with degenerative disk at L2-3 and L3-4.

Dr. Upabhyay felt the Function Test Evaluation from 05/2004 was inaccurate and did not include or test the effects of prolonged sedentary activity with prolonged sitting, standing or workplace environment activities for more than 4-hour period. He indicates Ms. Kernaghan suffers from chronic lumbosacral spine pain secondary to L3 burst fracture with resulting disk disruption at L2-3 and L3-4 with permanent injury. He felt she was unable to occupationally work in any capacity due to her lumbar spine condition, and she should be restricted at home to sedentary duty activity.

Letter from Ms. Kernaghan dated 11/05/04 indicates a well-written and typed 4-page letter in regard to the appeal of her disability claim. Subsequent to this, her ex-husband indicates 11/10/04 that ex-wife cannot use his assistance because he is unable to provide it any longer. He reports that there are days on end where she does not get dressed. He indicates he was too young to be married to an invalid. She is now the responsibility of their daughter and son-in-law.

Teleconference with Linda Rogers indicates that social security disability at the ALJ level was declined due to sub-substantial evidence of impairment. This occurred in 12/2000.

Questions Posed and Answers:

1) What specific restrictions and limitations are supported by the medical documentation in file? Is there any evidence of impairment for functional activities related to medication?

Page 9 of 11
Independent Physician Consultant Review For MetLife Disability

Page 10 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AS-LINYFAXSVR04.

ML00717

CLAIMANT NAME:        GAIL KERNAGHAN

CLAIM NUMBER:         699501171006

CLAIMANT SS#:         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

Records would indicate a history of L3 burst fracture in a sledding accident either in 1993 or 1994. Subsequent to this, she developed a chronic back pain problem with a failed attempt to return to work at IBM. There are no treatment records in file 1993 until 2001. There is indication she was being treated by a physician who left the country. It is unclear whether she had continuous treatment for her back pain condition over the number of years.

When the records begin in more detail 04/2002, she is being treated for rotator cuff tendinopathy. This subsequently is diagnosed as a right shoulder myofascial pain syndrome. Independent medical exam by Dr. Bonner in 04/2002 indicated she was physically capable of participating in sedentary-to-light activity but he felt she was limited due to her present medications. Unfortunately, his dictation does not delineate what type of impairment she has related to her medications. There is no objective evidence in terms of psychological testing to indicate that there is cognitive impairment in file.

Subsequent home visit in 2004 indicated she was an engaging individual to interview. There is no evidence of cognitive impairments delineated in that interview. Subsequent Functional Capacity Evaluation delineated capacity to participate in sedentary activities with ability to change position on a frequent basis.

Ms. Kernaghan lives independently getting assistance for heavier housework tasks from her daughter. She is able to drive at least short distances and prepare her own meals. There has been no recent documentation or documentation for quite some years in terms of her being cognitively impaired in regard to her cooking. Per Dr. Upabhyay's evaluation, he notes some tenderness over the shoulder and back, she is generally noted to move around the exam room without difficulty and be able to get on and off the exam table again without difficulty. There is no description of any abnormalities in gait. Dr. Upabhyay on 04/05/02 indicated that Ms. Kernaghan was working full time without restriction. I assume that was a typographical error.

Records indicate presence of a L3 compression fracture since 1993 or 1994, mild degenerative disk disease above that level, and a history of some right shoulder tendinopathy. She is able to live independently taking care of her personal needs, cooking and laundry.

Page 10 of 11
Independent Physician Consultant Review For MetLife Disability

Page 11 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AE-LINYFAXSVR04.

ML00718

CLAIMANT NAME: GAIL KERNAGHAN

CLAIM NUMBER: 699501171006

CLAIMANT SS#: 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

She is able to drive short distances and participate in an exercise program such as deep water walking on a consistent basis. She has also indicated that when able, she volunteers at a library assisting clients with the use of the internet. She was not approved for social security disability due to sub-substantial evidence of impairment. She is limited by her perception of her pain and disability that it leaves her with.

Objectively, she is able to participate in sedentary-to-light activities that she chooses to pursue such as laundry, driving, computer use, occasional volunteer at the library, etc. I do not see a reason to restrict sedentary-to-light activity that she wishes to pursue on a medical basis. Restrictions in regard to lifting greater than 15-20 lb on an occasional basis, frequent push/pull work and frequent overhead work is warranted given her history of L3 compression fracture with mild degenerative disk disease and right shoulder tendinopathy. She should be allowed to change position on an every 30- to 60-minute basis.

Name, Title/Specialty:   Valerie Y. Ito, M.D.
Board Certified Physical Medicine
and Rehabilitation

Page 11 of 11
RKS/ks-69635

Independent Physician Consultant Review For MetLife Disability

Page 12 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AS-LINYFAXSVR04.

ML00719

**CERTIFICATE OF SERVICE**

    I, Rick S. Miller, Esquire state under penalty of perjury that I caused a copy of the foregoing Appendix to Plaintiff's Opening brief in Support of Her Motion for Summary Judgment to be served via hand delivery on March 30, 2006 to the following:

Tanya Jefferis, Esquire
McCarter & English, LLP
Suite 1800
919 N. Market Street
Wilmington, DE 19801

                                        /s/Rick S. Miller
                                        RICK S. MILLER, ESQUIRE (#3418)