IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GAIL KERNAGHAN,              :

      Plaintiff,       :  C.A. No. 05-402 (GMS)

      v.            :

METROPOLITAN LIFE INSURANCE    :
COMPANY, as fiduciary and administrator of The  :
IBM Long-Term Disability Plan,     :

      Defendant.     :

**DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**McCARTER & ENGLISH LLP**

Paul A. Bradley (DE ID No. 2156)
Tanya Pino Jefferis (DE ID No. 4298)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware 19899
(302) 984-6300
Attorneys for Defendant
Metropolitan Life Insurance Company

Date: April 3, 2006

## TABLE OF CONTENTS

**TITLE**                                                                                                    **PAGE**

TABLE OF CITATIONS .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 2

STATEMENT OF FACTS ............................................................................................ 3

ARGUMENT ................................................................................................................ 9

    I.      SUMMARY JUDGMENT STANDARD .................................................... 9

    II.     ERISA STANDARD OF REVIEW ........................................................... 10

    III.    METLIFE'S DETERMINATION THAT PLAINTIFF IS NOT
          "TOTALLY DISABLED" IS SUPPORTED BY SUBSTANTIAL
          EVIDENCE ................................................................................................ 10

          A.     Substantial Evidence Supports the Claims Administrator's
                Decision to Terminate Benefits ....................................................... 11

          B.     The Substantial Evidence Supporting MetLife's
                Decision is not Outweighed By Contradictory Evidence ............... 15

          C.     The Record Contains No Objective Evidence
                Of Plaintiff's Alleged Cognitive Dysfunction
                Or that it Rendered Her Unable to Work ......................................... 19

CONCLUSION ............................................................................................................ 22

ME1\5577715.1

## TABLE OF CITATIONS

### FEDERAL CASES

*Black & Decker Disability Plan v. Nord,*
    538 U.S. 822 (2003) ................................................................ 16

*Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan,*
    378 F.3d 669 (7th Cir. 2004) .................................................... 13

*Cord v. Reliance Standard Life Insurance Co.,*
    362 F. Supp. 2d 480 (D. Del. 2005) ................................... passim

*Courson v. Bert Bell NFL Player Retirement Plan,*
    214 F.3d 136 (3rd Cir. 2000) .................................................... 11

*Delande v. ING Employee Benefits,*
    112 Fed. Appx. 199, 201 (3rd Cir. 2004) ................................. 21

*Gannon v. Metropolitan Life Insurance Co.,*
    360 F.3d 211 (1st Cir. 2004) .................................................... 13

*Johnson v. UMWA Health & Retirement Funds,*
    125 Fed. Appx. 400, 403 (3rd Cir. 2005) ...................... 11, 14, 15

*Maninger v. Hartford Ins. Co.,*
    160 Fed. Appx. 578 (9th Cir. 2005) ......................................... 12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ................................................................... 9

*McGee v. Reliance Standard Life Insurance Co.,*
    360 F.3d 921 (8th Cir. 2004) .................................................... 20

*Newport News Shipbuilding and Dry Dock Co. v. Cherry,*
    326 F.3d 449 (4th Cir. 2003) .................................................... 11

*Nichols v. Verizon Communications,*
    78 Fed. Appx. 209, 211-212 (3rd Cir. 2003) ........................... 16

ii

**STATE CASES**

*Delong v. Aetna Life Insurance Co.*,
  2006 WL 328348 (E.D. Pa. Feb. 9, 2006) ...................................................9, 11, 15, 16

*Donnell v. Metropolitan Life Insurance Co.*,
  2003 WL 21655189, *aff'd*, 2006 WL 297314 (4th Cir. Feb. 8, 2006)........................ 12

*Hoover v. Metropolitan Life Insurance Co.*,
  2006 WL 343223 (E.D. Pa. Feb. 14, 2006) ...................................................... passim

*Klecher v. Metropolitan Life Insurance Co.*,
  2005 WL 1337509 (S.D.N.Y. June 6, 2005)
  *aff'd*, 2006 WL 374122 (2nd Cir. Feb. 16, 2006)...................................................... 17

**FEDERAL STATUTES**

29 U.S.C. §1132(a)(1)(B) ................................................................................. 1

Fed. R. Civ. P. 56(c) ....................................................................................... 9

Fed. R. Civ. P. 56(e) ....................................................................................... 9

**MISCELLANEOUS**

Employee Retirement Security Act of 1974 ...................................................... 1

MEI\5577715.1

## NATURE AND STAGE OF THE PROCEEDINGS

On June 15, 2005, Plaintiff Gail Kernaghan ("Plaintiff") filed a complaint under the Employee Retirement Security Act of 1974 ("ERISA") against Metropolitan Life Insurance Company ("MetLife") pursuant to 29 U.S.C. §1132(a)(1)(B). Plaintiff alleges that MetLife's decision to terminate benefits was arbitrary and capricious because it was not supported by substantial evidence.    On August 12, 2005, MetLife filed an answer to the Complaint denying Plaintiff's allegations. The parties have exchanged discovery.

This is MetLife's Opening Brief in Support of its Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

MetLife is entitled to summary judgment because its decision to discontinue benefits was not arbitrary and capricious. It was not arbitrary and capricious because:

A)   Its decision is supported by substantial evidence in the administrative record including a Functional Capacities Evaluation and Independent Physician Consultant report demonstrating Plaintiff can work in a sedentary position;

B)   The substantial evidence supporting the decision is not outweighed by contradictory evidence; and

C)   There is no objective evidence of any cognitive dysfunction leading to total disability.

ME1\5577715.1

## STATEMENT OF FACTS

In January 1993, Plaintiff, who was employed by International Business Machines

Corporation ("IBM") as a Software Project Office Program Manager, suffered a burst fracture of

the third lumbar vertebrae while sledding. *See* A52; A143.[1] At the time of the injury, Plaintiff

was covered by IBM's Long Term Disability Plan (the "Plan"). The Plan, which was

administered by MetLife, defined total disability as:

> ... during the first 12 months after you complete the waiting
> period, you cannot perform the important duties of your regular
> occupation with IBM because of a sickness or injury. After
> expiration of that 12 month period, totally disabled means, that
> because of a sickness or injury, **you cannot perform the**
> **important duties of your occupation or of any other gainful**
> **occupation for which you are reasonably fit by your education,**
> **training or experience.** You must be under a doctor's care for
> your disability. At your own expense, proof of disability,
> satisfactory to Metropolitan, must be submitted to Metropolitan.
> "Your regular occupation with IBM" means the regular occupation
> you had with IBM as of your last day of active status.

*See* A157 (emphasis added).

The Plan confers on MetLife discretionary authority to determine entitlement to benefits.

> In carrying out their respective responsibilities under the Plan, the
> Plan Administrator and other Plan fiduciaries shall have
> discretionary authority to interpret the terms of the Plan and to
> determine eligibility for and entitlement to Plan benefits in
> accordance with the terms of the Plan. Any interpretation or
> determination made pursuant to such discretionary authority shall
> be given full force and effect, unless it can be shown that the
> interpretation or determination was arbitrary and capricious.

*See* A158.

---

[1] References to "A__" are to the administrative record and the pages cited thereto are contained
in the Appendix filed with the Brief.

MEI\5577715.1

Plaintiff applied for and received long term disability ("LTD") benefits under the Plan beginning January 5, 1995.[2]  *See* A14; A133-A134.  During that time, she received treatment in the form of physical therapy, injections and pool exercise classes.  *See* A140.  MetLife continued to pay disability benefits to Plaintiff through November 18, 2004.  While Plaintiff was receiving LTD benefits, MetLife maintained contact with Plaintiff and her healthcare providers and monitored her condition and progress.  *See, e.g.,* A;87; A88; A89; A92; A93-95; A101; A102-A103; A104; A105-A106; A107; A111; A112; A113; A114; A115; A116; A117; A118; A119-A120; A121; A122; A123-A124; A125; A126; A127; A128; A131; A132; A155-A156; *see also* A159-A207 (MetLife Diary Report detailing all work performed on Plaintiff's claim from May 26, 1995 through and including July 25, 2005).[3]

MetLife also requested Plaintiff submit to various medical and vocational assessments.  For example, on November 25, 1998, Barbara Mallory, M.S. C.D.M.S., conducted a vocational assessment.  *See* A68-A78.  Ms. Mallory concluded that "there does not appear to be any medical reason that would impede the claimant to return to work....I believe Mrs. Kernaghan is

---

[2] Plaintiff also applied for but was denied disability benefits from the  Social Security Administration ("SSA").  *See* A77-A79; A81; A82-A86; A108-A110; A129-A130.  Plaintiff appealed both decisions denying her benefits; the denials were upheld by an Administrative Law Judge.  A136.  *See* A90-A91; A137-A138.  After the SSA denied her request for an appeal in 2000, Plaintiff was advised by her attorney not to pursue a lawsuit against the SSA because they were unlikely to show that the SSA's decision was not supported by "substantial evidence."  *See* A136.

[3] At times, Plaintiff did not respond to MetLife's attempts to contact her.  *See* A139.  MetLife even offered to assist Plaintiff in furthering her already extensive education by paying for courses at the University of Delaware.  *See* A135; A149-A154.  It also obtained the services of Concentra Managed Care Services, which began to assist her in finding suitable employment.  *See* A58-A67; A68-A76; A140-A142.  Plaintiff, however, did not cooperate with MetLife's efforts to obtain an appropriate position for Plaintiff.  *See* Daily Review Note dated July 17, 2000 at A176 ("CRC does not believe [Plaintiff] will cooperate in full-time RTW program"); Daily Review Note dated October 20, 2000 ("[Barbara Stevens of Concentra] questioning [Plaintiff's] motivation to RTW...."); Daily Review Note dated January 5, 2001 at A179 ("[Plaintiff] continues to put up banners regarding training needed to make her employable").

4

not currently disabled from **any** occupation." *See* A70 (emphasis added). The report included over four pages of potential employers that had positions with sedentary to light job duties. *See* A71-A76.[4] MetLife did not discontinue benefits at that time but continued to monitor Plaintiff's situation.

On June 20, 2001, an independent physician consultant review was conducted by Jeffrey Kahn, M.D. *See* A147-A148. Dr. Kahn determined that Plaintiff was not totally disabled from any occupation. *See* A148. He concluded that she could return at that time in a part-time sedentary job.

On April 15, 2002, an independent medical examination of Plaintiff was performed by James F. Bonner, M.D. *See* A143-A144. Dr. Bonner concluded that Plaintiff was disabled from **her** occupation. He did not conclude that she was disabled from **any** occupation. Indeed, he concluded that "her physical capacities would fall in the classification of sedentary/light with the ability to get up and move around," limited by her medication but he failed to state how her activity was limited at that time. A144.

Plaintiff's own doctor, Dr. Asit P. Uphadhyay, who completed Physical Capacity Evaluations ("PCE") in August 2002, March 2003 and November 2003, even concluded that Plaintiff was capable of working an eight hour day and within that day, she could sit up to six hours, walk up to two hours, stand up to two hours, lift up to 20 pounds and carry 10 pounds. *See* A56-A57. His November 2003 PCE confirmed those findings. *See* A57.

---

[4] Other professionals who examined Plaintiff or to whom she was referred reached similar conclusions. *See, e.g.*, A80 (in 1998, Dr. Lim concluded Plaintiff could return "to some form of gainful employment"); A99 (in 1997, Dr. Yanez, who conducted an IME determined that Plaintiff's "inability to work is due solely and purely to a subjective complaint of constant, daily, low back pain …").

In February 2004, an at-home medical assessment of Plaintiff was conducted (the "2004 Medical Assessment"). *See* A51-A55. The 2004 Medical Assessment revealed that, although Plaintiff had limitations, she functioned mostly independently and was able to carry out all activities of daily living. *Id.* at A52. The consultant observed that the only impediment to Plaintiff returning to work was her own perception of her pain and disability. *Id.* at A55. The consultant observed no objective evidence preventing Plaintiff's return to work. *Id.*

In April 2004, MetLife obtained a Functional Capacities Evaluation (the "2004 FCE"). *See* A37-A50. The 2004 FCE indicated that Plaintiff had the ability to work an eight hour day, five days a week at a sedentary level during which time she would need to alternate her sitting time between walking and standing. *See* A38, A48.

On August 23, 2004, MetLife retained a vocational services consultant to conduct a Transferable Skills Analysis and Labor Market Survey (the "TSA"). This survey examined whether any occupations were suitable for Plaintiff considering her physical limitations, knowledge and skill set. *See* A17-A25. The TSA identified several sedentary occupations Plaintiff could perform within her physical limitations, such as purchasing manager, contract administrator, and employment agency manager. *Id.* at A19-A24. The market survey analysis determined specific available jobs she could perform.

On October 19, 2004, MetLife notified Plaintiff that her LTD benefits would be terminated as of November 19, 2004. *See* A14-A16. MetLife informed Plaintiff that her medical records indicated that she could perform job duties of other occupations and that it had identified several sedentary occupations that she could perform within her functional capacity. *Id.* at A15. MetLife offered Plaintiff rehabilitation assistance with her re-entry into the general workforce. *Id.* MetLife also informed Plaintiff of her right to appeal its decision and submit "any additional

6

comments, documents, records or other information" that would support her claim of disability. *Id.*

On October 29, 2004, Dr. Uphadhyay issued another report, the conclusion of which contradicted his earlier PCE. Specifically, Dr. Uphadhyay stated that Plaintiff was unable to work in any capacity and that she should be restricted to sedentary activities at home. *See* A11. Dr. Uphadhyay offered no objective support, however, for his conclusion that Plaintiff cannot work in **any** capacity.

On November 5, 2004, Plaintiff appealed MetLife's decision to terminate her benefits. *See* A6-A9. She conceded that she could return to work, acknowledging that "[t]here are conflicting reports and findings that support my disability **as well as my ability to work**." *See* A8 (emphasis added). Plaintiff, nevertheless, explained that her back pain physically prevented her from working in any occupation and the side effects from her pain medications rendered her cognitively unable to work. *See* A7. In support of her claim of disability, Plaintiff submitted the October 29, 2004 report of her physician, Dr. Uphadhyay.[5] *See* A12-A13. Despite the claim that the 2004 FCE was inadequate to evaluate her functional capacity, Plaintiff submitted no additional information supporting her claim of cognitive dysfunction or that her pain rendered her totally disabled.

To further analyze and consider the claims presented by Plaintiff's appeal, MetLife engaged Dr. Valerie Ito to perform an independent physician consultant review ("IPCR") Dr.

_____

[5] Dr. Uphadhyay offered no opinion relating to any cognitive dysfunction issue. He also did not address his own PCE findings. He did observe that the FCE was "... rather elaborate, thorough, and lengthy in nature..." He wrote, without any support, that the FCE was "inaccurate" by questioning the test's ability to measure anyone's work capacity over an extended period. A11. Dr. Uphadhyay did not attack the result that Plaintiff was able to work in a sedentary position but questioned the ability of the test to measure anyone's ability to work "day in day out, week upon

Ito found that Plaintiff was able to work in a sedentary-to-light position. *See* A208-A218. Dr. Ito found that it was Plaintiff's perception of her pain and disability, and not any actual disability, that limited her. *Id.* She also determined that Plaintiff could perform sedentary to light duties at home and was not medically limited from sedentary work. A218.

On January 6, 2005, MetLife informed Plaintiff of its decision to reaffirm its earlier decision to terminate her LTD benefits. *See* A1-A5. The termination letter indicated that MetLife reviewed not only the existing exhaustive record it compiled during Plaintiff's disability but also the information it received since Plaintiff filed her appeal. *Id.* at A1. MetLife concluded that there was nothing in her medical record "that would prevent [Plaintiff] from doing work at a sedentary level." A4. It did, however, recognize that Plaintiff may have been

> "experiencing difficulty. However, with the medical records available for review, we were unable to conclude any functional limitations or restrictions that would prevent you from performing job duties of other occupations. Therefore, the original determination to terminate Long Term Disability benefits as of November 18, 2004 was appropriate."

*See* A4.

On June 15, 2005, Plaintiff filed the present action.

---

week..." However, he did not identify studies to support his position and did not recommend any other test.

MEI\5577715.1

## ARGUMENT

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when there are no genuine material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When the moving party demonstrates that no genuine issues of material fact exist, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Cord v. Reliance Standard Life Ins. Co.*, 362 F. Supp. 2d 480, 484 (D. Del. 2005) *(quoting Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 586-587 (1986)).

To satisfy its burden, the non-moving party cannot simply rest on its own pleadings, rely upon bare assertions, conclusory allegations or suspicions. *Delong v. Aetna Life Ins. Co.,* 2006 WL 328348, at *1 (E.D. Pa. Feb. 9, 2006).[6] The non-moving party must provide evidence showing a genuine issue of material fact to overcome the motion for summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient for the non-moving party to overcome its burden. *Cord*, 362 F.Supp. 2d at 484. If the non-moving party does not succeed in showing the existence of a genuine issue of material fact, the Court will grant the motion for summary judgment. *Id.*

The undisputed facts on the administrative review support the conclusion that MetLife's decision to terminate Plaintiff's LTD benefits was reasonable and proper and not arbitrary or capricious.

---

[6] Unreported opinions are attached hereto as Exhibit A.

## II    ERISA STANDARD OF REVIEW

When a termination of benefits under an ERISA plan is challenged, the Court reviews the decision under the "arbitrary and capricious standard" if the plan gives the claim administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan. *Cord*, 362 F.Supp. 2d at 484.  In this context, the "arbitrary and capricious standard" is essentially the same as an "abuse of discretion standard." *Id*.  The "arbitrary and capricious standard" is highly deferential and "the court is not free to substitute its own judgment for that of the [claim administrator]'s in determining eligibility for plan benefits." *Id*.  Accordingly, the Court will uphold the claim administrator's decision unless it is clearly not supported by the evidence in the administrative record or the administrator failed to comply with the procedures required by the benefits plan. *Id*.

It is undisputed that MetLife had discretionary authority under the Plan to determine eligibility for plan benefits. Compl. ¶ 3;  A158.  Accordingly, the Court must apply the "arbitrary and capricious standard" in reviewing MetLife's determination that Plaintiff is no longer totally disabled. *Cord*, 362 F.Supp. 2d at 484.  It is also undisputed that Plaintiff's benefits under the Plan were fully funded by IBM at the time her benefits were terminated. *See* Defendant Metropolitan Life Insurance Company's Supplemental Answers to Plaintiff's First Set of Interrogatories Directed to Defendant (attached hereto as Exhibit B).  As such, the Court must afford absolute deference to MetLife's decision unless it appears that the decision is not supported by evidence in the administrative record.

## III    METLIFE'S DETERMINATION THAT PLAINTIFF IS NOT "TOTALLY DISABLED" IS SUPPORTED BY SUBSTANTIAL EVIDENCE

In applying an arbitrary and capricious standard, the Court must determine whether there is sufficient evidence for a reasonable person to agree with the claim administrator's decision.

ME1\5577715.1

*Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136, 142 (3rd Cir. 2000).

Importantly, the Court may only look to the information that was available to the claim

administrator when it made its decision. *Cord,* 362 F.Supp. 2d at 486; *Courson*, 214 F.3d at 142;

*DeLong*, 2006 WL 328348, at *5. Indeed, the relevant question is whether the claim

administrator's decision was arbitrary and capricious based on the information that was

available. *Id.*

        The Court is also not permitted to re-weigh the evidence or substitute its own judgment

for that of the plan administrator. *Hoover v. Metropolitan Life Ins. Co.,* 2006 WL 343223, at *11

(E.D. Pa. Feb. 14, 2006). So long as the decision is supported by substantial evidence in the

record, the Court should affirm the decision even if the record contains substantial evidence that

supports a different result. *Id.* at *6; *Johnson v. UMWA Health & Retirement Funds*, 125 Fed.

Appx. 400, 403 (3rd Cir. 2005).

A.      **Substantial Evidence Supports the Claims Administrator's Decision to
        Terminate Benefits**

        MetLife's decision to terminate Plaintiff's benefits was clearly supported by substantial

evidence. *See Newport News Shipbuilding and Dry Dock Co. v. Cherry*, 326 F.3d 449, 452 (4th

Cir. 2003) (substantial evidence is more than a scintilla, but less than a preponderance).

MetLife, after considering all evidence in the administrative file, found that there were "no

functional limitations or restrictions that would preclude plaintiff from performing job duties of

other occupations." A4. The claims administrator considered, among other things, Plaintiff's

physician's opinion as well as a FCE, TSA, a home assessment by a nurse and an IPC report.

The FCE and IPC concluded Plaintiff could work in a sedentary job and the Transferable Skills

Analysis demonstrated that there were jobs she could perform based on her skills and a market

analysis identified specific available jobs.

ME1\5577715.1

In *Donnell v. Metropolitan Life Ins. Co.*, 2003 WL 21655189, *aff'd*, 2006 WL 297314 (4th Cir. Feb. 8, 2006), the court held that substantial evidence existed when the FCE concluded the claimant could work five hours per day in light work or six hours in sedentary work and identified job categories that were suitable. The court affirmed the District Court's entry of summary judgment in favor of MetLife. *Donnell* held that an FCE showing ability to perform sedentary work and a market survey showing applicable jobs constitutes substantial evidence justifying a claims administrator's decision. *Id.*

Here, the same substantial evidence exists supporting MetLife's reasonable decision to discontinue benefits. The FCE was done over a two-day period and measured a person's ability to perform certain tasks that would be required at work over an eight hour day, 40 hours a week. A38-A48. Plaintiff gave maximum effort and was found able to perform at the sedentary level for eight hours a day, five days a week with the sole restriction being that she alternate among sitting, standing and walking. A38. This is clearly substantial, objective evidence that Plaintiff is able to work.

Following the FCE that found Plaintiff could work and in an effort to find a job matching her skills and restrictions, MetLife had a TSA done. A26-A34. The Vocational Specialist Consultant concluded that Plaintiff's skills qualified her to work in four occupations, including Contract Administrator and Purchasing Manager. A28. The labor market survey found eight available and suitable jobs for Plaintiff. A28-A33. The Consultant found that Plaintiff was qualified to perform a number of sedentary jobs and found available jobs within her physical capabilities. A34.

Other courts have reached the same conclusion as *Donnell* holding that plan administrators properly terminated benefits based on similar evidence found here. *Maninger v.*

*Hartford Ins. Co.*, 160 Fed. Appx. 578 (9th Cir. 2005) (court affirmed summary judgment since

FCE and employable analysis report supported decision plaintiff was no longer disabled);

*Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 678 (7th

Cir. 2004) (holding that plan administrator reasonably terminated benefits based upon FCE).

MetLife did not stop at the FCE and TSA. It also retained Valerie Y. Ito, M.D., a doctor

Board Certified in Physical Medicine and Rehabilitation, to perform the IPCR. She reviewed

and evaluated the entire record and issued an 11 page review and analysis. A208-A218. Dr. Ito

opined that Plaintiff could participate in sedentary to light activities at home and she determined

there was no medical reason to restrict her activities at the sedentary to light level with applicable

restrictions at work. A218. She also noted Plaintiff was able to drive, participate in an exercise

program and able to volunteer in a library. A217.

MetLife's decision was also supported by a nurse consultant who visited Plaintiff at

home. The consultant found that Plaintiff could perform work in a sedentary capacity based on

Dr. Uphadhyay's PCE and her own observations. A55; A57. Indeed, Plaintiff agreed with her

physician's PCE but was concerned that she would not be able to work over time. A55.

However, the plan requires actual total disability, not the fear of disability if one performs to the

capacity she is able.

In *Gannon v. Metropolitan Life Ins. Co.*, 360 F.3d 211 (1st Cir. 2004), the court found the

FCE and non-examining physician's conclusion that plaintiff could work in a sedentary capacity

to be substantial evidence supporting the denial of benefits. *Gannon* found that the FCE and IPC

report constituted objective evidence relating to plaintiff's ability to work. *Id.* at 214. The same

rationale applies here. The combination of the FCE, the TSA, Plaintiff's ability to perform work

at home, drive, participate in water walking at a fitness club and the IPC opinions demonstrated

13

substantial evidence supporting the decision to discontinue the benefits since Plaintiff is able to work in a sedentary job. In light of the substantial and overwhelming evidence of Plaintiff's ability to work, MetLife's decision was not arbitrary and capricious. *See Johnson*, 125 Fed. Appx. at 403.

In *Hoover v. Metropolitan Life Ins. Co.*, 2006 WL 343223 (E.D. Pa. Feb. 14, 2006) the court upheld the termination of benefits wherein plaintiff improved over time, was able to perform daily living tasks and there was no objective tests to support any cognitive problems. *Id.* at *5. The same is true here. Plaintiff certainly improved over time and was able to perform tasks that she could not have done when she was first disabled. For instance, Dr. Uphadhyay found she was able to drive, stand (30 minutes), change positions, reach (forward and overhead), push/pull, twist, grasp with no limitation and could perform repetitious movements. *See* A145-A146. In his August 2002 PCE, he wrote that she could sit for six hours, stand for two hours and walk for two hours in an eight hour work day. *See* A57. He found that she could lift up to 20 pounds and carry up to 10 pounds, she could bend, squat, crawl, climb and reach overhead and she had no restriction in driving. *Id.* He affirmed these findings on several occasions through 2003. Thus, here, as in *Hoover*, even Plaintiff's doctor found she improved over time. Even though he continued to state she was totally disabled, there is evidence his actual findings were inconsistent with his opinion. Indeed, he found she could perform daily living activities and sedentary duties at home. A11. *Hoover* is clearly instructive since Plaintiff improved somewhat based on what her own doctor found and she was able to perform daily activities of living. Furthermore, there is no objective testing in this matter to prove any cognitive impairment. *See* Opening Brief, Section III, C, *infra*. For the same reasons expressed in *Hoover*, this Court should find that MetLife's decision was not arbitrary or capricious.

14

B.    **The Substantial Evidence Supporting MetLife's Decision is Not Outweighed By Contradictory Evidence**

Plaintiff may argue that evidence in the administrative record conflicted with MetLife's decision; however, this does not establish that MetLife's decision was arbitrary or capricious. *See Johnson*, 125 Fed. Appx. at 403; *DeLong*, 2006 WL 328348, at *4. A decision to terminate benefits may be supported by substantial evidence, as here, even where the record also includes contradictory evidence. *See Johnson, supra.* The record may even include substantial evidence that supports a result different from the claim administrator's decision and still must be upheld by the court. *Id.* at 403. Here, Plaintiff admitted that "there are conflicting reports and findings that support my disability **as well as my ability to work**." *See* A8. Plaintiff urged MetLife to make a decision based on Dr. Uphadhyay's opinion that she is totally disabled. However, the claims administrator is free to discount evidence where there is substantial evidence to support its conclusion, is not required to give deference to Plaintiff's treating physician and a close analysis of Dr. Uphadhyay's PCE reveals that he found she could perform tasks.

The claims administrator is free to consider and reject evidence, as here, when there is conflicting substantial evidence to support its decision. *See* Opening Brief Section III, A. *See also Johnson, supra.; Hoover, supra.* The existence of conflicting evidence does not mean the court can substitute its judgment or reweigh the evidence. *Hoover, supra.*

An August 29, 2002 PCE, prepared by Plaintiff's own doctor found that Plaintiff could: A) sit for six hours (30 minutes at a time); B) stand two hours; C) walk two hours in an eight hour day; D) lift up to 20 pounds; E) occasionally carry up to 10 pounds; (F) occasionally bend and squat and reach overhead; and G) had no restriction in driving. A57. While he opined she was totally disabled in other records or reports, his PCE supported sedentary work. A55 (based

15

on the PCE, "the claimant would be able to perform work in a sedentary capacity"). He affirmed his conclusions and found on two occasions. A57.

Dr. Uphadhyay opined his patient was unable to work but he agreed she could perform sedentary activities at home. A11. His October 29, 2004 report does not provide any new information or even explain his own PCE. He opines she is disabled due to her lumbar spine condition and makes no mention of any cognitive issues. A10-A11. Certainly the claims administrator can consider and reject such a conclusory opinion, especially when the doctor's own records call into question his ultimate opinion.

It is established law that the claim's administrator has no obligation to accord special deference to the opinion of a treating physician over those of non-treating consultants. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *DeLong v. Aetna Life Ins. Co.*, 2006 WL 328348 (E.D. Pa. Feb. 9, 2006) (administrator not required to defer to treating physician); *Hoover*, 2006 WL 343223, at *8. Indeed, MetLife can rely solely on the views of its own consulting doctors, if it chooses to do so. *Id.* In *Nichols v. Verizon Communications*, 78 Fed. Appx. 209, 211-212 (3rd Cir. 2003), the court stated:

> ... administrators of ERISA plans are not obligated to accord
> special deference to the opinion of a claimant's treating physician.
> [The Plan Administrator] is therefore justified in placing reliance
> on the opinions of its own consulting doctors and need not provide
> a special explanation of its decision to do so. (citing *Black &
> Decker*)

Thus, MetLife's reliance on the IPC, FCE, nurse consultant home visit and Transferable Skill and Labor Market Analysis consultants was entirely reasonable and appropriate. Furthermore, Dr. Uphadhyay's ultimate opinion is suspect in light of his own PCE. The May 2004 FCE established Plaintiff's ability to work. MetLife even submitted the FCE to Dr. Uphadhyay and asked him to comment on her return to work based on its findings and asked him

16

to submit "objective documentation" to support his position. A35-A36. The letter also requested his opinion on vocational rehabilitation assistance for his patient. A36. Dr. Uphadhyay responded months later admitting that the FCE was "…elaborate, thorough and lengthy in nature …" though he thought it was inaccurate. His objection was that the FCE does not measure the long term effect of work on the Plaintiff. A11.

      An FCE is a systematic method of measuring an individual's ability, to perform meaningful tasks on a safe and dependable basis, and is recognized through the healthcare industry as an appropriate test to measure one's work ability despite Dr. Uphadhyay's opinion. The FCE is a means of testing a person's lifting, carrying, abilities, positional tolerances, dexterity, general endurance levels and ability to lift specific weights to specific heights. *See Klecher v. Metropolitan Life Ins. Co.*, 2005 WL 1337509, at *4 (S.D.N.Y. June 6, 2005) *aff'd*, 2006 WL 374122 (2nd Cir. Feb. 16, 2006). He did not supply any objective evidence to support his opinion or cite to any articles to support his objection, or provide any recommendation of other tests he believed would more accurately measure the long term effects of work. In short, he said she had pain relating to her 1993 injury and could not work but had nothing to refute the FCE, which established her ability to work. He never gave any thought or opinion on vocational rehabilitation. MetLife was free to consider and reject Dr. Uphadhyay's report, especially since he completely failed to provide any proof that the FCE is inaccurate other than his own unsubstantiated opinion, failed to recommend any other test, and failed to provide any objective evidence to support his position.

      Substantial evidence contradicts Dr. Uphadhyay's opinion, and MetLife had no obligation to give any special deference to his opinions and therefore its decision to discontinue

benefits was not arbitrary and capricious. *Cord*, 362 F. Supp. 2d at 486; *Hoover*, 2006 WL 343223, at *7-8.

Plaintiff may claim that the April 2002 independent medical exam by Dr. James Bonner supports her claim of total disability. However, Dr. Bonner's report finds only that she was disabled from her own occupation. A144. He found her physical capacities "would fall in the classification of sedentary/light with the ability to get up and around, but is significantly limited by her present medications." *Id*. Notwithstanding, MetLife did not discontinue her benefits at that time evidencing the fact that MetLife gave weight to Dr. Bonner's opinions. MetLife sought additional, conclusive evidence showing Plaintiff was able to work in any occupation before it discontinued the benefits. Plaintiff's benefits were discontinued about 2½ years after Dr. Bonner's report and after substantial evidence showed Plaintiff could work. Furthermore, Plaintiff's own physician did not opine she had cognitive dysfunction or that it caused her any disability. A10-A11. Dr. Bonner's opinion that she could work in a sedentary/light occupation was consistent with the FCE and IPC results. It was reasonable for MetLife to seek additional information and make a determination to discontinue benefits 2½ years after Dr. Bonner's report.

MetLife considered the findings and opinion of Dr. Uphadhyay and Dr. Bonner but found the evidence insufficient to show a continuing disability. A1-A5; A208-A218. MetLife's obligation as claims administrator is to consider and weigh the evidence and make a determination based on substantial evidence in the record. *Hoover*, 2006 WL 343223, at *7-8. MetLife performed that duty here and only decided to discontinue the benefits after substantial evidence justified its position. MetLife gave Plaintiff every opportunity to support her claim of total disability with objective evidence and she failed to do so. MetLife even had an IPC review the record after Plaintiff appealed the decision to be sure it made the proper determination.

18

A208-A218. This was done even though Plaintiff admitted in her appeal letter that MetLife had evidence supporting her ability to work. A8. Under these circumstances, MetLife properly considered and rejected evidence of Plaintiff's mobility to work.

C.     **The Record Contains No Objective Evidence of Plaintiff's Alleged Cognitive Dysfunction or that it Rendered Her Unable to Work**

Plaintiff may claim she had some cognitive dysfunction that rendered her unable to work. It is undisputed that the administrative record contains no objective evidence of Plaintiff's alleged cognitive dysfunction much less that it renders her unable to work.  Therefore, summary judgment in MetLife's favor is appropriate because Plaintiff's own physician did not opine in his October 29, 2004 letter regarding any cognitive dysfunction, much less that she was totally disabled as a result. A11. *Cord*, 362 F.Supp. 2d at 486; *Hoover*, 2006 WL 343223, at *8. Plaintiff failed to provide sufficient evidence to support her claim of cognitive dysfunction.

It was entirely reasonable for MetLife to dismiss Plaintiff's claims of cognitive dysfunction because the administrative record is completely void of any objective evidence supporting it or that it disabled her. *Cord*, 362 F.Supp. 2d at 486; *Hoover*, 2006 WL 343223, at *7-9.  Plaintiff had the opportunity and an obligation to supplement the record with objective evidence supporting her claim of cognitive dysfunction and failed to do so. *Cord*, 362 F.Supp.2d at 486; *See Hoover*, 2006 WL 343223, at *8.  Indeed, MetLife informed Plaintiff that if she disagreed with the decision to terminate her benefits, then it was her burden to provide MetLife with evidence supporting her claim of disability. A23-A25.  *See also Cord*, 362 F.Supp. 2d at 486. Plaintiff or her physician failed to provide any objective evidence to establish any cognitive issue. The plaintiff in *Cord v. Reliance Standard Life Ins. Co.* also failed to provide evidence that cognitive dysfunction prevented her from working and the court found, even under a heightened standard of review, that the plan administrator acted within its discretion to terminate

19

benefits. 362 F. Supp. 2d at 486; *see also Hoover*, 2006 WL 343223 (court concluded it was

reasonable for MetLife to disregard plaintiff's subjective complaints of cognitive impairment and

fatigue because objective evidence supporting her subjective complaints was lacking); *McGee v.*

*Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924-925 (8th Cir. 2004) (not unreasonable to deny

benefits based on lack of objective evidence.)

    Neither Dr. Bonner nor Dr. Upadhyay concluded that Plaintiff was disabled due to

cognitive dysfunction secondary to her pain medication. Dr. Bonner's opinion merely stated that

Plaintiff was significantly limited by her medications but she was capable of performing in a

sedentary/light work capacity. A144. Even if his opinion were intended to describe her cognitive

capacity, there is nothing in the record to indicate that his opinion was based on anything other

than what was conveyed to him by the Plaintiff. Furthermore, Plaintiff's cognitive function had

never been medically tested by Dr. Uphadhyay or any other physician. Accordingly, it was

reasonable for MetLife to determine that there was simply no evidence that Plaintiff suffered

from cognitive dysfunction. In fact, the FCE and home visit noted no cognitive dysfunction and

stated that Plaintiff was alert and intelligent. A55; A217. Indeed, Plaintiff told the nurse

consultant during the home visit that "… mentally she would like to work…" but felt physically

she could not do so. A55.

    The IPC opined that there was no objective psychological testing to indicate any

cognitive impairment and there was no evidence of cognitive impairment delineated in the 2004

home visit. A217. The IPC also noted that Dr. Bonner did not identify any impairment related

to medications. *Id*. Most significantly, Plaintiff's own physician gave no opinion on cognitive

dysfunction in his October 24 2004 report. A10-A11. Even if there were some evidence of an

effect on her based on medications, there is substantial evidence to the contrary and the claims

administrator therefore did not act arbitrarily or capriciously in discontinuing the benefits. *Hoover*, 2006 WL 323223.

MetLife did not act arbitrarily or capriciously when it dismissed Plaintiff's subjective complaints of cognitive dysfunction because there was no objective evidence supporting her claim. *Delande v. ING Employee Benefits,* 112 Fed. Appx. 199, 201 (3rd Cir. 2004) (court accepted lack of objective evidence to support termination of benefits); *Cord*, 362 F.Supp. 2d at 486; *Hoover*, 2006 WL 343223, at *8. When, as here, a disability plan authorizes the administrator to request documentation and proof of a disability, it is reasonable to interpret the plan to require provision of objective evidence as part of the proof and documentation. *Hoover*, 2006 WL 343223, at *8. It was Plaintiff's burden to supplement the record with evidence to show that she was disabled and that the decision was arbitrary and capricious. Because Plaintiff failed to provide such proof and documentation, MetLife was entitled to rely on the absence of such evidence in rendering its decision to discontinue Plaintiff's benefits. *Id.*

21

## CONCLUSION

Because substantial evidence in the administrative record supports MetLife's decision to terminate Plaintiff's benefits, MetLife's decision was not arbitrary and capricious. Accordingly, MetLife is entitled to summary judgment in its favor. A reasonable person would conclude that there is more than a scintilla of evidence that Plaintiff is able to work in a sedentary capacity and is not totally disabled.

MCCARTER & ENGLISH LLP

/s/Paul A. Bradley
Paul A. Bradley (DE ID No. 2156)
Tanya Pino Jefferis (DE ID No. 4298)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware 19899
(302) 984-6300
Attorneys for Defendant
Metropolitan Life Insurance Company

Date:   April 3, 2006

22