IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GAIL KERNAGHAN,            :

           Plaintiff,      :  C.A. No. 05-402 (GMS)

         v.        :

METROPOLITAN LIFE INSURANCE  :
COMPANY, as fiduciary and administrator of The  :
IBM Long-Term Disability Plan,  :

        Defendant.  :

**VOLUME I OF V**

**APPENDIX TO**
**DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S OPENING BRIEF**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**MCCARTER & ENGLISH LLP**

Paul A. Bradley (DE ID No. 2156)
Tanya Pino Jefferis (DE ID No. 4298)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware  19899
(302) 984-6300
Attorneys for Defendant
Metropolitan Life Insurance Company

Date:   April 3, 2006

## TABLE OF CONTENTS

**TITLE**                                                                                                          **PAGE**

Excerpts of the Administrative Record (ML00001-ML00719).................................................A1-A55

i

## CERTIFICATE OF SERVICE

I, Paul A. Bradley, undersigned counsel of record, hereby certify that on April 3, 2006, I caused a copy of the foregoing Appendix to Defendant's Motion for Summary Judgment and Opening Brief in Support of Its Motion for Summary Judgment to be served on the following counsel in the indicated manner:

CM/ECF Filing

Rick S. Miller, Esquire
Ferry, Joseph & Pearce, P.A.
824 North Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

/s/ Paul A. Bradley
Paul A. Bradley (DE ID. No. 2156)

050110 15862

Metropolitan Life Insurance Company

**MetLife®**

MetLife Disability
PO Box 14590
Lexington KY 40511-4590

January 6, 2004

GAIL KERNAGHAN
363 VALLEY MIST DRIVE
CLAYTON DE 19938

Re: Long Term Disability
Claim No.: 699501171006
Group No.: 35750
Group: International Business Machines

Dear Ms. Kernaghan:

We have completed our review of the termination of your claim for disability benefits. The original decision to deny benefits was upheld upon appeal review for the following reasons:

According to the International Business Machines Corporation's Long Term Disability plan,

> "Under the Long-Term Disability Plan, totally disabled means that during the first 12 months after you complete the waiting period, you cannot perform the important duties of your regular occupation with IBM because of a sickness or injury. After expiration of that 12 month period, totally disabled means that, because of a sickness or injury, you can not perform the important duties of your occupation or any other gainful occupation for which you are reasonably fit by your education, training or experience. You must be under the appropriate care and treatment of a doctor on a continuing basis. At your own expense, proof of disability, satisfactory to MetLife, must be submitted to MetLife."

We have reviewed your entire claim, including the following information that was submitted.

A review of your file reveals that you last worked on November 21, 1994 and filed a disability claim for the diagnosis of an L-3 compression fracture. You worked at IBM as a Program Manager. Based on the information submitted, Long Term Disability benefits were paid to you through November 18, 2004. This review is conducted for benefits beyond November 18, 2004.

We received your request for an appeal on December 3, 2004. Your letter indicated that you had read your case file and could understand the difficulties that were faced in the management of your disability claim. You noted conflicting reports and findings that supported your disability as well as your ability to work. You requested that we look at the data from your physicians who had treated you on a consistent basis. They were the ones who could provide a clear and objective response to your condition. You indicated that you had to live with the fluctuations in pain that are often difficult to qualify. You explained that extended work creates pain that resulted either taking medication that destroyed your cognitive ability or resulted in bed rest. You indicated that you were unable to provide the consistent effort necessary to be gainfully employed.

ML00001

Also, enclosed with your appeal request was a letter from Dr. Asit Upadhyay, D.O. dated October 29, 2004. He noted that this was a redictation from the original dictation of May 17, 2004. He indicated that the original dictation was lost. He noted that he first treated you on January 4, 2002. He stated that you had a 10-year history of back problems. You had sustained a L3 burst fracture that was treated conservatively.

Dr. Upadhyay impression was that you suffered from chronic low back pain, status post L3 compression burst fracture with mechanical low back pain and SI joint dysfunction with right greater trochanteric bursitis and iliotibial band syndrome. He noted that you were additionally diagnosed with anxiety disorder secondary to chronic illness along with diabetes.

Dr. Upadhyay stated that he reviewed the functional capacity evaluation dated May 3, 2004. While he felt the report was elaborate, thorough, and lengthy, he stated is was inaccurate. He stated that he felt that it does not test day in and day out, week upon week, the effect this type of work duty would have on your low back condition. He felt the test was inadmissible. He concluded by stating your injuries are permanent in nature.

We also reviewed the letter from your ex-husband, John Kernaghan dated November 10, 2004.

As part of the appeals process, and to provide you with a full and fair review, your file was referred to an Independent Physician Consultant, Board Certified in Physical Medical and Rehabilitation.

The Consultant reviewed the records of Dr. Upabhyay that began on April 5, 2002. He noted that you were following up with complaints of right shoulder and back problems. You were noted to be on Vicodin and Xanax. Neurontin and Paxil were started but that caused hallucinations. You were documented to be 5'5" tall and 198 pounds. Dr. Upabhyay noted you *ML 123* to have a non-antalgic gait and was able to mount and dismount from the exam table readily. You had tenderness of extension in the glenohumeral joint, and there was no impingement documented on examination. You were tender over the SI joint on the right and over the greater trochanteric bursa. The iliotibial band also increased in tone and tenderness. His assessment was chronic low back pain secondary to right SI joint dysfunction, lumbar facet syndrome improved and right shoulder pain, and will need to rule out rotator cuff injury.

A MRI of the right shoulder was ordered, and you were instructed to continue your home exercise program. You were advised to continue Vicodin and Zanaflex, and Depakote was added to titrate up to 1 gm over the next month. Paxil and Neurontin were discontinued.

The MRI of the right shoulder dated April 8, 2002 showed minimal supraspinatus tendinosis without rotator cuff tear, minimal-to-mild subacromial bursal fluid consistent with very low grade bursitis. No labral tear was documented.

Your home visit from Crawford representative, Ms. Palish, RN, dated February 11, 2004 indicated you were pleasant and cooperative during the interview. Your sister and brother-in-law were visiting but were not present for the interview. You wore casual pants and top and comfortable shoes. Ms. Palish noted that you ambulated slowly and required change of position every 30 minutes. You were noted to be left-hand dominant and you were able to relate the specifics in regard to your sledding injury with her daughter on November 22, 1994.

The Consultant indicated that the records reflect you initially wore a body brace for a period of 6 months and then on and off for an additional 2 years to reduce your low back pain. Physical therapy had not been helpful for your pain. The Consultant noted that although Dr. Upabhyay has provided work capacities for you, you indicated you were concerned that you would not be able to perform within these capacities on a consistent basis. You indicated you had right hip radicular discomfort 3-4 times per month described as a burning-type of pain. This was relieved with bed rest and medication. You reported ability to lift 5-10 pounds, being able to lift small bags of groceries without difficulty. You also reported sitting and a standing ability to 30 minutes at a time and ability to walk approximately 2 hours with rest. It appeared you were independent with all activities of daily living, however you needed assistance with housework and your driving was limited to short distances.

For pain, you were taking Vicodin three times a day. You were water walking at the YMCA two days per week. The notes indicated that you were unable to increase your Neurontin dosage due to hallucinations. You had recently started Lidoderm patches as needed for pain relief.

You reported cognitive dysfunction secondary to narcotic pain medication such as forgetting to turn off the stove and inability to drive more than short distances. The Consultant noted that you perceived yourself as totally disabled because you were uncertain when your pain would increase and how long it would last. You reported at times your pain lasted for 2-3 days requiring bed rest.

The Consultant indicated that you had no plans to attempt to return to work given your prior attempt to work several years ago, and considered yourself to be totally disabled. You felt that you would not be able to perform consistently at the capacities delineated by Dr. Upabhyay on November 20, 2003. Your potential to return to work was felt to be impacted by your perception of pain.

The Consultant also noted that subsequent to this, a Functional Capacity Evaluation was completed April 26, 2004 and April 27, 2004. This was felt to be consistent with a sedentary level demanding 8 hours per day with the need to alternate sitting and standing activities frequently. It was indicated that you gave maximal effort during the evaluation. Your range of motion of the right shoulder was limited to forward flexion of 170° extension to 30°, abduction to 170°, internal rotation to 20°, and external rotation to 80°. Right shoulder strength was noted to be in the 4+ to 4- range. Left shoulder range of motion was within normal limits, and strength was 4+ range throughout. You reflexes were noted to be 2+ and symmetric bilaterally in the upper and lower extremities.

The file reflected that you completed all tests items, and demonstrated safe performance of body mechanics with occasional verbal cueing.

You demonstrated appropriate pacing and good general awareness of safe techniques. Your movement was smooth and coordinated throughout all test items. You were felt to have excellent ability to elevated work rotational activities, crawling, kneeling, crouching, standing tolerance and ambulation activities, good ability to forward reaching, repetitive squat and sit tolerance. You were below average in general grip strength and hand coordination.

The Consultant noted that as of your last office visit in September 2004 your medications included Neurontin, Prozac, Vicodin and Zanaflex.

J5011C( 15662

4

The Consultant indicated that were able to live independently taking care of your personal needs, cooking and laundry. You were able to drive short distances and participate in an exercise program such as deep water walking on a consistent basis. You also indicated that when able, you volunteer at a library assisting clients with the use of the Internet. The Consultant stated that it appears you are limited by your perception of your pain and the disability that it leaves you with.

Objectively, the Consultant concluded that you were able to participate in sedentary-to-light activities that you choose to pursue such as laundry, driving, computer use, occasional volunteer at the library, etc. The Consultant did not see a reason to restrict sedentary-to-light activity that you wished to pursue on a medical basis. However, you should be restricted in regard to lifting greater than 15-20 pounds on an occasional basis, frequent push/pull work and frequent overhead work which is warranted given your history of a L3 compression fracture with mild degenerative disk disease and right shoulder tendinopathy. You also should change positions on an every 30- to 60-minute basis.

In completing our appeal review, your medical records do not indicate anything that would prevent you from doing work at a sedentary level. The information in your file does not provide evidence of any new complication or deterioration in your condition that would prevent you from performing any occupation, based on your education, training and experience.

In summary, benefits must be administered in accordance with the employer's plan and this requires that the disability is defined and medically substantiated by the providers with comprehensive and specific information. This is not to say you were not experiencing difficulty. However, with the medical records available for review, we were unable to conclude any functional limitations or restrictions that would prevent you from performing job duties of other occupations. Therefore, the original determination to terminate Long Term disability benefits as of November 18, 2004 was appropriate.

Upon request, MetLife will provide you with a copy of the documents, records or other information we have that are relevant to your claim and identify any medical or vocational expert(s) whose advice was obtained in connection with your claim. You also have the right to bring civil action under Section 502 (a) of the Employee Retirement Income Security Act of 1974.

You have exhausted your administrative remedies under the plan, no further appeals will be considered.

The Employee Service Center (ESC) has been advised of the termination of your LTD benefits. It is **IMPORTANT** that you immediately contact the ESC at 1-800-796-9876 regarding your status, since your IBM medical benefits are affected by this change. If you wish to be considered for return to work at IBM, you must contact the ESC at the above number and they will refer you

4

J50110 15862

5

to the appropriate individual for assistance. **If you do not contact the ESC within 30 days from the date of this letter, IBM will consider you to have voluntarily resigned, and all benefits will cease.**

Sincerely,

Linda Rogers
Procedure Analyst
MetLife Disability
800-300-4296

5

ML00005

*Gail Kernaghan*
*363 Valley Mist Drive*
*Clayton, Delaware 19938*

November 5, 2004

MetLife Disability.
P.O. Box 14592
Lexington, KY 40511-4592

RE: MetLife Disability Claim 699501171006, Group Number 35750/IBM, IBM Serial
    Number 142425, Social Security Number 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
    October, 19, 2004 Letter from Theresa Zammiello , Termination of Disability
    Benefits, effective 11/18/04
    Functional Capacity Evaluation Summary Report from 04/27/04 compiled by
    Dorothy Brown, PT.
    April 15, 2002, report from Dr. Bonner, MD, independent evaluation by UNIVAL
    Requested by MetLife

ATT: October 29, 2004 Re-dictated evaluation notes of Dr. Asit Upadhyay D.O.,
    FAAPMR
    November 10, 2004 Letter from John Kernaghan

In accordance with the procedures outlined in the October 19, 2004, termination of long-
term disability benefits, I am requesting an appeal of this decision. After phone
conversations with Theresa Zammiello, and Jean Bowman, RN, it is my understanding
that this termination process was initiated as the result of the Isernhagen Work Systems
Functional Capacity Evaluation Report, dated April 27, 2004. If this is an incomplete
assessment of the situation, I would appreciate clarification so that I can make a complete
response as part of this appeal process.

I would like to clarify a procedural error that potentially could have prevented this
termination process. I received a copy of a memo sent to Dr.Upadhyay, dated May 14,
2004, requesting his review of the results of the FCE. On June 7, 2004, I attempted to
contact Theresa Zammiello, to update her on the doctor's response. I spoke with a call
center representative by the name of Kristin. She informed me that the case managers
were very busy, that she was not to bother them, and that she needed to handle the call
herself. I informed Kristin that Dr. Upadhyay's report was complete but had been sent out
to dictation. The average turn-around for dictation was three weeks. I specifically
requested that MetLife contact me if the report was not received in that time frame. She
assured me that she would document this and it would be taken care of. I never received
another reply from MetLife so assumed that the response had been received, and that all
issues had been satisfied. When I received the termination notice, I was disconcerted to

ML00006

0412C3007846

learn that Kristin did not follow-up as she had promised. If she had, this might have all been avoided.

I would first like to establish the foundation of my disability. After an accident in 1993, I have had intractable pain on the right side of my body, centered in the lower back, which was the site of the burst L3 fracture, as well as right hip, and right leg. I have undergone a battery of tests, which have determined that surgical intervention will not resolve the problem. In the ensuing years, this pain has not subsided, and the medications that I take for some relief, have had detrimental effects on my ability to perform some mental and cognitive tasks. I hope that I can convey how frustrating this disability has been to me. I had different plans for myself. I worked a full-time job, attended graduate school in computer science, and as a result, IBM hired me. I became a manager in less than five years, when seven was the norm. My performance evaluations were consistently above expected levels, and I won several awards for my work. I did not then, nor do I now, wish to remain in the state that I am in, but I cannot control my health. This pain is often unremitting and is exacerbated by many factors. I have attempted to control/alter some parameters to improve the quality of my life, but to no avail. That does not mean that I will give up. It is difficult for most, to grasp the unpredictability of my days. This pain, when aggravated, takes control of not only my physical state, but my mental state as well. I will display inappropriate emotions, which are outside the norm for any social environment, let alone a work environment, or worse, make illogical decisions that affect my financial or personal life. I am unable to predict the severity or frequency of these incapacitating episodes. I have tried to adapt my life to find a balance between the pain and the drug side effects. These adaptive techniques do not lend themselves to any work environment, where schedules need to be met, or productivity a factor of time. I have been in a position of hiring/firing personnel, and I could not in good conscience hire someone like myself.

The criteria used to evaluate my capacity to return to work was the Isernhagen Work Systems Functional Capacity Evaluation. This test may be a reasonable test to perform on someone whose employable skills are strictly of the physical nature. In that situation, it may be valid to perform two three-hour tests and based on the outcome, make extrapolations for a daily, and even weekly performance success. Unfortunately, this test does not appropriately assess my disability. If I can use a simple analogy, it is like ordering a random blood sugar instead of a hemoglobin A1c to assess a diabetic's state of glucose control. A snapshot, like that performed by this FCE, does little to assess my abilities to have the endurance, consistency, and capabilities of clear rationale thinking to perform that tasks associated with my job and/or any job of my skill set. The only portion of the FCE that might have had bearing on my ability to perform my job, was the task involved with hand coordination. This involved not only physical activity, but also minimal brain activity involved with attention span. The results of this test were below average, yet glossed over in the assessment. Cognitive testing in combination with mild physical activity would be the more appropriate test of my ability to perform my skill set.

The staff at MetLife has indicated that they are looking for objective data to support my claim. Unfortunately, even the Isernhagen FCE is a subjective test. Although, the process

A7

ML00007

itself uses strict guidelines to minimize the variables in the assessment, the physical therapist has to use subjective judgment to assess the client's ability and effort. You have the supporting reports of three pain managers, all doctors, who have assessed my condition over time, not just the six hours allocated to this one test. Dr. Greenhouse, Dr. Mousavi, and Dr. Upadhyay, each concur that my condition has not improved over time and that I am unable to work in any meaningful manner. It is long-term endurance, and rationale complex thought processing that is diminished to the point of being unemployable. In addition, you have the results of your own independent evaluation of Dr. James Bonner, dated 4/2002, which concurs with my own pain managers' assessment. Dr. Upadhyay's response to the 4/27/04 FCE is attached. He indicates that the FCE testing is inaccurate in its ability to assess my current condition and should be inadmissible as a method for determining termination of benefits. He also re-iterates that I am occupationally unable to work in any capacity.

In phone discussions, it became apparent that there is confusion about the content of the "Physical Capacities Evaluation", specifically Item 1. I was informed that Item 1 requested the amount of time/workday that an individual could sit + stand + walk. It was my impression that this was sit "or" stand "or" walk, since each factor had a maximum acceptable limit of eight hours. The first result is a cumulative result and potentially can result in a 24-hour workday. One of the nurse managers had added these factors to indicate that I could work a full day. If that was the correct procedure, then each of the Physical Capacities Evaluation forms have been filled out incorrectly since the forms were changed in 2002. I can do nothing to correct this discrepancy, besides recommend that the form might need clarification. These reports were filled out by the pain manager with the premise of a "best case" scenario i.e. on a "good day" what would be one's potential.

I have for the first time read my entire case file and can understand the difficulties you must face in the management of my disability case. There are conflicting reports and findings that support my disability as well as my ability to work I can only state that subjectivity runs in both directions. The results of the home visit were a particular example. Little time was spent discussing my situation; most of the time was spent discussing antiquing and the nurse's desire to find a few good shops in the area. I can only request that you look at the data from those who have seen me on a consistent basis. My doctors are the ones who can give you the clearest and objective responses of my situation. My doctors have repeatedly stated that there is no improvement in my condition. I have had to live with the fluctuations in pain that are often difficult to qualify. I can only re-emphasize that extended work creates pain, which results either in taking medication that destroys my cognitive ability or results in bed rest; both scenarios make me ineffective as an employee. It is my assertion that I am unable to provide the consistent effort necessary to be gainfully employed. My work history has indicated that I was on the fast track to success when the accident occurred. Until that time, nothing could stop my desire to succeed. It would be extremely foolish for me to vegetate with the disability income when I could be happy in a challenging work situation making two to three times the income I now have, but I cannot.

0412C3007846

I would also like to place into evidence a letter from my estranged husband. I realize that he has no medical information to provide, but would like to demonstrate that this disability has had a pervasive effect on my entire life, not just my job. I have failed in my marital obligations also, and as a result lost my marriage.

I would appreciate an open dialog with the appeals staff. I cannot fathom making such a far-reaching decision without open lines of communication. Please do not hesitate to contact me at 1-302-659-1293 for any clarifications. I thank you in advance for your time and consideration.

Sincerely,

Gail A. Kernaghan

jer

0412C3007846



**Delaware Back Pain & Sports Rehabilitation Centers**

*Depend on us to get you better faster.*

**Depend on teamwork for better health:**
- Physical medicine & rehabilitation
- Interventional pain management injections
- EMG
- Chiropractic care
- Rehabilitation therapy
- Exercise physiology
- Psychology/pain management counseling
- Massage therapy
- Wellness/nutrition program
- QFCEs

**Nonsurgical solutions:**
- Auto, work & sports injuries
- Back & neck pain
- Shoulder pain
- Leg, ankle & foot pain
- Hand & wrist pain (carpal tunnel syndrome)
- Arm pain
- Arthritis, neuritis & bursitis pain
- Headache

**Effective rehabilitation:**
- Musculoskeletal injury
- Nerve injury
- Postsurgical rehabilitation
- Sciatica
- Sprains
- Postpolio syndrome
- Spinal cord & brain injury
- Joints replacement

October 29, 2004

Kathryn Snell, R.N.
P.O. Box 14590
Lexington, Kentucky 40511-4590

RE:   Gail Kernaghan  (DOB: 8/15/52)

Dear Ms. Snell:

This is a redictation of the original dictation dated 5/17/04. That note was dictated, lost, and is not recovered yet.

Gail Kernaghan was seen by me in initial consultation on January 4, 2002. She was referred by her primary care physician, Dr. David Reyes. At that time, she reported being a 49-year-old female with a ten year history of low back problems. She sustained an L3 burst fracture that was treated conservatively. Since that time, she has had chronic low back pain. She underwent approximately six months of therapy in her initial treatment. Subsequent to that, she had been treated with Vicodin and Baclofen and was taking Ambien, a benzodiazepine, for sleep. The patient was switched over to OxyContin from Vicodin and continued on Baclofen.

Her remaining history shows pertinence including diabetes, and a history of rheumatic fever with subsequent heart murmur. She had a strong family history of coronary artery disease and hypertension. Socially and occupationally, the patient worked as a program manager for IBM, which was a desk job, however, she was not working at the time of my initial visit because of low back pain.

My initial impression was that the patient suffered from chronic low back pain, status post L3 compression burst fracture along with mechanical low back pain and SI joint dysfunction with right greater trochanteric bursitis and iliotibial band syndrome. The patient was additionally diagnosed with anxiety disorder secondary to chronic illness along with diabetes. Her initial treatment was primarily pharmacologic.

**Six convenient locations:**

Fox Run Office Park Plaza: (302) 529-8783 • 2006 Foulk Road, Suite B, Wilmington, DE 19810 • Fax (302) 529-7470
Medical Arts Complex: (302) 351-9271 • 700 Lea Boulevard, Suite 103, Wilmington, DE 19802 • Fax (302) 762-4074
Omega Professional Center: (302) 733-0980 • 17-B Omega Drive, Newark, DE 19713 • Fax (302) 733-7495
Glasgow Medical Center: (302) 832-8894 • 2600 Glasgow Avenue, Suite 210, Newark, DE 19702 • Fax (302) 832-8897
Walker Square: (302) 730-3848 • 830 Walker Road, Suite 11-1, Dover, DE 19901 • Fax (302) 730-8846
Smyrna: (302) 389-2225 • 29 N. East Street • Smyrna, DE 19977 • Fax (302) 389-1003

www.delawarebackpain.com

ML00010

0412C3007846

RE:  Gail Kernaghan
Date: 10/29/04
Page  2

The complete details of my initial visit with Ms. Kernaghan can be noted in the typed report of 1/04/02. Gail Kernaghan was seen in follow up evaluation by me on 1/22/02, 2/19/02, 4/05/02, 4/22/02, 6/06/02, 8/01/02, 8/29/02, 10/01/02, 3/05/03, 5/28/03, 7/24/03, 10/16/03, 1/08/04, 6/04/04, 9/13/04. It is suggested that these notes are reviewed in their entirety.

When the patient was last seen by me, she continued to complain of chronic low back pain and was taking several medications including but not limited to Neurontin, Prozac, Vicodin, and Zanaflex.

Her most recent renal and hepatic screens were noted to be normal. Most recent MRI available to us, is dated October 12, 2002, which reads out as a right S1 sacral region bone contusion with compression fracture and end plate fractures or Schmorl's nodes at L3. An x-ray of the LS spine dated 9/14/00 demonstrated 25% destruction of the L3 vertebral body with disc degeneration at the two levels above at L2-3 and L3-4.

In preparing for this report, I had an opportunity to review a functional capacity evaluation dated 5/03/04. While this summary is rather elaborate, thorough and lengthy in nature, it is inaccurate. This functional capacity evaluation does not include or test the effects of prolonged sedentary activity, such has prolonged sitting, standing, and work place environment activities for more than a four hour period. It also does not test day in and day out, week upon week effect of this type of work duty on the patient's low back condition. This test therefore is inadmissible.

In conclusion, Gail Kernaghan suffers from chronic lumbosacral spine pain secondary to an L3 burst fracture with resulting disc disruption at L2-3 and L3-4 resulting in discogenic lumbar spine pain. Her injuries are permanent in nature.

Occupationally, Ms. Kernaghan is unable to work in any capacity due to her lumbar spine condition. She should be restricted at home to sedentary duty activities.

All of the expert medical opinions above have been given to within a reasonable degree of medical probability. If you have any further questions regarding this matter, please contact me in writing at the Dover address.

Sincerely,

Asit P. Upadhyay, D.O., FAAPMR

APU/mc

041115F05222



**Delaware Back Pain & Sports Rehabilitation Centers**

*Depend on us to get you better faster.*

**Depend on teamwork for better health:**
- Physical medicine & rehabilitation
- Interventional pain management injections
- EMG
- Chiropractic care
- Rehabilitation therapy
- Exercise physiology
- Psychology/pain management counseling
- Massage therapy
- Wellness/nutrition programs
- QFCE

**Nonsurgical solutions:**
- Auto, work & sports injuries
- Back & neck pain
- Shoulder pain
- Leg, ankle & foot pain
- Hand & wrist pain (carpal tunnel syndrome)
- Arm pain
- Arthritis, neuritis & bursitis pain
- Headaches

**Effective rehabilitation:**
- Musculoskeletal injury
- Nerve injury
- Postsurgical rehabilitation
- Sciatica
- Stroke
- Postpolio syndrome
- Spinal cord & brain injury
- Joint replacement

October 29, 2004

Kathryn Snell, R.N.
P.O. Box 14590
Lexington, Kentucky 40511-4590

RE:   Gail Kernaghan (DOB: 8/15/52)

Dear Ms. Snell:

This is a redictation of the original dictation dated 5/17/04. That note was dictated, lost, and is not recovered yet.

Gail Kernaghan was seen by me in initial consultation on January 4, 2002. She was referred by her primary care physician, Dr. David Reyes. At that time, she reported being a 49-year-old female with a ten year history of low back problems. She sustained an L3 burst fracture that was treated conservatively. Since that time, she has had chronic low back pain. She underwent approximately six months of therapy in her initial treatment. Subsequent to that, she had been treated with Vicodin and Baclofen and was taking Ambien, a benzodiazepine, for sleep. The patient was switched over to OxyContin from Vicodin and continued on Baclofen.

Her remaining history shows pertinence including diabetes, and a history of rheumatic fever with subsequent heart murmur. She had a strong family history of coronary artery disease and hypertension. Socially and occupationally, the patient worked as a program manager for IBM, which was a desk job, however, she was not working at the time of my initial visit because of low back pain.

My initial impression was that the patient suffered from chronic low back pain, status post L3 compression burst fracture along with mechanical low back pain and SI joint dysfunction with right greater trochanteric bursitis and iliotibial band syndrome. The patient was additionally diagnosed with anxiety disorder secondary to chronic illness along with diabetes. Her initial treatment was primarily pharmacologic.

**Six convenient locations:**
South Bend Office Park Plaza: (302) 529-8783 • 2006 Foulk Road, Suite B, Wilmington, DE 19810 • Fax: (302) 529-7436
Medical Arts Complex: (302) 764-0271 • 700 Lea Boulevard, Suite 102, Wilmington, DE 19802 • Fax: (302) 762-4076
Omega Professional Center: (302) 733-0980 • 87-B Omega Drive, Newark, DE 19713 • Fax: (302) 733-7695
Glasgow Medical Center: (302) 832-8894 • 2600 Glasgow Avenue, Suite 210, Newark, DE 19702 • Fax: (302) 832-8597
Wellen Square: (302) 730-8848 • 930 Walker Road, Suite 11-1, Dover, DE 19901 • Fax: (302) 730-8846
Smyrna: (302) 389-7225 • 29 N. East Street • Smyrna, DE 19977 • Fax: (302) 389-1063
www.delawarebackpain.com

RE: Gail Kernaghan
Date: 10/29/04
Page 2

The complete details of my initial visit with Ms. Kernaghan can be noted in the typed report of 1/04/02. Gail Kernaghan was seen in follow up evaluation by me on 1/22/02, 2/19/02, 4/05/02, 4/22/02, 6/06/02, 8/01/02, 8/29/02, 10/01/02, 3/05/03, 5/28/03, 7/24/03, 10/16/03, 1/08/04, 6/04/04, 9/13/04. It is suggested that these notes are reviewed in their entirety.

When the patient was last seen by me, she continued to complain of chronic low back pain and was taking several medications including but not limited to Neurontin, Prozac, Vicodin, and Zanaflex.

Her most recent renal and hepatic screens were noted to be normal. Most recent MRI available to us, is dated October 12, 2002, which reads out as a right S1 sacral region bone contusion with compression fracture and end plate fractures or Schmorl's nodes at L3. An x-ray of the LS spine dated 9/14/00 demonstrated 25% destruction of the L3 vertebral body with disc degeneration at the two levels above at L2-3 and L3-4.

In preparing for this report, I had an opportunity to review a functional capacity evaluation dated 5/03/04. While this summary is rather elaborate, thorough and lengthy in nature, it is inaccurate. This functional capacity evaluation does not include or test the effects of prolonged sedentary activity, such has prolonged sitting, standing, and work place environment activities for more than a four hour period. It also does not test day in and day out, week upon week effect of this type of work duty on the patient's low back condition. This test therefore is inadmissible.

In conclusion, Gail Kernaghan suffers from chronic lumbosacral spine pain secondary to an L3 burst fracture with resulting disc disruption at L2-3 and L3-4 resulting in discogenic lumbar spine pain. Her injuries are permanent in nature.

Occupationally, Ms. Kernaghan is unable to work in any capacity due to her lumbar spine condition. She should be restricted at home to sedentary duty activities.

All of the expert medical opinions above have been given to within a reasonable degree of medical probability. If you have any further questions regarding this matter, please contact me in writing at the Dover address.

Sincerely,

Asit P. Upadhyay, D.O., FAAPMR

APU/mc

OGC-Scan Only

Metropolitan Life Insurance Company

**MetLife®**

Met Disability
P.O. Box 14592
Lexington, KY 40511-4592

October 19, 2004

Gail Kernaghan                          Re: Long Term Disability
363 Valley Mist Dr.                          Claim No.: 699501171006
Clayton, DE 19938                            Group No.: 35750/IBM
                                             Serial No.: 142425

Dear Ms. Kernaghan:

Recently we conducted a review of your claim for disability benefits. Your claim is
terminated effective November 19, 2004.

Your employer's Plan states the following:

Under the IBM Long Term Disability Plan, totally disabled means that during the first 12
months after you complete the waiting period, you cannot perform the important duties of
your regular occupation with IBM because of a sickness or injury. After expiration of
that 12 month period, totally disabled means that, because of a sickness or injury, you
cannot perform the important duties of your occupation or of any other gainful occupation
for which you are reasonably fit by your education, training or experience. You must be
under a doctor's care for your disability. At your own expense proof of disability,
satisfactory to MetLife, must be submitted to MetLife. "Your regular occupation with
IBM" means the regular occupation you had with IBM as of your last day of active status.

You began receiving LTD benefits on January 5, 1995, which means you must remain
unable to perform the important duties of your occupation or of any other gainful
occupation for which you are reasonably fit by your education, training or experience for
benefits to continue beyond January 5, 1996.

Your file was sent to an Employability Consultant for an Employability Assessment and
Labor Market Analysis. Taking into consideration any restrictions and limitations, your
past vocational preparation, general educational development and your disability salary as
well as your pre-disability salary, it was noted that you would have the skills to perform
the following occupations, but not limited to:

ML00023

041022 032713

| Job Title | D.O.T. # | Annual Salary |
|-----------|----------|---------------|
| Purchasing Manager | 162.117-014 | $56,800.00 |
| Contract Administrator | 162.117-014 | $56,800.00 |
| First Line Supervisor/ | 187.167-098 | $65,610.00 |
| Manager, Non-retail Sales Workers | | |
| Program Manager | 189.167-030 | $101,060.00 |
| Employment Agency Mgr. | 187.167-098 | $55,610.00 |

While some employers wanted specific software knowledge, other employers preferred industry-specific knowledge. However, there may be times when this would not be required from yet other employers.

Based on this labor market survey, it appear that you would be qualified to perform as a procurement manager, customer service manager, and employment manager within the Delaware geographic area, earning between $40,000.00 to $60,000.00 per year. These positions are considered to be sedentary and within your physical capabilities.

As you have been out of the workforce since 1994, we are willing to offer limited consulting/assistance from a Vocational Rehabilitation Consultant. If your are interested receiving this assistance, please contact Deanna Denmead at 1-800-638-00064, extension 2440, within 30 days of the date of this letter.

In summary, the medical records on file support that you are able to perform the job duties of other occupations. Alternative occupations have been identified in your area that you have the transferable skills to perform within your residual functional capacity. They provide a wage commensurate to your present long-term disability gross benefit. Employers exist in the Delaware geographical area that typically hire for these occupations.

Therefore, we have determined that you no longer meet the definition of disability as defined in the plan and we must terminate your Long Term Disability benefits effective November 19, 2004.

This claim was processed in accordance with the terms of your Employee Benefit Plan.

Because your claim was denied in whole or in part, you may appeal this decision by sending a written request for appeal to MetLife Disability, PO Box 14592, Lexington KY, 40511-4592 within 180 days after you receive this denial letter. Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records or other information relating to your claim that you deem appropriate for us to give your appeal proper consideration. Upon request, MetLife will provide you with a copy of the documents, records, or other information we have that are relevant to your claim and identify any medical or vocational expert(s) whose advice was obtained in connection with your claim.

ML00024

MetLife will evaluate all the information and advise you of our determination of your appeal within 45 days after we receive your written request for appeal. If there are special circumstances requiring additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing. In the event your appeal is denied in whole or in part, you will have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

The Employee Service Center (ESC) has been advised of the termination of your LTD benefits. It is **IMPORTANT** that you immediately contact the ESC at 1-800-796-9876 regarding your status, since your IBM medical benefits are affected by this change. If you wish to be considered for return to work at IBM, you must contact the ESC at the above number and they will refer you to the appropriate individual for assistance. **If you do not contact the ESC within 30 days from the date of this letter, IBM will consider you to have voluntarily resigned, and all benefits will cease.**

Yours truly

Theresa Zammiello
Case Management Specialist
Met Disability
1-800-638-0064
1-800-230-9531 fax

cc: Global Well Being Services

ML00025

040920017057

August 23, 2004



**Crawford**®

Healthcare Management
Vicki C. Bussmann
Branch Manager

Deanna Denmead
Met Life Disability
P.O. Box 14590
Lexington, KY 40511-4590

| Re: | Claimant | : | Gail Kernaghan |
|---|---|---|---|
| | Met Life Claim No. | : | 699501171006 |
| | SSN | : | 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 |
| | DOB | : | 8/15/52 |
| | Employer | : | IBM |
| | Report No. | : | Unknown |
| | DOD | : | 11/22/94 |
| | D/Referral | : | Unknown |
| | Diagnosis | : | Chronic low back pain, right shoulder pain, lumbar facet syndrome. |
| | Vendor Tax I.D. No. | : | 58-0506554 |
| | Job Title | : | Project Manager |
| | Length/Service | : | 10 Years |
| | Salary at DOD | : | $55,000.00 |
| | Our File No. | : | 306-14228 |

## TRANSFERABLE SKILLS AND LABOR MARKET SURVEY REPORT

### INTRODUCTION

Crawford Healthcare Management Services was requested by Deanna Denmead to perform a transferable skills analysis and labor market survey for Gail Kernaghan.

At your request, I did review records that included a home visit/medical assessment completed by Sherry Palish, R.N., C.C.M. dated 2/11/04 and a functional capacity evaluation completed by Brown and Associates in Dover, DE on 4/27/04.

### VOCATIONAL/EDUCATIONAL HISTORY

Based on the home visit report from Sherry Palish, Mrs. Kernaghan worked for IBM for 10 years. Her last position was as a software project office program manager (D.O.T. # 189.167-030). She was also considered a project director (D.O.T. # 189.117-030). She was required to be able to operate the system and negotiate with various departments for certain deliverables. She was also responsible for performance and educational plans. She was the manager for 22 employees of IBM and for 33 software vendors.

600 Reed Road ♦ Broomall PA 19008 ♦ PH: 610-359-1860 ♦ FX: 610-359-1491

ML00026

040920017057

RE: Kernaghan, Gail
    Page 2
    August 23, 2004

Based on the Dictionary of Occupational Titles, she also performed duties that correlate to a contract specialist (D.O.T. # 162.117-018).

She reported to Sherry Palish that she had a Bachelor's Degree in Biology and Chemistry from Bowling Green College in Ohio in 1974. She stated that she received a Master's Degree in Computer Science at Cleveland State University in 1986.

Prior to working at IBM, she indicated that she was a hospital lab technician in Lorraine, Ohio.

## MEDICAL HISTORY

Based on the interview with Sherry Palish, R.N., Gail indicated that she injured her low back and shoulder in a sledding accident on 11/22/94. She indicated that she is able to lift 5-10 lbs.; able to walk for approximately two hours with rest; and sit and stand for approximately 30 minutes at a time. She reports difficulties with decreased range of motion in her right shoulder and low back. She had indicated that she gained approximately 80 lbs. since her injury.

Based on the functional capacity evaluation that was completed on 4/26 and 4/27/04, it was determined that Gail is capable of performing sedentary work. She demonstrated the ability to lift up to 12.5 lbs. on an occasional basis. It was noted that she appeared to have weakness in both of her upper extremities. She demonstrated "excellent abilities in elevated work, vocational activities, crawling, kneeling and crouching." She also demonstrated good abilities in forward bending and repetitive squatting and sitting. She demonstrated excellent abilities in standing tolerance and ambulation activities.

Based on the functional capacity evaluation, I took into consideration sedentary employment.

## RESULTS AND OUTCOMES OF TRANSFERABLE SKILLS ANALYSIS

Based on her work history, she has demonstrated a Specific Vocational Preparation of 8, which means it has taken her 4-10 years to master the techniques and acquire the information needed to perform at a specific job-worker situation.

She has demonstrated the ability to apply principles of logical or scientific thinking to define problems, collect data, establish facts and draw valid conclusions. She is able to interpret an extensive variety of technical instructions in mathematical or diagrammatic form. She is able to deal with

A18

ML00027

040920017057

RE:  Kernaghan, Gail
     Page 3
     August 23, 2004

several abstract and concrete variables.  She has demonstrated
the ability to work with exponents and logarithms.  She is able
to handle mathematical operations to frequency distributions,
reliability of tests, normal curve, analysis of variance,
correlation techniques and sample theory.

Based on her work history, she also has demonstrated the ability
to write manuals, critiques and reports.  She has demonstrated
the ability to review scientific and technical journals,
financial reports and legal documents.

Based on her work history, she has demonstrated above-average
aptitude for general learning ability, verbal aptitude, numerical
aptitude and clerical aptitude.  She has demonstrated average
aptitudes for spatial aptitude and form perception.

She has demonstrated the ability to coordinate data, negotiate
with people, speak and do presentations in front of people, and
handle things.

Based on the above-mentioned transferable skills analysis, she
would be capable of performing the following occupations:

| JOB TITLE | D.O.T. # | ANNUAL SALARY |
|-----------|----------|---------------|
| Purchasing Manager | 162.117-014 | $ 56,800.00 |
| Contract Administrator | 162.117-014 | $ 56,800.00 |
| First Line Supervisor/ Manager, Nonretail Sales Workers | 187.167-098 | $ 65,610.00 |
| Program Manager | 189.167-030 | $101,060.00 |
| Employment Agency Manager | 187.167-098 | $ 55,610.00 |

These wages are based on the Occupational Employment Statistics
Survey collected in the State of Delaware in the year 2001.

RESULTS OF LABOR MARKET SURVEY

I contacted employers using Monster.com and America's Job Bank
for organizations who had previously advertised job openings
within the past six months to determine employers with potential
jobs for the labor market survey.  The following jobs and
employers were contacted for the labor market survey:

ML00028

040920017057

RE:  Kernaghan, Gail
     Page 4
     August 23, 2004

## Position No. 1:

| | | |
|---|---|---|
| Position | : | Quality Team Leader/Department Manager |
| Employer | : | Bank of America |
| Location | : | Dover, DE |
| Telephone | : | 302-741-1675 |
| Contact | : | Julie, Human Resources Assistant |
| Wage | : | $30,000-$40,000 per year |
| Educational Requirements | : | Minimum 3 years of substantive management experience; action-oriented and strong leadership and implementation skills; proficient with Microsoft Office; demonstrate ability to plan, design and act as a change agent. Effective at transplanting customer solutions and processes for improving the customer experience. Demonstrate project manager experience. |
| No. of Employees in Occupation | : | 10 |
| Physical Requirements | : | This is a sedentary position in a controlled environment in an office. She would be able to periodically get up and walk around the office. |
| Consultant's Assessment | : | She would be qualified for this position. |
| D/Available | : | 8/04 |

## Position No. 2:

| | | |
|---|---|---|
| Position | : | Procurement Services Manager |
| Employer | : | Dade Behring |
| Location | : | Newark, DE |
| Telephone | : | 302-631-6000 |
| Contact | : | Janice Warren, Human Resources |
| Wage | : | $57,500-$115,000 per year |
| Educational Requirements | : | Bachelor's Degree with 5-7 years experience; the ability to work with salespeople, vendors, manufacturing, logistics and supply chain planning professors globally. |
| No. of Employees in Occupation | : | One as Manager, and may have one assistant. |
| Physical Requirements | : | This is a sedentary position with the ability to occasionally stand and walk with lifting less than 10 lbs. This appears to be a position she would be capable of performing. |

ML00029

040920017057

RE:   Kernaghan, Gail
      Page 5
      August 23, 2004


Consultant's
Assessment         :    She would be qualified for this position.
D/Available        :    Has been available within the past 6 months.

Position No. 3:

Position           :    Supply Manager, Buyer or Procurement Manager
Employer           :    Agilent Technologies
Location           :    Wilmington, DE
Telephone          :    877-424-4536
Contact            :    Darlene, Director of Supplies
Wage               :    $50,000-$60,000 per year
Educational
Requirements       :    Bachelor's Degree in Business Administration
                        or equivalent with 7 years relevant
                        experience; strong math skills including
                        arithmetic, algebra and statistics.   Strong
                        communication skills and proficiency in
                        Microsoft Office.
Physical
Requirements       :    The employer indicated that she may be
                        considered appropriate for this type of
                        position.

No. of Employees
in Occupation      :    As a manager there is only one job, and other
                        people are assistant buyers.

Consultant's
Assessment         :    She would be qualified for this position.
D/Available        :    Has been available within the past 6 months.

Position No. 4:

Position           :    Procurement Manager
Employer           :    Bank One Corporation
Location           :    Wilmington, DE
Telephone          :    302-594-4000
Contact            :    Felicia O'Briason, Human Resources
Wage               :    $50,000-$60,000 per year
Educational
Requirements       :    Bachelor's Degree and advanced degrees
                        desirable plus minimum 5 years relevant
                        experience in sourcing or project management.
                        Must have strong interpersonal and written
                        skills.   Must have experience coordinating
                        and managing cross-functional team to achieve
                        project objectives.   Financial modeling
                        skills and proficiency in Microsoft Office.
                        SAP knowledge is preferred.

ML00030

040920017057

RE:  Kernaghan, Gail
     Page 6
     August 23, 2004

Physical
Requirements        :    This is a sedentary position with the ability
                         to stand and walk occasionally.

No. of Employees
at Occupation       :    One with an assistant

Consultant's
Assessment          :    Based on her skills, this position appears to
                         be appropriate for her; however, considering
                         that she has been out of the workforce for
                         many years, this may be a deterrent for
                         hiring her.  In addition, since I am unsure
                         as to whether she has SAP knowledge and the
                         employer indicated this would be preferred
                         but not required, she may not be considered
                         one of their top candidates.

D/Available         :    7/04

Position No. 5:

Position            :    Marketing Project Manager
Employer            :    Bank One Corporation
Location            :    Wilmington, DE
Telephone           :    302-594-4000
Contact             :    Felicia O'Briason, Human Resources
Wage                :    $50,000-$60,000 per year

Educational
Requirements        :    Bachelor's Degree plus 7 years relevant
                         experience or advanced degree.  Must have
                         strong verbal and written skills.  Prefers
                         someone with direct mail or credit card
                         experience.

Physical
Requirements        :    This is a sedentary position in a controlled
                         office environment.

No. of Employees
at Occupation       :    As a Marketing Project Manager, there is only
                         one position; however, there are several
                         Project Managers in other departments at Bank
                         One Corporation.

Consultant's
Assessment          :    She may not be considered for this position
                         because they were looking for someone with
                         direct mail or credit card experience.
                         However, other employers may not require the
                         industry-specific experience.

D/Available         :    This position has been available within the
                         past six months.

ML00031

040920017057

RE:  Kernaghan, Gail
     Page 7
     August 23, 2004

<u>Position No. 6</u>:

| | | |
|---|---|---|
| Position | : | Operations Assistant Manager |
| Employer | : | TransCore |
| Location | : | Dover, DE |
| Telephone | : | 717-443-8561 |
| Contact | : | Judy Hummel, Human Resources, Hummeltown, PA |
| Wage | : | $50,000.00 range per year |

Educational
Requirements   :   Two years' management experience in a
customer service or call center environment
preferred.  Bachelor's Degree in Business
Administration or two-year degree with
relevant work experience.

Physical
Requirements   :   This is a sedentary position at the Dover, DE
site.  There is occasional standing and
walking.

No. of Employees
at Occupation   :   They have three at this specific location;
however, they have jobs throughout Delaware
and the United States.

Consultant's
Assessment   :   Based on her work history and educational
background, she appears to be someone who
would be considered qualified for this
position.

D/Available   :   This position was advertised on America's Job
Bank in 8/04.

<u>Position No. 7</u>:

| | | |
|---|---|---|
| Position | : | Customer Service Program Manager |
| Employer | : | Juniper Bank |
| Location | : | Wilmington, DE |
| Telephone | : | 302-255-8211 |
| Contact | : | Angel Karra, Human Resources |
| Wage | : | $60,000-$65,000 per year |

Educational
Requirements   :   Bachelor's Degree plus 3-5 years of project
management or customer service support with
strong verbal and written communication
skills.  Proven leadership skills and
organizational skills.

Physical
Requirements   :   This is a sedentary position but would
require occasionally traveling between two
buildings within Wilmington, DE.

A23

ML00032

040920017057

RE:   Kernaghan, Gail
      Page 8
      August 23, 2004

No. of Employees
at Occupation        :    Six
Consultant's
Assessment           :    They prefer someone with customer service
                          call center experience, but they are willing
                          to consider other experience.  She would be
                          considered qualified for this position.
D/Available          :    This position has been available within the
                          past six months.

Position No. 8:

Position             :    Employment Agency Manager
Employer             :    Superior Staffing
Location             :    Newark, DE
Telephone            :    610-941-9350
Contact              :    Mary Kay, Plymouth Meeting, PA, indicated
                          that they are hiring to open a new office in
                          Newark, DE.
Wage                 :    $40,000-$50,000 per year
Educational
Requirements         :    Bachelor of Arts or Science Degree; prior
                          management or staffing experience.  Must have
                          valid driver's license and good driving
                          record as well as a serviceable car.

Physical
Requirements         :    This is a sedentary to light duty position.
                          It does require some travel within the
                          general geographic area.  She would be able
                          to move around as well as sit in an office
                          environment.
No. of Employees
at Occupation        :    One at this location, but there are several
                          throughout the United States.

Consultant's
Assessment           :    This employer is preferring someone with
                          previous experience since this will be a new
                          office.  The hired person would be
                          responsible for recruiting, hiring,
                          supervising and managing a proper on-site
                          staff of recruiting and administrative
                          employees.  Must be able to promote sales and
                          contacts with business.
D/Available          :    This position is currently available.

ML00033

040920017057

RE:  Kernaghan, Gail
     Page 9
     August 23, 2004

## SUMMARY

While some employers wanted specific software knowledge, other
employers preferred industry-specific knowledge.  However, there
may be times when this would not be required from yet other
employers.

Based on this labor market survey, it appears that she would be
qualified to perform as a procurement management, customer
service manager and employment manager within the Delaware
geographic area, earning between $40,000-$60,000 per year.  These
positions are considered to be sedentary and within her physical
capabilities.  The only deterrent to employers would be the fact
that she has been out of the workforce for many years.

CRAWFORD AND COMPANY

Jennifer Weinstein, M.Ed., C.R.C., C.C.M.
Vocational Services Consultant

JW:edm

August 23, 2004



**Crawford**®

Healthcare Management
Vicki C. Bussmann
Branch Manager

Deanna Denmead
Met Life Disability
P.O. Box 14590
Lexington, KY 40511-4590

| | | | |
|---|---|---|---|
| Re: | Claimant | : | Gail Kernaghan |
| | Met Life Claim No. | : | 699501171006 |
| | SSN | : | 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 |
| | DOB | : | 8/15/52 |
| | Employer | : | IBM |
| | Report No. | : | Unknown |
| | DOD | : | 11/22/94 |
| | D/Referral | : | Unknown |
| | Diagnosis | : | Chronic low back pain, right shoulder pain, lumbar facet syndrome. |
| | Vendor Tax I.D. No. | : | 58-0506554 |
| | Job Title | : | Project Manager |
| | Length/Service | : | 10 Years |
| | Salary at DOD | : | $55,000.00 |
| | Our File No. | : | 306-14228 |

## TRANSFERABLE SKILLS AND LABOR MARKET SURVEY REPORT

### INTRODUCTION

Crawford Healthcare Management Services was requested by Deanna Denmead to perform a transferable skills analysis and labor market survey for Gail Kernaghan.

At your request, I did review records that included a home visit/medical assessment completed by Sherry Palish, R.N., C.C.M. dated 2/11/04 and a functional capacity evaluation completed by Brown and Associates in Dover, DE on 4/27/04.

### VOCATIONAL/EDUCATIONAL HISTORY

Based on the home visit report from Sherry Palish, Mrs. Kernaghan worked for IBM for 10 years. Her last position was as a software project office program manager (D.O.T. # 189.167-030). She was also considered a project director (D.O.T. # 189.117-030). She was required to be able to operate the system and negotiate with various departments for certain deliverables. She was also responsible for performance and educational plans. She was the manager for 22 employees of IBM and for 33 software vendors.

600 Reed Road ♦ Broomall PA 19008 ♦ PH: 610-359-1860 ♦ FX: 610-359-1491

A26

ML00039

RE:  Kernaghan, Gail
     Page 2
     August 23, 2004

Based on the Dictionary of Occupational Titles, she also
performed duties that correlate to a contract specialist (D.O.T.
# 162.117-018).

She reported to Sherry Palish that she had a Bachelor's Degree in
Biology and Chemistry from Bowling Green College in Ohio in 1974.
She stated that she received a Master's Degree in Computer
Science at Cleveland State University in 1986.

Prior to working at IBM, she indicated that she was a hospital
lab technician in Lorraine, Ohio.

**MEDICAL HISTORY**

Based on the interview with Sherry Palish, R.N., Gail indicated
that she injured her low back and shoulder in a sledding accident
on 11/22/94.  She indicated that she is able to lift 5-10 lbs.;
able to walk for approximately two hours with rest; and sit and
stand for approximately 30 minutes at a time.  She reports
difficulties with decreased range of motion in her right shoulder
and low back.  She had indicated that she gained approximately 80
lbs. since her injury.

Based on the functional capacity evaluation that was completed on
4/26 and 4/27/04, it was determined that Gail is capable of
performing sedentary work.  She demonstrated the ability to lift
up to 12.5 lbs. on an occasional basis.  It was noted that she
appeared to have weakness in both of her upper extremities.  She
demonstrated "excellent abilities in elevated work, vocational
activities, crawling, kneeling and crouching."  She also
demonstrated good abilities in forward bending and repetitive
squatting and sitting.  She demonstrated excellent abilities in
standing tolerance and ambulation activities.

Based on the functional capacity evaluation, I took into
consideration sedentary employment.

**RESULTS AND OUTCOMES OF TRANSFERABLE SKILLS ANALYSIS**

Based on her work history, she has demonstrated a Specific
Vocational Preparation of 8, which means it has taken her 4-10
years to master the techniques and acquire the information needed
to perform at a specific job-worker situation.

She has demonstrated the ability to apply principles of logical
or scientific thinking to define problems, collect data,
establish facts and draw valid conclusions.  She is able to
interpret an extensive variety of technical instructions in
mathematical or diagrammatic form.  She is able to deal with

ML00040

RE:  Kernaghan, Gail
     Page 3
     August 23, 2004

several abstract and concrete variables.  She has demonstrated
the ability to work with exponents and logarithms.  She is able
to handle mathematical operations to frequency distributions,
reliability of tests, normal curve, analysis of variance,
correlation techniques and sample theory.

Based on her work history, she also has demonstrated the ability
to write manuals, critiques and reports.  She has demonstrated
the ability to review scientific and technical journals,
financial reports and legal documents.

Based on her work history, she has demonstrated above-average
aptitude for general learning ability, verbal aptitude, numerical
aptitude and clerical aptitude.  She has demonstrated average
aptitudes for spatial aptitude and form perception.

She has demonstrated the ability to coordinate data, negotiate
with people, speak and do presentations in front of people, and
handle things.

Based on the above-mentioned transferable skills analysis, she
would be capable of performing the following occupations:

| JOB TITLE | D.O.T. # | ANNUAL SALARY |
|-----------|----------|---------------|
| Purchasing Manager | 162.117-014 | $ 56,800.00 |
| Contract Administrator | 162.117-014 | $ 56,800.00 |
| First Line Supervisor/ Manager, Nonretail Sales Workers | 187.167-098 | $ 65,610.00 |
| Program Manager | 189.167-030 | $101,060.00 |
| Employment Agency Manager | 187.167-098 | $ 55,610.00 |

These wages are based on the Occupational Employment Statistics
Survey collected in the State of Delaware in the year 2001.

## RESULTS OF LABOR MARKET SURVEY

I contacted employers using Monster.com and America's Job Bank
for organizations who had previously advertised job openings
within the past six months to determine employers with potential
jobs for the labor market survey.  The following jobs and
employers were contacted for the labor market survey:

A28

ML00041

RE: Kernaghan, Gail
    Page 4
    August 23, 2004

<u>Position No. 1</u>:

| | | |
|---|---|---|
| Position | : | Quality Team Leader/Department Manager |
| Employer | : | Bank of America |
| Location | : | Dover, DE |
| Telephone | : | 302-741-1675 |
| Contact | : | Julie, Human Resources Assistant |
| Wage | : | $30,000-$40,000 per year |
| Educational Requirements | : | Minimum 3 years of substantive management experience; action-oriented and strong leadership and implementation skills; proficient with Microsoft Office; demonstrate ability to plan, design and act as a change agent. Effective at transplanting customer solutions and processes for improving the customer experience. Demonstrate project manager experience. |
| No. of Employees in Occupation | : | 10 |
| Physical Requirements | : | This is a sedentary position in a controlled environment in an office. She would be able to periodically get up and walk around the office. |
| Consultant's Assessment | : | She would be qualified for this position. |
| D/Available | : | 8/04 |

<u>Position No. 2</u>:

| | | |
|---|---|---|
| Position | : | Procurement Services Manager |
| Employer | : | Dade Behring |
| Location | : | Newark, DE |
| Telephone | : | 302-631-6000 |
| Contact | : | Janice Warren, Human Resources |
| Wage | : | $57,500-$115,000 per year |
| Educational Requirements | : | Bachelor's Degree with 5-7 years experience; the ability to work with salespeople, vendors, manufacturing, logistics and supply chain planning professors globally. |
| No. of Employees in Occupation | : | One as Manager, and may have one assistant. |
| Physical Requirements | : | This is a sedentary position with the ability to occasionally stand and walk with lifting less than 10 lbs. This appears to be a position she would be capable of performing. |

A29

ML00042

RE: Kernaghan, Gail
Page 5
August 23, 2004

| | | |
|---|---|---|
| Consultant's | | |
| Assessment | : | She would be qualified for this position. |
| D/Available | : | Has been available within the past 6 months. |

<u>Position No. 3</u>:

| | | |
|---|---|---|
| Position | : | Supply Manager, Buyer or Procurement Manager |
| Employer | : | Agilent Technologies |
| Location | : | Wilmington, DE |
| Telephone | : | 877-424-4536 |
| Contact | : | Darlene, Director of Supplies |
| Wage | : | $50,000 $60,000 per year |
| Educational Requirements | : | Bachelor's Degree in Business Administration or equivalent with 7 years relevant experience; strong math skills including arithmetic, algebra and statistics.  Strong communication skills and proficiency in Microsoft Office. |
| Physical Requirements | : | The employer indicated that she may be considered appropriate for this type of position. |
| No. of Employees in Occupation | : | As a manager there is only one job, and other people are assistant buyers. |
| Consultant's Assessment | : | She would be qualified for this position. |
| D/Available | : | Has been available within the past 6 months. |

<u>Position No. 4</u>:

| | | |
|---|---|---|
| Position | : | Procurement Manager |
| Employer | : | Bank One Corporation |
| Location | : | Wilmington, DE |
| Telephone | : | 302-594-4000 |
| Contact | : | Felicia O'Briason, Human Resources |
| Wage | : | $50,000-$60,000 per year |
| Educational Requirements | : | Bachelor's Degree and advanced degrees desirable plus minimum 5 years relevant experience in sourcing or project management. Must have strong interpersonal and written skills.  Must have experience coordinating and managing cross-functional team to achieve project objectives.  Financial modeling skills and proficiency in Microsoft Office. SAP knowledge is preferred. |

A30

ML00043

RE: Kernaghan, Gail
Page 6
August 23, 2004

| | | |
|---|---|---|
| Physical Requirements | : | This is a sedentary position with the ability to stand and walk occasionally. |
| No. of Employees at Occupation | : | One with an assistant |
| Consultant's Assessment | : | Based on her skills, this position appears to be appropriate for her; however, considering that she has been out of the workforce for many years, this may be a deterrent for hiring her. In addition, since I am unsure as to whether she has SAP knowledge and the employer indicated this would be preferred but not required, she may not be considered one of their top candidates. |
| D/Available | : | 7/04 |

Position No. 5:

| | | |
|---|---|---|
| Position | : | Marketing Project Manager |
| Employer | : | Bank One Corporation |
| Location | : | Wilmington, DE |
| Telephone | : | 302-594-4000 |
| Contact | : | Felicia O'Briason, Human Resources |
| Wage | : | $50,000-$60,000 per year |
| Educational Requirements | : | Bachelor's Degree plus 7 years relevant experience or advanced degree. Must have strong verbal and written skills. Prefers someone with direct mail or credit card experience. |
| Physical Requirements | : | This is a sedentary position in a controlled office environment. |
| No. of Employees at Occupation | : | As a Marketing Project Manager, there is only one position; however, there are several Project Managers in other departments at Bank One Corporation. |
| Consultant's Assessment | : | She may not be considered for this position because they were looking for someone with direct mail or credit card experience. However, other employers may not require the industry-specific experience. |
| D/Available | : | This position has been available within the past six months. |

A31

ML00044

RE:  Kernaghan, Gail
     Page 7
     August 23, 2004

## Position No. 6:

| | | |
|---|---|---|
| Position | : | Operations Assistant Manager |
| Employer | : | TransCore |
| Location | : | Dover, DE |
| Telephone | : | 717-443-8561 |
| Contact | : | Judy Hummel, Human Resources, Hummeltown, PA |
| Wage | : | $50,000.00 range per year |
| Educational Requirements | : | Two years' management experience in a customer service or call center environment preferred.  Bachelor's Degree in Business Administration or two-year degree with relevant work experience. |
| Physical Requirements | : | This is a sedentary position at the Dover, DE site.  There is occasional standing and walking. |
| No. of Employees at Occupation | : | They have three at this specific location; however, they have jobs throughout Delaware and the United States. |
| Consultant's Assessment | : | Based on her work history and educational background, she appears to be someone who would be considered qualified for this position. |
| D/Available | : | This position was advertised on America's Job Bank in 8/04. |

## Position No. 7:

| | | |
|---|---|---|
| Position | : | Customer Service Program Manager |
| Employer | : | Juniper Bank |
| Location | : | Wilmington, DE |
| Telephone | : | 302-255-8211 |
| Contact | : | Angel Karra, Human Resources |
| Wage | : | $60,000-$65,000 per year |
| Educational Requirements | : | Bachelor's Degree plus 3-5 years of project management or customer service support with strong verbal and written communication skills.  Proven leadership skills and organizational skills. |
| Physical Requirements | : | This is a sedentary position but would require occasionally traveling between two buildings within Wilmington, DE. |

A32

ML00045

RE:    Kernaghan, Gail
       Page 8
       August 23, 2004

No. of Employees
at Occupation    :    Six
Consultant's
Assessment       :    They prefer someone with customer service
                      call center experience, but they are willing
                      to consider other experience.  She would be
                      considered qualified for this position.
D/Available      :    This position has been available within the
                      past six months.

Position No. 8:

Position         :    Employment Agency Manager
Employer         :    Superior Staffing
Location         :    Newark, DE
Telephone        :    610-941-9350
Contact          :    Mary Kay, Plymouth Meeting, PA, indicated
                      that they are hiring to open a new office in
                      Newark, DE.
Wage             :    $40,000-$50,000 per year
Educational
Requirements     :    Bachelor of Arts or Science Degree; prior
                      management or staffing experience.  Must have
                      valid driver's license and good driving
                      record as well as a serviceable car.
Physical
Requirements     :    This is a sedentary to light duty position.
                      It does require some travel within the
                      general geographic area.  She would be able
                      to move around as well as sit in an office
                      environment.
No. of Employees
at Occupation    :    One at this location, but there are several
                      throughout the United States.
Consultant's
Assessment       :    This employer is preferring someone with
                      previous experience since this will be a new
                      office.  The hired person would be
                      responsible for recruiting, hiring,
                      supervising and managing a proper on-site
                      staff of recruiting and administrative
                      employees.  Must be able to promote sales and
                      contacts with business.
D/Available      :    This position is currently available.

A33

ML00046

040827F06623

RE: Kernaghan, Gail
    Page 9
    August 23, 2004

## SUMMARY

While some employers wanted specific software knowledge, other employers preferred industry-specific knowledge. However, there may be times when this would not be required from yet other employers.

Based on this labor market survey, it appears that she would be qualified to perform as a procurement management, customer service manager and employment manager within the Delaware geographic area, earning between $40,000-$60,000 per year. These positions are considered to be sedentary and within her physical capabilities. The only deterrent to employers would be the fact that she has been out of the workforce for many years.

CRAWFORD AND COMPANY

Jennifer Weinstein, M.Ed., C.R.C., C.C.M.
Vocational Services Consultant

JW:edm

ML00047

1 8 Pg~040619 040300

Metropolitan Life Insurance Company

# MetLife®

P.O. Box 14590
Lexington, KY 40511-4590

May 14, 2004

Dr Ugadhyay,
830 Walker Road,
Dover, Delaware 19901

Long Term Disability
Claim # 699501171006
Group 35750
Regarding: Gail Kernaghan

Dear Dr Ugadhyay,

I am a Nurse Consultant for Metropolitan Life Insurance Company-Disability
Group Insurance. I am currently in the process of reviewing Ms Gail
Kernaghan long-term Disability claim file. Our records indicate that you are
Ms Kernaghan Physical Medicine and Rehab Specialist and that you are
treating her Neuropathy and Radiculopathy.

As you know, Ms. Kernaghan continues to be on leave from her own job at
IBM as a Business Consultant and as of January 5, 1996 she must be totally
disabled from any occupation for which she is fit based on her education,
training and experience. Ms. Rodriquez has some college with a MS/CICS
degree in Computer Science and Business.

Please see the attached report, dated May 14, 2004 pertaining to a
Functional Capacity Evaluation, done by Dorothy Brown, PT, regarding your
patient's condition. This report is based upon medical information submitted
by you as well as by Ms Brown comprehensive examination. Please feel free
to share this report with your patient at your discretion.

Please be advised that your patient, Ms Kernaghan is receiving Long Term
Disability benefits under her former employer's disability plan, the IBM
Contract Plan administered by MetLife. We would like to bring to your
attention provisions contained in this Group Plan. Claimants must be under
appropriate care and treatment as follows:

"Appropriate Care and Treatment" means medical care and treatment that meet
all of the following:

040619 039390

ML00052

1. It is received from a Doctor whose medical training and clinical experience are suitable for treating your Disability;
2. It is necessary to meet your basic health needs and is of demonstrable medical value;
3. It is consistent in type, frequency and duration of treatment with relevant guidelines of national medical, research and health care coverage organization and governmental agencies;
4. It is consistent with the diagnosis of your condition; and
5. Its purpose is maximizing your medical improvement.

"Doctor" means a person whom: (I) is legally licensed to practice medicine; and (ii) is not related to you. A licensed medical practitioner will be considered a Doctor:

1. if applicable state law requires that such practitioners be recognized for the purposes of certification of disability; and
2. the care and treatment provided by the practitioner is within the scope of his or her license.

We would like you to review the attached report and you may wish to provide us with your comments. Based on your review of the Functional Capacity Evaluation would Ms Kernaghan be able to return to work at a sedentary position as stated in the report. According to her disability plan she is entitled to vocational rehabilitation assistance and would like your opinion regarding this. If you do not agree with this report, you may want to provide us with office notes and objective documentation to support your position. If we do not receive a response from you by May 31, 2004, we will assume that you agree with the Functional Capacity Evaluation report.

If you have any questions, please do not hesitate to contact me by telephone at 1-800-300-4296, Ext2348. Any response to this letter may be sent to the above address.

Sincerely,


Kathryn Snell RN, CCM
Nurse Consultant
Metropolitan Life Insurance Company


cc: Gail Kernaghan
    File

ML00053

Case 1:05-cv-00402-GMS  Document 40-5  Filed 04/03/2006  Page 40 of 58



## Isernhagen Work Systems
11 East Superior Street Suite 370
Duluth MN 55802.
P: (218) 728-6455
F: (218) 728-6454


**TO:**

**FROM:**

**DATE:**

**SUBJECT:** Functional Capacities Evaluation (FCE) Summary Report


The attached Functional Capacities Evaluation Summary Report has been critiqued by clinical staff at Isernhagen Work Systems (IWS). All areas of the report have been completed and meet the quality assurance criteria set by IWS.

Signature _____, PT


**\*NOTE:** PLEASE COMPLETE TOP PORTION OF THIS FORM AND SEND TO APPROPRIATE REFERRER WITH YOUR <u>FINAL VERSION</u> FCE REPORT. THANK YOU.


*IF 'JO Province QA/IWS critiqued memo.doc*

ML00081

Received 04/03/2006

# CLIENT'S CURRENT
# PHYSICAL DEMAND LEVEL CAPABILITIES

Claimant Name:     Gail Kernaghan

Claimant Claim Number:     899501171006

    __X__ Client gave maximum effort.

    _____ Client did not give maximum effort (client self-limited), therefore, a physical demand level cannot be determined. Refer to the FCE Grid for effort client was willing to give.

## FCE PROVIDER:

If your client has performed to maximum effort level on the FCE, please fill out this form. Select the best statement indicative of the employee's performance.

This form is intended to reflect the client's PDL abilities and restrictions, NOT recommendations or accommodations.

If you check (✓) choice #1 or #2, please note that you can also (✓) #3. Indicate the level the client could perform in if a specific restriction were observed and document that restriction.

1) _____ UNABLE TO MEET SEDENTARY REQUIREMENTS OF THE DOT

2) __X__ Employee is completely able to perform at this physical demand level for 8 hours a day, for a 5-day work week: (circle highest level of capability)

(SEDENTARY)     LIGHT     MEDIUM     HEAVY

3) _____ Employee can perform work in the below circled physical demand level for 8 hours per day, for a 5-day work week if the specific functional restrictions listed are observed: (circle highest level of capability)

SEDENTARY     LIGHT     MEDIUM     HEAVY

**Specific Restrictions:**

Alternate frequent (33-66% of day) sitting with stand and walk.

A38

ML00082

# CLIENT HISTORY FORM

## HISTORY

CLIENT NAME: Gail Kernaghan

ADDRESS: 363 Valley Mist Drive, Clayton, DE  19938

PHONE NUMBER: 302-659-1293

DATES OF FCE (month/day/year): 04/26/04 and 04/27/04

DATE OF BIRTH: 08/15/52

REFERRAL SOURCE: MetLife Disability

PHYSICIAN: Dr. Ugadhyay

EMPLOYER: N/A

ATTORNEY: N/A

REHABILITATION CONSULTANT:  Case Manager-- Kathryn Snell

INSURANCE: MetLife Disability

PRIMARY DIAGNOSIS: Chronic low back pain, right shoulder pain, Lumbar Facet Syndrome

SECONDARY DIAGNOSIS:  N/A

TYPE OF INJURY: Sledding accident

DATE OF INJURY: 11/22/94

PERTINENT SURGERY: N/A

i

Kernaghan,Client history,04/26/04

ML00083

# WORK STATUS

TIME OFF WORK (months): 10 years

MODIFICATION OF WORK: The client tried to work part time several years ago but states that she was unable to on a consistent basis due to pain. The client also states that she has also tried to work from at home but was still unable to meet the dead lines required due to pain.

OCCUPATION: Program manager

PREVIOUS TREATMENT: Physical therapy, injections, pool exercise class

CURRENT MEDICATIONS: Insulin Norolog and Lantog, Neurontin, Zanaflex, Prozac, Zonagran, Lidocaine Patches

IS THIS CLIENT IN THE RETURN TO WORK PROCESS WHEN REFERRED FOR FCE?

|   |   |   |
|---|---|---|
| _____ | 1. | Yes, there is a target job identified and it is currently available. |
| _____ | 2. | Yes, there is a target job identified and it is not currently available. |
| _____ | 3. | Yes, but there is no targeted job. |
| _____ | 4. | Yes, this referral will serve as an entry point to a treatment program. |
| _X__ | 5. | No, the client was referred for settlement/disability or medical-legal reasons. |
| _____ | 6. | No, other. |

# PATIENT REPORT

FUNCTIONAL LEVEL: The client is independent in activities of daily living. She can do dishes and laundry. She can not vacuum or other heavier cleaning activities or yard work. Her daughter and son in-law help her with house and yard work.

PAIN LEVEL: The client states that on most days her pain is between a 4 and a 7 on the pain scale. Increased activity causes her pain to go higher on the pain scale which is only relieved by pain medication and bed rest.

GOALS: The client states that she does not have goals any more. She states that she had goals for the first five years after the accident but not any more.

Copyright 1989, Isernhagen Work Systems, Duluth, MN

ii

Kernaghan, Client history, 04/26/04

ML00084

# PHYSICAL EXAMINATION FORM

**NAME:** Gail Kernaghan

**BLOOD PRESSURE:** 118/68

**RESTING HEART RATE:** 80

**WEIGHT:** 200 pounds

**HEIGHT:** 5'5"

**GAIT:**

1. Normal gait
2.
3.

**POSTURE:**

1. Good posture
2.
3.

**COORDINATION:**

Within Normal Limits: X

Other (explain):

**MOVEMENT CHARACTERISTICS (speed, smoothness, posturing):**

Within Normal Limits: X

Other (explain):

Kernaghan.PHYSEXAM.04/26/04

ML00085

| | | RANGE OF MOTION | | MUSCLE STRENGTH | |
|---|---|---|---|---|---|
| **NECK:** | Normal | Right | Left | Right | Left |
| Flexion | 45 | WNL | | 5/5 | |
| Extension | 45 | WNL | | 5/5 | |
| Lateral flexion | 45 | 40 | 40 | 5/5 | 5/5 |
| Rotation | 90 | 50 | 60 | 5/5 | 5/5 |

Day two: Lateral flex: 35/35, Rotation: 45/60

| | | RANGE OF MOTION | | MUSCLE STRENGTH | |
|---|---|---|---|---|---|
| **TRUNK:** | Normal | Right | Left | Right | Left |
| Flexion | 80 | 70 | | 5/5 | |
| Extension | 30 | WNL | | 5/5 | |
| Lateral Flexion | 35 | WNL | WNL | 5/5 | 5/5 |
| Rotation | 45 | WNL | WNL | 5/5 | 5/5 |

Day two: Flex: 80, Lat. Flex. 30/30

| | | RANGE OF MOTION | | MUSCLE STRENGTH | |
|---|---|---|---|---|---|
| **SHOULDER:** | Normal | Right | Left | Right | Left |
| Forward Flexion | 180 | 170 | WNL | 4+/5 | 4+/5 |
| Extension | 60 | 30 | WNL | 4+/5 | 4+/5 |
| Abduction | 180 | 170 | WNL | 4+/5 | 4+/5 |
| Internal rotation | 70 | 20 | WNL | 4-/5 | 4+/5 |
| External rotation | 90 | 80 | WNL | 4-/5 | 4+/5 |

Day two: Flex and abd: 165, Ext. 30, Int.rot. 15, Ext. rot. 70

| | | RANGE OF MOTION | | MUSCLE STRENGTH | |
|---|---|---|---|---|---|
| **ELBOW:** | Normal | Right | Left | Right | Left |
| Flexion | 150 | WNL | WNL | 4/5 | 5/5 |
| Extension | 0 | WNL | WNL | 4-/5 | 5/5 |

| | | RANGE OF MOTION | | MUSCLE STRENGTH | |
|---|---|---|---|---|---|
| **FOREARM:** | Normal | Right | Left | Right | Left |
| Pronation | 80 | WNL | WNL | 4/5 | 5/5 |
| Supination | 80 | WNL | WNL | 4/5 | 5/5 |

2

Kernaghan.PHYSFXAM.04/26/04

ML00086

| WRIST: | Normal | RANGE OF MOTION | | MUSCLE STRENGTH | |
|---|---|---|---|---|---|
| | Normal | Right | Left | Right | Left |
| Flexion | 80 | WNL | WNL | 4/5 | 5/5 |
| Extension | 70 | WNL | WNL | 5/5 | 5/5 |
| Ulnar Deviation | 30 | WNL | WNL | 5/5 | 5/5 |
| Radial Deviation | 20 | WNL | WNL | 5/5 | 5/5 |

**GROSS HAND MOTION:** WNL

| WFL: | WFL: | WFL: | WFL: |
|---|---|---|---|
| NOT WFL: | NOT WFL: | NOT WFL: | NOT WFL: |

**COMMENTS:**

| HIP: | Normal | RANGE OF MOTION | | MUSCLE STRENGTH | |
|---|---|---|---|---|---|
| | Normal | Right | Left | Right | Left |
| Flexion (K.ext.) | 90 | 45 | 70 | 3+/5 | 5/5 |
| Flexion (K.flex.) | 120 | WNL | WNL | 5/5 | 5/5 |
| Abduction | 45 | 40 | WNL | 5/5 | 5/5 |
| Adduction | 30 | 10 | WNL | 5/5 | 5/5 |
| Extension | WNL | 30 | 15 | 4/5 | 4/5 |
| Internal rotation | 45 | 10 | 15 | 4-/5 | 4-/5 |
| External rotation | 45 | WNL | WNL | 4-/5 | 4-/5 |

Day two: Pain with 45 degree SLR on right.

| KNEE: | Normal | RANGE OF MOTION | | MUSCLE STRENGTH | |
|---|---|---|---|---|---|
| | Normal | Right | Left | Right | Left |
| Flexion | 135 | WNL | WNL | 4-/5 | 5/5 |
| Extension | 0 | WNL | WNL | 4-/5 | 5/5 |

| | RANGE OF MOTION | MUSCLE STRENGTH |
|---|---|---|

3                    Kernaghan.PHYSEXAM.04/26/04

ML00087

| ANKLE: | Normal | Right | Left | Right | Left |
|---|---|---|---|---|---|
| Plantar Flexion | 50 | 50 | 50 | 5/5 | 5/5 |
| Dorsiflexion | 20 | 10 | 10 | 5/5 | 5/5 |
| Inversion | 35 | WNL | WNL | 5/5 | 5/5 |
| Eversion | 15 | WNL | WNL | 6/6 | 5/5 |

TOE RISES (10) - ___10___ Reps Right ___10___ Reps Left

KNEE SQUATS (5) - ___5___ Reps

**COMMENTS:**

*** **Reference:** _American Academy of Orthopedic Surgeons_

**WNL = within normal limits**
**WFL = within functional limits**

**ATROPHY/EDEMA:**

No deficiency noted: X

Deficiency noted:

| GIRTH MEASUREMENTS | | |
|---|---|---|
| Body Part | Involved | Uninvolved |
| | | |
| | | |

**MUSCLE TONE/SPASMS:** WNL

**NEUROLOGICAL TESTING:** WNL

**Sensory Testing:**

No obvious reports or problems:

4

Kernaghan,PHYSEXAM,04/26/04

A44

ML00088

Other (explain): Client reports decreased light touch in medial arch of right foot.

**Reflex Testing:**

No obvious problems: X

Knee Jerk: 2 and equal bilaterally

Ankle Jerk: 2 and equal bilaterally

Upper extremities: 2 and equal bilaterally

**Balance:**

| Right foot (10 seconds): 10 seconds | Left foot (10 seconds): 10 seconds |
|---|---|
| No obvious problems: X | No obvious problems: X |
| Other (explain): | Other (explain): |

**Other Special Tests:**

---

### FIRST DAY SUMMARY OF PHYSICAL ASSESSMENT:

1. Some limitations in ROM in right extremities.
2. Some decreased muscle strength in right extremities.
3. Pain a level 5 before FCE on day one.
4.
5.

---

### PHYSICAL ASSESSMENT CHANGES NOTED ON SECOND DAY:

*Items tested or repeated:*

1. Minimal changes in ROM of right extremities.
2. Pain a level 8 before FCE on day two.
3.

5

Kernaghan.PHYSEXAM.04/26/04

ML00089

# FUNCTIONAL CAPACITY EVALUATION SUMMARY REPORT

### Brown & Associates PT
### 1404-B Forrest Ave.
### Dover, DE 19904
### 302-741-0200

Following is a summary of the complete Functional Capacity Evaluation and functional test results. Client history, physical examination results, and comprehensive functional capacity form are available in client's chart.

| |
|---|
| **NAME:** Gail Kernaghan |
| **ADDRESS:** 363 Valley Mist Drive, Clayton, DE  19938 |
| **TEST DATES:** 04/26/04 and 04/27/04 |
| **DATE OF BIRTH:** 09/15/52 |
| **PHYSICIAN:** Dr. Upadhyay |
| **REFERRAL SOURCE:** MetLife Disability |
| **DIAGNOSIS:** Chronic Low Back Pain, right Shoulder Pain, Lumbar Facet Syndrome. |

**DESCRIPTION OF TEST DONE:** Gail Kernaghan participated in a standardized IWS Functional Capacity Evaluation. The results of this FCE have been quantified through a 13-point consistency checklist.

| X | The client gave maximum, consistent effort |
|---|---|
|   | The client did not give maximum consistent effort in tests |

## THERAPIST OBSERVATIONS

**COOPERATION:** Gail Kernaghan was cooperative during all aspects of the test and was willing to work to her maximal ability for all test items.

**CONSISTENCY OF PERFORMANCE:**
- Gail demonstrated consistency of performance among FCE items and between day one and day two.
- The client's functional limitations are consistent with the physical findings of the musculoskeletal exam.
- The client's perceived abilities were consistent with those objectively evaluated in the FCE.

**PAIN BEHAVIOR:** Pain behaviors included shifting of weight during prolonged sitting and standing. This was consistent with the time sitting in the interview section of the FCE. The client reported a perceived pain level of 5 on the pain scale on day one, which increased to a level of 7 by the end of the tasks. The client reported a perceived pain level of 6 on day two. The client completed all test items regardless of reported pain.

**SAFETY:** The client demonstrated safe performance, including body mechanics, although she occasionally needed verbal cueing. The client also demonstrated appropriate pacing and now has a good general awareness of safe techniques for most activities.

**QUALITY OF MOVEMENT:** The client demonstrated smooth and coordinated movement throughout the test items.

**SIGNIFICANT ABILITIES:** Gail demonstrates:
- Excellent abilities in elevated work, rotational activities, crawling, kneeling and crouching.
- Good abilities in forward bending, repetitive squat and sitting tolerance.
- Excellent abilities in standing tolerance, and ambulation activities.

**SIGNIFICANT DEFICITS:** Gail demonstrates:
- Well below average grip strength.
- Slightly below average hand coordination.

**JOB DESCRIPTION EXPLORED:** N/A

ML00091

## RECOMMENDATIONS:

1. These work projections are for 8 hours per day. 40 hours per week at the levels indicated on the FCE form.
2. The client meets the U.S. Department of Labor Physical Demand Levels of Sedentary.
3. The client's sitting tolerance over an 8 hour day is "frequently" ( 33- 66% of day ) and would need to be alternated with walk and stand.

| Signature: | *Dorothy M. Brown PT* |
| Title: | *Physical Therapist* |

# Brown & Associates Physical Therapy

FCE FORM

404-B Forrest Avenue
Dover, DE 19904
302-741-0200
FAX 741-0245

FREQUENCY/DURATION DEFINITION
Constant – 67-100%; greater that 200 reps/day
Frequent – 34-66% of day; 33-200 reps/day
Occasional – 6-33% of day; 6-32 reps/day
Rare – 1-5% of day; 1-5 reps/day

**CLIENT NAME:** Gail Kernaghan

**DATE:** 04/26/04 and 04/27/04

## "THESE SCORES ASSUME THAT THE WORKPLACE IS ERGONOMICALLY CORRECT AND SAFE"

| Item | Percent of 8 Hour Workday | | | | | Restrictions | Recommendations |
|---|---|---|---|---|---|---|---|
| | 0 | 1-5 | 6-33 | 34-66 | 67-100 | | |
| **WEIGHT CAPACITY IN LBS.** | | | | | | | |
| Floor to waist lift | | 15 | 12.5 | 7.5 | 5 | General right extremity weakness is noted. | |
| Waist to overhead lift | | 12.5 | 10 | 7.5 | 5 | | |
| Horizontal lift | | 20 | 15 | 10 | 5 | | |
| Push (Static) | | 26 | 20 | 13 | 6.5 | | |
| Pull (Static) | | 38 | 29 | 19 | 10 | | |
| Right carry | | 15 | 10 | 5 | 0 | | |
| Left carry | | 20 | 15 | 10 | 5 | Losing grip above 15#. | |
| Front carry | | 20 | 15 | 10 | 5 | | |
| Right hand grip (Static) | | 19 | 14 | 10 | 5 | Significantly below average of 65.8 ft.lbs | Optimal grip circumference is 5 inches. |
| Left hand grip (Static) | | 35 | 26 | 18 | 9 | Significantly below average of 57.3 ft.lbs | Optimal grip circumference is 5 inches. |
| **FLEXIBILITY/POSITIONAL** | | | | | | | |
| Elevated work | | | | | x | | |
| Forward bending/sitting | | | | x | | Client reports increased pain. | |
| Forward bending/standing | | | | x | | Client reports increased pain. | |

ML00093

TOTAL P.19

| Item | Percent of 8 Hour Workday | | | | | Restrictions | Recommendations |
|---|---|---|---|---|---|---|---|
| | 0 | 1-5 | 6-33 | 34-66 | 67-100 | | |
| Rotation sitting | | | | | x | | |
| Rotation standing | | | | | x | | |
| Crawl | | | | | x | | |
| Kneel | | | | | x | | |
| Crouch - deep static | | | | | x | | |
| Repetitive Squat | | | | x | | Client reports increased pain. | |
| STATIC WORK | | | | | | | |
| Sitting tolerance | | | | x | | Client reports increased pain. | |
| Standing tolerance | | | | | x | | |
| AMBULATION | | | | | | | |
| Walking | | | | | x | | |
| Stair climbing | | | | | x | | |
| Step ladder climbing | | | | | x | | |
| Balance | | | | | x | | |
| COORDINATION | | | | | | | |
| Right upper extremity | | | | | x | Slightly below average. | |
| Left upper extremity | | | | | x | Slightly below average. | |

Evaluator: _Dorothy M. Brown PT_     Date: _4/27/04_

A50

ML00094

040351030786



**Crawford**®

Healthcare Management
Vicki C. Bussmann
Branch Manager

February 11, 2004

Deanna Denmead
Met Life Disability
P.O. Box 14592
Lexington, KY 40511

| Re: | Referred Person | : | Gail Kernaghan |
|-----|-----------------|---|----------------|
| | Employer | : | IBM |
| | Job Title | : | Software Project Office Program Manager |
| | Met Life Claim No. | : | 699501171006 |
| | SSN | : | 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 |
| | Age | : | 8/15/52, 51 Years |
| | DOD | : | 11/22/94 |
| | D/Referral | : | 1/29/04 |
| | Diagnosis | : | Chronic low back pain, right shoulder pain, lumbar facet syndrome |
| | Claimant's Salary | : | $55,000.00 |
| | Vendor Tax I.D. | : | 58-0506554 |
| | Our File No. | : | 306-13967 |

## HOME VISIT/MEDICAL ASSESSMENT

### INTRODUCTION

Crawford Healthcare Management Services has been requested by Deanna Denmead to perform a home visit/medical assessment on the above-captioned claim.

At the request of Deanna Denmead, I did not contact the claimant initially, as I was requested to hold off on claimant contact until I had received word that the claimant had been notified of my involvement. Once I received word that the claimant had been contacted, I then proceeded to contact the claimant and scheduled an appointment to meet with her in her home on Tuesday, 2/10/04. There were no problems with the scheduling of this appointment.

The claimant was friendly and cooperative and demonstrated an understanding of the interview purpose. Although her sister and brother-in-law were visiting during my visit, they were not present during the interview.

The claimant was dressed casually in pants and a top and comfortable shoes. I observed that at times, she required change of position and ambulated slowly, appearing to have some low back discomfort on ambulation. Mrs. Kernaghan states that she has difficulties performing some

600 Reed Road ♦ Broomall PA 19008 ♦ PH: 610-359-1860 ♦ FX: 610-359-1491

ML00097

0403·1030786

RE: Gail Kernaghan
2/11/2004
Page 2 of 5

activities of daily living secondary to low back pain and decreased shoulder range of motion.

Travel time to the claimant's home was 1-1/2 hours each way. I requested and obtained approval from Deanna Denmead for the additional travel expenses required to perform this assessment.

Mrs. Kernaghan is a 51-year old left-hand dominant female who was employed by IBM as a software project office program manager. She reports this position as being responsible for coordinating all aspects of release of a large software product, operating the system, negotiating with various departments for certain deliverables and completing performance and educational plans.

On 11/22/94, the claimant had an accident while sledding with her daughter, which caused her to land on her back. She was taken via truck to the emergency room of Kingston Hospital in Kingston, NY. She stated that an x-ray revealed a burst L3 fracture. She was then referred to an orthopedic specialist, Alan Carl, in Albany, NY. She was taken via ambulance to Albany Medical Center, where she spent one week in the intensive care unit for a spinal injury, and then another two weeks on the med-surg floor, for a total of three weeks in the hospital. She reported that she was in a body brace for a period of six months. Claimant reports the she wore the body brace off and on for an additional two years because it helped to reduce the low back pain. She stated that she stopped wearing it secondary to weight gain, and that it no longer fit.

After approximately three months, formal physical therapy was initiated; however she reports that it was not helpful and that she has been left with intractable pain.

She has been treated by Dr. Upadhyoy, a pain management specialist, for the last couple of years. She states that Dr. Upadhyoy has provided work capacities for her, but she is concerned that she cannot perform within these capacities on a consistent basis.

## CURRENT MEDICAL TREATMENT

Mrs. Kernaghan's current disabling condition is constant low back pain, which she says radiates into her right hip if she over-exerts herself. She says that she experiences the right hip radicular discomfort approximately 3-4 times per month, and that it is a burning-type of pain. She stated that this discomfort is relieved by bedrest and medication.

She states that she is able to lift about 5-10 lbs. She bases this on the fact that she is able to bring home a few grocery bags from the store without difficulty. She reports being able to walk for approximately two hours with rest. She states that she can sit and stand for approximately 30 minutes at a time. Mrs. Kernaghan reports difficulty with decreased range of motion in her right shoulder and low back pain.

Mrs. Kernaghan described herself as very active prior to the injury. She stated that she actively ran and exercised. She reported that she has gained 80 lbs. since this injury. She states that although she is independent with all activities of daily living, she requires assistance with housework, which she states that her husband does. She reports that she is able to dust and make the beds; however, cannot push-pull secondary to her right shoulder complaints. She stated that

ML00098

0403:1030786

RE: Gail Kernaghan
2/11/2004
Page 3 of 5

reaching for windows causing an increase in back pain. She states that she is able to shower, but cannot bathe because she is unable to get in and out of the tub. She states that she is able to drive short distances and can perform grocery shopping if she shops only for a small amount of groceries at a time. She states that it is difficult to get them from the car into her home because of the amount of lifting and bending required.

Mrs. Kernaghan is currently taking Vicodin ES three times per day for pain. In addition to the medications, the claimant's current treatment is water walking at the YMCA two times per week. She also takes a muscle relaxant, Zanaflex, once in the evening, and Neurontin, 300 mg. at bedtime, which is a neuropathic pain reliever. She reports that attempts are being made to increase the Neurontin; however, an increase has caused her to experience hallucinations. She says that these hallucinations are all Disney characters. She is taking insulin for a history of adult onset diabetes. She is also using Lidoderm patches to her low back as needed for relief of discomfort. She stated that she is also on Prozac, an anti-depressant. The claimant notes some cognitive dysfunction secondary to the narcotic pain medication such as forgetting to shut off the stove and an inability to drive more than short distances while taking narcotics.

Per Mrs. Kernaghan, her prognosis for recovery is poor. The claimant's perception is that she is totally disabled because she never knows when her pain will increase and how long it will last. She stated that when she has pain, it may last for 2-3 days, and she requires bedrest. I have no available medical disability reports to confirm this information by a physician.

The claimant's current physicians include Asit P. Upadhyay, D.O., Delaware Back Pain and Sports Rehabilitation, 830 Russell Road, Suite 111, Dover, DE 19901, tel. 302-389-2225. The claimant stated that she sees him approximately three months for medication management. She is also under the care of endocrinologist Ripo Hundal, M.D., Christiana Care Diabetes Center. She reports that she sees him every three months for control of her diabetes. The claimant reports that her family doctor is David Reyes, 29 Goodin Avenue, Dover, DE, tel. 302-735-7780. She states that she sees him as needed.

The claimant is 5'5" tall and weighs 204 lbs.

## DAILY ACTIVITIES/PHYSICAL THERAPIES

Mrs. Kernaghan reports that she gets up at approximately 9 A.M. She states that it takes her approximately one hour to get moving, and this requires a hot shower. She stated that she then eats breakfast, which consists of bacon or sausage and tea, talks on the phone, reads and watches TV. She has lunch between 1-2 P.M. which consists of half a sandwich. She states that she does make dinner. She report that after dinner she reads or watches TV. Mrs. Kernaghan states that she enjoys reading. She goes to sleep at 11 P.M.

The claimant resides in a two-year old three-bedroom ranch-style home in a rural area of Delaware. There is an apartment built onto the house which the claimant stated was built for her daughter, now 22 years old. The daughter has since married and lives nearby, but is supportive in the care of her mother. The claimant is currently in the process of going through a divorce and reports that her husband of 18 years is now living in the apartment. The claimant reports that her

ML00099

0403:1030786

RE: Gail Kernaghan
2/11/2004
Page 4 of 5

husband helps with the bills, and her income sources include a $35,000.00 per year disability benefit. The house was well-kept, neat, clean and uncluttered. There is a barn in the back and an old donkey who resides near the bar. The claimant stated that the donkey is her husband's, and that he cares for this animal. The claimant reports that both the husband and her neighbors help with the lawn work.

She states that she does laundry using small loads to decrease the amount of weight she has to lift and transfer from the washer to the dryer. Her laundry area is located on the ground floor, and both the washer and dryer are top loading.

She reports that she is able to drive to doctors' appointments, to the grocery store and short distances of less than 30 minutes. She reports having difficulty sitting for more than one hour. I observed her to require frequent change of positions during sitting. Mrs. Kernaghan has a decreased range of motion in her right shoulder. She states that she has the most difficulty with reaching behind activities, such as hooking and unhooking her bra.

When ambulating, Mrs. Kernaghan's gait was slow, and she appeared to have some difficulty with ambulation upon initially arising from the chair. She reported that this was due to low back discomfort. The claimant stated that she does not use any assistive devices.

Mrs. Kernaghan lives in a one-story, three bedroom home, and does not appear to have any difficulty accessing any portion of her home. She stated that her and her husband moved two years ago because she was having difficulty climbing stairs from her low back discomfort, and therefore needed a one-story home with laundry facilities on the main floor. The claimant also reported that she bought a top load washer and dryer to avoid bending.

## WORK HISTORY

Mrs. Kernaghan worked at IBM in many positions for 10 years. Her last job was that of a software project office program manager. She reported that her job was a sedentary position, specifically office work and computer. She reported that in her job, she was responsible for the coordination of all aspects of release of a large software product. She stated that she was required to operate the system and negotiate with various departments for certain deliverables. She reported that she was also responsible for performance and educational plans. She stated that she was a manager responsible for 22 employees of IBM and for 43 software vendors.

The claimant received a Bachelor's Degree in Biology and Chemistry at Bowling Green College in Ohio in 1974. She stated that she received a Masters Degree in Computer Science at Cleveland State University in 1986.

She reports that prior to her position at IBM, she was a hospital lab technician in Lorraine, Ohio.

## MOTIVATION/POTENTIAL FOR RETURN TO WORK

Mrs. Kernaghan stated that she has no plans to return to work in the immediate future due to her current physical limitations. She states that she had attempted to return to work part time with

ML00100

RE: Gail Kernaghan
2/11/2004
Page 5 of 5

IBM several years ago. She stated that an ergonomic work station was provided, and that she was able to tolerate working four hours per day, but unable to work consistently.

Specifically, she stated she would work for approximately one week to 10 days, then would have a setback which required her to be in bed for several days. She stated that over a two-year period she attempted to increase her work capacities but was unable to do so. She reports that she was taken out of work for a permanent disability in 1995.

Based on the capacities provided by pain management specialist Dr. Upadhyay, the claimant would be able to perform work in a sedentary capacity. However, I discussed these capacities with the claimant and she stated that although she agrees with them, she does not feel that she could perform consistently over an extended period of time because this would put her "back into bed."

Mrs. Kernaghan stated that although mentally she would like to work, she has no desire to seek employment because physically she considers herself to be totally disabled. She is currently in the process of going through a divorce with her husband. She stated that her husband no longer wants to "live with an invalid." I asked her if she will be able to afford to keep the home on her own. She said that she has plans to rent out the apartment attached and the barn. She is hoping that with this added income and the $35,000.00 she receives from the disability carrier, that she will be able to make ends meet.

## IMPRESSIONS

During our initial interview, Mrs. Kernaghan was able to sit for approximately 30 minutes at a time before requiring a change of position. Her gait was slow. Although she agreed with the physical capacities provided by Dr. Upadhyay D/S 11/20/03, she stated that she does not feel that she can perform consistently in these capacities due to her pain.

The potential to return to work is impacted by the claimant's perception of her pain. In order to address the claimant's return to work potential, you may want to consider a functional capacity evaluation. This will confirm and clarify the claimant's functional capabilities. You also might want to consider having a vocational consultant complete a transferable skills analysis to determine what positions can be explored in a labor market survey. The claimant has a computer in her home, and states that she is computer literate. It is my opinion that she would not need to update her skills to find employment. Also, since the claimant is computer literate, you may want to explore options to gainfully employ the claimant from her home. This way, she could take breaks as needed.

CRAWFORD AND COMPANY

Sherry Palish, R.N., C.C.M.
Medical Services Consultant

SP:edm

ML00101