IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GAIL KERNAGHAN,                                   :
                                                  :
              Plaintiff,                          :    C.A. No. 05-402 (GMS)
                                                  :
       v.                                         :
                                                  :
METROPOLITAN LIFE INSURANCE                       :
COMPANY, as fiduciary and administrator of The   :
IBM Long-Term Disability Plan,                    :
                                                  :
              Defendant.                          :
                                                  :

## VOLUME V OF V

## APPENDIX TO
## DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**McCarter & English LLP**

Paul A. Bradley (DE ID No. 2156)
Tanya Pino Jefferis (DE ID No. 4298)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware  19899
(302) 984-6300
Attorneys for Defendant
Metropolitan Life Insurance Company

Date:   April 3, 2006

## TABLE OF CONTENTS

**TITLE**                                                                                           **PAGE**

Excerpts of the Administrative Record (ML00001-ML00719) ....................................... A198-A218

i

## CERTIFICATE OF SERVICE

I, Paul A. Bradley, undersigned counsel of record, hereby certify that on April 3, 2006, I caused a copy of the foregoing Appendix to Defendant's Motion for Summary Judgment and Opening Brief in Support of Its Motion for Summary Judgment to be served on the following counsel in the indicated manner:

CM/ECF Filing

Rick S. Miller, Esquire
Ferry, Joseph & Pearce, P.A.
824 North Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899


/s/ Paul A. Bradley
Paul A. Bradley (DE ID. No. 2156)

Claim #:699501171006    Name: GAIL KERNAGHAN

Status: Ended

[UA32] - On 05/26/2004 09:26 - For 699501171006

```
METROPOLITAN LIFE INSURANCE COMPANY

METLIFE  DISABILITY, PO BOX 14590, LEXINGTON KY 40511-4590
PHONE: 800-300-4296    FAX:  1-800-230-9531
FAX
TO: LORRI
DELAWARE BACK PAIN & SPORTS REHABFROM: BLENDA WILSON RN/NC
FAX:  302-730-8846PAGES:    4 ,  INCLUDING THIS COVER PAGE
DATE: 05-26-2004CLAIM #: 699501171006

****ANY FEES  ASSOCIATED WITH THIS DISABILITY CLAIM IS THE
RESPONSIBILITY OF THE CLAIMANT.***
PLEASE FAX RESPONSE BACK TO 800-230-9531 WITH THIS COVER SHEET.
   PLEASE CALL 800-300-4296, EXT: 2395 IF THERE ARE PROBLEMS IN
RECEIVING THIS FAX.

RE:  GAIL KERNAGHAN
PLEASE RESPOND BY:


LORRIE, PLEASE NOTE THE LETTER YOU RECEIVED HAS THE NOTATION:  ANY
FEES ASSOCIATED WITH THIS DISABILITY CLAIM IS THE RESPONSIBILITY OF
THE CLAIMANT.

I WILL NOTIFY MS. KERNAGHAN OF YOUR REQUEST FOR $280 TO SUBMIT THE
REQUESTED RESPONSE TO THE FCE REPORT AND ASK MS. KERNAGHAN TO
CONTACT YOUR OFFICE.

BLENDA WILSON, RN
METLIFE DISABILITY NURSE CONSULTANT
```

UA32] - On 05/26/2004 09:41 - For 699501171006

```
OUTGOING CALL TO EE - 302-659-1293 NC ID'D SELF AND REASON FOR CALL-
INFORM EE OF STATEMENT FROM DELAWARE BACK PAIN & SPORTS REHAB CENTER
REQUESTING FEE FOR AP TO RESPOND TO FCE REPORT.  NC SUGGESTED EE
CALL TO ARRANGE FOR AP RESPONSE, EE STATES SHE HAS APPT ON 6/7, WILL
TRY TO OBTAIN INFO AT THAT TIME.  NC AGREES.    BWILSON RN/NC
```

UA32] - On 05/26/2004 09:42 - For 699501171006

Call-Up For: [U322] - On 06/14/20    Call-Up Complete: [U322] - On 06/14/2004

```
NC F/U FOR AP RESPONSE TO FCE REPORT, EE HAD APPT ON 6/7    BRW
```

M077] - On 05/27/2004 10:26 - For 699501171006

Call-Up For: [M077] - On 06/16/20    Call-Up Complete: [M077] - On 06/21/200

```
REHAB REVIEW - OF FCE REPORT GIVING EE FT SEDENTARY WORK CAPACITY W/
FREQENT CHANGE IN POSITION AS NEEDED.  F/U W/ NC AND CM. DD/VRC
```

ACS1] - On 06/01/2004 11:23 - For 699501171006

```
OGC INDEX DCN 040530007130
```

J859] - On 06/07/2004 09:23 - For 699501171006

all-Up For: [U816] - On 06/07/20    Call-Up Complete: [U816] - On 06/08/2004

```
CRC: INFO UPDATE/ FCE REPORT



AP UPADHYAH WILL COMPLETE A FCE REVIEW AS REQUESTED BY NC BASED ON
EES 06/04 APPOINTMENT

EE STATED THAT AP ADVISED EE THAT DICTATION ON THIS REPORT MAY TAKE
UP TO 3 WEEKS TO COMPLETE
```

ML00699

Claim #:699501171006    Name: GAIL KERNAGHAN

Status: Ended

**[U859] - On 06/07/2004 09:23 - For 699501171006**
Call-Up For: [U816] - On 06/07/20    Call-Up Complete: [U816] - On 06/08/2004

PLEASE CB EE IF NOT RCV'D WITHIN 3 WEEKS

**[U322] - On 06/07/2004 16:19 - For 699501171006**
Call-Up For: [U322] - On 06/08/20    Call-Up Complete: [U322] - On 06/07/2004

NC ACTION PLAN
RECEIVED RESPONSE THAT AP WAS TO REVEIW FCE AT THE 6-4-04 APPT AND
MAY TAKE UP TO 3 WEEKS TO RESPOND. DEADLINE GIVEN FOR RESPONE WAS
6-31-04. WILL DISCUSS WITH CMS. KSNELL RN

**[U322] - On 06/14/2004 09:12 - For 699501171006**
Call-Up For: [U816] - On 06/14/20    Call-Up Complete: [U816] - On 06/14/2004

NC/CMS DISCUSSION
DISCUSS STATUS OF CLAIM WITH CMS. BASED ON EE HAVING F/U APPT ON
6-7-04 WHEN AP WAS TO DISCUSS THE FCE REPORT WILL ALLOW 2 WEEKS FOR
AP TO RESPOND TO THE FCE REPORT. IF NO RESPONSE RECEIVED WILL
DISCUSS DIRECTION OF CLAIM KSNELL RN

**[U322] - On 06/14/2004 09:14 - For 699501171006**
Call-Up For: [U322] - On 06/21/20    Call-Up Complete: [U322] - On 06/29/2004

NC ACTION PLAN
WILL REVIEW AP'S RESPONSE IF HE RESPONDS TO THE FCE REPORT WHICH HE
WAS TO DISCUSS WITH EE ON 6-7-04 APPT. IF NO RESPONSE RECEIVED WILL
DISCUSS WITH CMS. KSNELL RN

**[MO77] - On 06/21/2004 12:37 - For 699501171006**
Call-Up For: [MO77] - On 07/08/20    Call-Up Complete: [MO77] - On 07/09/2004

REHAB UPDATE - WAITING FOR AP RESPONSE AND NC/CM CONSULT.    DD/VRC

**[U322] - On 06/29/2004 17:32 - For 699501171006**
Call-Up For: [U816] - On 06/29/20    Call-Up Complete: [U816] - On 07/08/2004

NC CALL TO DRS OFFICE
CALLED OFFICE TO F/U ON AP'S RESPONSE TO FCE THAT HE WAS TO REVIEW
AT THE 6-7-04 OV. NO RESPONSE YET. WAS TOLD IT MAY TAKE 3 WEEKS FOR
RESPONSE. REACHED THE ANSWERING SERVICE AND LEFT MESSAGE FOR A
RETURN CALL REGARDING THE FCE REPORT. WILL F/U FOR AP'S RESPONSE.
KSNELL RN

**[U322] - On 06/29/2004 17:33 - For 699501171006**
Call-Up For: [U322] - On 06/30/20    Call-Up Complete: [U322] - On 06/30/2004

NC ACTION PLAN
CALL AP OFFICE REGARIDNG HIS RESPONSE TO THE FCE REPORT. DISCUSS
WITH CMS. KSNELL RN

**[U322] - On 06/30/2004 10:22 - For 699501171006**
Call-Up For: [U816] - On 06/30/20    Call-Up Complete: [U816] - On 07/08/2004

NC DECISION SUMMARY
EE IS A 51 YR OLD FEMALE, WIHT A DX OF NEUROPATHY,RADAICULOPATHY. BB
IS 2,983.48. NO SS AWARD. FCE THAT WAS COMPLETED ON  4-19-04 STATES
EE GIVE MAXIMUM EFFORT TO PERFORM EVALUATION AND STATED EE IS ABLE
TO PERFORM MAXIUM JD AT A SEDENTARY LEVEL FOR AN 8 YR DAY 5 DAYS A
WEEK WITH SPECIFIC RESTRICTIONS TO ALTERNATE FREQUENT (33-67% OF THE
DAY) SITTING, STANDING AND WALKING. FCE REPORT WAS SENT TO AP FOR
EE'S APPT ON 6-7-04 FOR HIS REVIEW AND RESPONSE. ALLOWED 3 WEEKS FOR
A RESPONSE BUT HAVE NOT RECIEVED ANY RESPONSE FROM THE AP. AT THIS
TIME DO NOT KNOW SEVERITY OF EE'S FUNCTIONAL IMPAIRMENT AT THIS TIME
AND WOULD NOT SUPPORT EE FUNCTIONAL LIMITATION AT THIS TIME.
RECOMMEND CMS TO DISCUSS WITH VRC REGARDING JD AT THIS TIME WITHIN
R/L AND FCE. ANY QUESTIONS DISCUSS WITH NC. KSNELL RN

**[U322] - On 06/30/2004 10:24 - For 699501171006**
Call-Up For: [U322] - On 07/09/20    Call-Up Complete: [U322] - On 07/19/2004

NC ACTION PLAN
F/U STATUS OF CLAIM WITH CMS. KSNELL RN

ML00700

Claim #:699501171006    Name: GAIL KERNAGHAN

Status: Ended

[U816] - On 07/08/2004 17:14 - For 699501171006
Call-Up For: [U816] - On 08/30/20    Call-Up Complete: [U816] - On 09/08/2004

> FOLLOW UP FOR EA REPORT, DISCUSS WITH NC AND VRC ONCE RECD

[M077] - On 07/09/2004 10:12 - For 699501171006
Call-Up For: [M077] - On 07/13/20    Call-Up Complete: [M077] - On 07/23/2004

> REHAB CONSULT - WALK-UP W/ CM;  VRC WILL DO EA.  DD/VRC

[U322] - On 07/19/2004 17:01 - For 699501171006
Call-Up For: [U816] - On 07/21/20    Call-Up Complete: [U816] - On 07/22/2004

> WALK-UP NC/VRC
> VRC DISCUSSED PRIOR EA REVIEWS DONE AS WELL AS PAST MEDICAL INFOR
> AND RECENT FCE THAT WAS DONE. WE AGREE THAT EE IS ABLE TO DO
> SEDENTARY WORK AND LIGHT DUTY WITH MINIMAL LIFTING. VRC WILL CONFIRM
> LABOR MARKET INFORMATION. KSNEL RN/DDENMEAD

[U322] - On 07/19/2004 17:03 - For 699501171006
Call-Up For: [U322] - On 07/26/20    Call-Up Complete: [U322] - On 08/03/2004

> ACTION PLAN
> F/U FOR CLAIM STATUS KSNELL RN

[M077] - On 07/23/2004 17:02 - For 699501171006

> REHAB PLAN - SEE EA SUMMARY 5/28/03 FOR DETAILS.  SINCE THAT REVIEW
> HOME VISIT WAS DONE BY RN AND FCE WAS COMPLETED GIVING EE FT SED
> WORK CAPACITY.  PRIOR HOME VISIT REPORTS, INCLUDING TSA/LMA AND IPC
> REVIEWS ARE REFERRENCED IN THAT REVIEW.  IN SPITE OF EXTENSIVE
> TESTING AND MEDICAL WORK UP NO REASON FOR HER PAIN HAS EVER BEEN
> ESTABLISHED. VRC WILL REVIEW TSA/EA TO DETERMINE IF IT IS STILL
> ACCURATE, BASED ON EE'S CURRENT FC, THEN ASSIGN A VENDOR IN LOCAL
> LABOR MKT.  DD/VRC

[M077] - On 07/23/2004 17:03 - For 699501171006
Call-Up For: [M077] - On 07/26/20    Call-Up Complete: [M077] - On 07/27/2004

> REHAB PLAN - CONTACT JENNIFER WEINBURG WITH CONCENTRA RE LMS. DD/VRC

[M077] - On 07/27/2004 12:59 - For 699501171006
Call-Up For: [M077] - On 08/17/20    Call-Up Complete: [M077] - On 08/24/2004

> REHAB VENDOR REFERRAL - TO JENNIFER WEINSTEIN @ CONCENTRA (610)
> 359-1860 (OFFICE) AND (610) 359-1491 (FAX) FOR CURRENT LMS.  FAXED
> COPY OF FCE REPORT TO HER. DISCUSSED LABOR MARKET INFO FROM 1998 LMS
> FILE REPORT. JOBS IDENTIFIED THEN DID NOT MEET THE WAGE REQUIREMENT,
> THEREFORE CLAIM CONTINUED IN PAYMENT. EE'S OWN JOB AS PROGRAM
> MANAGER REQUIRED SIMILAR SKILLS AS A PROJECT MANAGER NEEDS AND ALSO
> CONTRACT NEGOTIATING SKILLS.  EE HAS VOLUNTEERED AT THE LIBRARY
> HELPING PATRONS W/ THE COMPUTER AND INTERNET, SO APPARENTLY HAS
> CURRENT GENERAL KNOWLEDGE RE COMPUTERS.  POA: WILL F/U W/ VENDOR IN
> 1 WK IF SHE HAS NOT CONTACTED ME W/ PRELIMINARY RESULTS.  DD/VRC

[ACS1] - On 07/29/2004 10:48 - For 699501171006
Call-Up For: [M077] - On 07/29/20    Call-Up Complete: [M077] - On 08/11/2004

> MED/VOC INDEX DCN 040729001128

[U322] - On 08/03/2004 17:02 - For 699501171006
Call-Up For: [U322] - On 08/05/20    Call-Up Complete: [U322] - On 08/12/2004

> NC ACTION PLAN
> LABOR MARKET HAS BEEN RECEIVED. WILL DISCUSS WITH VRC WHEN SHE HAS
> REVIEWED THE REPORT FOR DIRECTION. KSNELL RN

[ACS1] - On 08/09/2004 13:48 - For 699501171006
Call-Up For: [M077] - On 08/09/20    Call-Up Complete: [M077] - On 08/11/2004

> APPEAL MAIL DCN 040809009908

[M077] - On 08/11/2004 15:22 - For 699501171006

> REHAB NOTE - DCN 040809009908 IS NOT APPEAL MAIL.  IT IS LETTER FROM
> VENDOR RE ASSIGNMENT OF LMS.  DD/VRC

ML00701

A200

Claim #:699501171006   Name: GAIL KERNAGHAN

Status: Ended

[M077] - On 08/11/2004 15:22 - For 699501171006

[M077] - On 08/11/2004 15:38 - For 699501171006

> REHAB NOTE - DCN 040729001128 IS SAMPLE LMS REPORT SENT BY VENDOR TO
> ILLUSTRATE TYPICAL FORMATTING OF REPORT.  ** IT IS NOT THE LMS FOR
> THIS CLAIM **  OUR VENDOR GUIDELINES ALLOW 3 WEEK TURN AROUND FOR
> LMS REPORTS, WHICH WOULD BE EARLY NEXT WEEK.  DD/VRC

[U322] - On 08/12/2004 15:49 - For 699501171006
Call-Up For: [U322] - On 08/17/20   Call-Up Complete: [U322] - On 09/02/2004

> NC ACTION PLAN
> F/U WITH VRC FOR STATUS OF HER REVIEW AND RECOMMENDATIONS KSNELL RN

[M077] - On 08/24/2004 16:52 - For 699501171006
Call-Up For: [M077] - On 08/26/20   Call-Up Complete: [M077] - On 08/30/2004

> REHAB CORRESPONDENCE - EMAIL SENT TO VENDOR ASKING ABOUT REPORT THAT
> HAS NOT BEEN RECEIVED AND IS BEYOND OUR GUIDELINE DEADLINES. F/U FOR
> RESPONSE.  DD/VRC

[M077] - On 08/30/2004 09:52 - For 699501171006
Call-Up For: [M077] - On 09/02/20   Call-Up Complete: [M077] - On 09/03/2004

> REHAB VENDOR UPDATE - RESPONSE FROM VENDOR THAT REPORT WAS SENT FOR
> TYPING.  DD/VRC

[ACS1] - On 08/30/2004 10:13 - For 699501171006
Call-Up For: [M077] - On 08/30/20   Call-Up Complete: [M077] - On 09/03/2004

> MED/VOC INDEX DCN 040827F06623

[U322] - On 09/02/2004 09:08 - For 699501171006
Call-Up For: [U322] - On 09/06/20   Call-Up Complete: [U322] - On 09/10/2004

> NC ACTION PLAN F/U VRC REPORT
> DISCUSS WITH VRC WHEN RECEIVED. KSNELL RN

[UB58] - On 09/03/2004 09:27 - For 699501171006

> FORM FROM EE- TSA AND LABOR MARKET SURVEY TRANSFERRED TO VOC/REHAB-
> M077.  KFS

[M077] - On 09/03/2004 12:49 - For 699501171006

> REHAB VENDOR TSA/LMA REPORT SUMMARY -  5 OCCS WERE IDENTIFIED IN
> ANALYSIS DONE TO IDENTIFY SKILL SETS EE COULD USE IN ANOTHER
> OCCUPATION THAT METS SEDENTARY STRENGTH CRITERIA.  A LABOR MARKET
> SURVEY WAS CONDUCTED.  A TOTAL OF 8 EMPLOYERS IN EE'S LOCAL AREA TO
> VERIFY THAT JOBS IDENTIFIED ACTUALLY EXIST IN THE LOCAL ECONOMY. ALL
> HAD POSITIONS THAT HAVE BEEN AVAILABLE IN THE LAST 6 MONTHS OR WERE
> CURRENTLY AVAILABLE.  ALL PAID WAGES/SALARIES THAT MEET EE'S CW OF
> $35,801 ANNUALLY.  ALTHOUGH QUALIFIED, EE WOULD NOT BE CONSIDERED A
> TOP CANDIDATE FOR 5 POSITIONS REQUIRING SOME INDUSTRY SPECIFIC
> EXPERIENCE OR SOFTWARE KNOWLEDGE.  HOWEVER, SHE WOULD BE QUALIFIED
> AND CONSIDERED FOR 3 POSITIONS.  POA: WILL DISCUSS THESE RESULTS W/
> CM TO MAKE CLAIMS DECISION.  DD/VRC

[M077] - On 09/03/2004 12:52 - For 699501171006
Call-Up For: [U816] - On 09/07/20   Call-Up Complete: [U816] - On 09/08/2004

> REHAB NOTE TO CMS - SEE PRIOR VOC TSA/LMS SUMMARY THEN DISCUSS
> RESULTS AND DIRECTION WITH ME.  [SEE FULL REPORT - DCN 040827F06623]
> THANKS.  DD/VRC

[M077] - On 09/03/2004 12:55 - For 699501171006
Call-Up For: [M077] - On 09/07/20   Call-Up Complete: [M077] - On 09/08/2004

> REHAB PLAN - DISCUSS SURVEY W/ CMS.  DD/VRC

ML00702

Claim #:699501171006   Name: GAIL KERNAGHAN

Status: Ended

[M077] - On 09/08/2004 15:57 - For 699501171006

Call-Up For: [U816] - On 09/09/20   Call-Up Complete: [U816] - On 09/24/2004

> WALK-UP VRC AND CM - DISCUSSED LMS REPORT OUTCOME.   CM WILL CONSULT
> W/ UM FOR FILE DIRECTION.   DD/VRC

[M077] - On 09/08/2004 15:58 - For 699501171006

Call-Up For: [M077] - On 09/24/20   Call-Up Complete: [M077] - On 09/27/2004

> REHAB PLAN - F/U FOR CLOSURE BASED ON CLAIMS DECISION.  DD/VRC

[U322] - On 09/10/2004 10:18 - For 699501171006

Call-Up For: [UA95] - On 09/17/20   Call-Up Complete: [U322] - On 09/20/2004

> FOLLOW UP WITH CMS STATUS OF CLAIM. KSNELL RN

[U322] - On 09/20/2004 15:49 - For 699501171006

Call-Up For: [UA95] - On 10/04/20   Call-Up Complete: [UA95] - On 10/08/2004

> FOLLOW UP WITH VRC/CMS
> PER DISCUSSION WITH VRC SHE WILL TALK WITH CMS REGARDING LMS
> COMPLETED, FOR CLAIM DIRECTION. KSNELL RN

[ACS1] - On 09/21/2004 12:31 - For 699501171006

Call-Up For: [M077] - On 09/21/20   Call-Up Complete: [M077] - On 09/27/2004

> MED/VOC INDEX DCN 040920017057

[U816] - On 09/24/2004 16:22 - For 699501171006

Call-Up For: [M077] - On 09/24/20   Call-Up Complete: [M077] - On 09/27/2004

> WALK-UP WITH UM:   REFER TO VRC
>
> CLAIM NOT TO BE TERMINATED AT THIS TIME.   NO REHAB ASSISTANCE
> OFFERED ON ENDED CLAIMS.   IF EE NEEDS RETRAINING OR VOC ASSISTANCE,
> THEN WOULD STILL MEET DEFINITION OF DISABILITY.
>
> UM RECOMMENDS THAT NC AND VRC REVIEW FILE TOGETHER TO DETERMINE
> ACTION PLAN.   IF EE MEETS DEFINITION OF DISABILITY, BUT NEEDS
> RETRAINING OR UPDATE OF SKILLS, THEN UM RECOMMENDS THAT VRC CONTACT
> EE TO DISCUSS TSA/LMS COMPLETED BY VENDOR THAT IDENTIFIED JOBS TAHT
> SHE COULD PERFORM IF SKILLS WERE UPDATED.   REHAB ASSISTANCE SHOULD
> BE OFFERED TO ADDRESS THIS NEED.   IF EE REFUSES REHAB ASSISTANCE,
> REFER TO CMS FOR ER CONTACT.
>
> PLEASE CALL CMS OR UM IF ANY QUESTIONS. / TZ

[M077] - On 09/27/2004 16:29 - For 699501171006

Call-Up For: [U816] - On 09/28/20   Call-Up Complete: [U816] - On 10/04/2004

> REHAB CLOSURE - EE WAS PROVIDED VENDOR ASSISTANCE WHEN TSA WAS DONE
> IN 1998 IDENTIFYING JOBS.   SHE WAS NOT MOTIVATED, SO SERVICES WERE
> STOPPED. ACCORDING TO NURSE HOME VISIT REPORT, EE DOES NOT THINK SHE
> CAN WORK (ALTHOUGH SHE SEEMED MOTIVATED AND BRIEFLY TOOK CLASSES)
> THEREFORE, EE IS NOT A GOOD VOC CANDIDATE.  DD/VRC

[UA95] - On 09/28/2004 15:36 - For 699501171006

> ACTION PLAN: REFER CLAIM TO SSM FOR DIRECTION. NC AND VRC TO MEET TO
> DISCUSS.
> JBOWMAN NC

[U022] - On 10/01/2004 15:58 - For 699501171006

Call-Up For: [U816] - On 10/01/20   Call-Up Complete: [U816] - On 10/15/2004

> UM REFERRAL TO CMS:
> AS DISCUSSED WITH SPECIALTY SERVICES MANAGER, KIM ERMACOR, THE EE
> DOES NOT NEED RETRAINING IN REGARD TO THE POSITIONS IDENTIFIED
> DURING THE LABOR MARKET SURVEY.   THEREFORE, WE CAN TERMINATE
> BENEFITS.   HOWEVER, METLIFE WOULD OFFER THE EE ASSISTANCE AND
> PROVIDE THE EE WITH DIRECTION ON IDENTIFYING POTENTIAL JOBS SINCE
> THE EE HAS BEEN OUT OF WORK SINCE 1994.   THIS IS CONSIDERED LIMITED
> VOC ASSISTANCE.  ANTHONY ACETO

ML00703

Claim #:699501171006    Name: GAIL KERNAGHAN

Status: Ended

[UO22] - On 10/01/2004 15:58 - For 699501171006
Call-Up For: [U816] - On 10/01/20    Call-Up Complete: [U816] - On 10/15/2004

[MO77] - On 10/04/2004 09:33 - For 699501171006
Call-Up For: [MO77] - On 11/23/20    Call-Up Complete: [MO77] - On 11/24/2004
REHAB REVIEW - SEE UM REVIEW OF CLAIM. FOLLOW FOR CLOSURE.  DD/VRC

[UA95] - On 10/08/2004 14:52 - For 699501171006
Call-Up For: [UNC1] - On 10/08/20    Call-Up Complete: [U816] - On 10/19/2004
FOLLOW UP FOR CLAIM STATUS WITH U816
JBOWMAN NC

[UA95] - On 10/08/2004 14:54 - For 699501171006
Call-Up For: [UA95] - On 11/22/20    Call-Up Complete: [UA95] - On 11/24/2004
FOLLOW UP FOR CLAIM CLOSURE
JBOWMAN NC

[U816] - On 10/19/2004 19:12 - For 699501171006

OUTGOING CORRESPONDENCE: TERMINATION LTR SENT TO EE, CC TO GWBS.
FIRM TERM LTR SENT TO IBM/ T ZAMMIELLO

[UZ38] - On 10/25/2004 08:40 - For 699501171006
Call-Up For: [URCQ] - On 10/25/20    Call-Up Complete: [U816] - On 10/25/2004
CRC: CALL BACK REQUEST TO:U816

PLS CALL EE AT 302 659 1293

[U816] - On 10/25/2004 09:38 - For 699501171006

OUTGOING CALL TO EE, RTNING HER CALL:

SHE HAD QUESTIONS REGARDING THE TERMINATION OF HER CLAIM.  SHE
STATES THAT HER CONDITION HAS NOT CHANGED AND SHE FEELS THAT SHE
SHOULD STILL QUALIFY FOR LTD BENEFITS.  DISCUSSED APPEAL PROCESS. /
T ZAMMIELLO

[UA95] - On 10/25/2004 10:09 - For 699501171006

VOICE MAIL RECEIVED FROM EE WISHING TO DISCUSS HER CLAIM DENIAL
JBOWMAN NC

[UA95] - On 10/25/2004 10:15 - For 699501171006

OUTGOING CALL TO EE TO DISCUSS CLAIM. EE WANTED TO KNOW SPECIFICALLY
WHAT THE DENIAL DETERMINATION WAS BASED ON. NC ANSWERED THAT THE
CLAIM INVESTIGATION STARTED WITH THE PCE DATED 11-20-03 BY THE AP
THAT SEEMED TO SUPPORT SED WORK CAPACITY. THE FCE ON 4-19-04
FOLLOWED WHICH SUPPORTED SED WORK CAPACITY. REVIEWED THE APPEAL
PROCESS WITH EE AGAIN AND SHE WILL DO. EE THANKED NC AND TOOK NC'S
EXT # IN CASE SHE HAD MORE QUESTIONS.
JBOWMAN NC

[ACS1] - On 10/25/2004 12:39 - For 699501171006

OGC INDEX DCN 041022032713

[ACS1] - On 10/28/2004 13:31 - For 699501171006
Call-Up For: [U816] - On 10/28/20    Call-Up Complete: [U816] - On 11/01/2004
OTHER INDEX DCN 041028F05644

[U816] - On 11/01/2004 10:02 - For 699501171006
Call-Up For: [U086] - On 11/01/20    Call-Up Complete: [UB50] - On 11/01/2004
PLEASE PRINT ENTIRE FILE FROM ACS- EE HAS REQUESTED COPY OF FILE

ML00704

Claim #:699501171006    Name: GAIL KERNAGHAN                     Jul 05, 2005

Status: Ended                                                   Page 46 of 49

[U816] - On 11/01/2004 10:03 - For 699501171006
Call-Up For: [U816] - On 11/03/20    Call-Up Complete: [U816] - On 11/05/2004

> FOLLOW UP FOR PRINTED ACS DOCS, HAVE PAPER FILE COPIED AND SEND
> ENTIRE FILE TO EE PER HER REQUEST/ T ZAMMIELLO

[U816] - On 11/05/2004 08:32 - For 699501171006
Call-Up For: [U816] - On 11/08/20    Call-Up Complete: [U816] - On 11/08/2004

> FOLLOW UP FOR COPY OF PAPER FILE- SEND COPY OF ALL DOCS TO EE (PAPER
> FILE SENT TO CLERICAL FOR COPYING 11/5/04)

[U816] - On 11/08/2004 16:58 - For 699501171006

> OUTGOING CORRESPONDENCE: COPY OF FILE SENT TO EE PER HER REQUEST/ T
> ZAMMIELLO

[U816] - On 11/11/2004 09:15 - For 699501171006

> INCOMING CALL FROM EE- CMS ADVISED THAT COPY OF HER FILE WAS MAILED
> TO HER ON 11/8/04.  I APOLOGIZED FOR THE DELAY IN SENDING THIS
> DOCUMENTATION, AND EXPLAINED THAT HER PAPER FILE HAD TO BE COPIED
> AND IMAGED FILE PRINTED FOR HER, SO THAT THE ENTIRE FILE COULD BE
> SENT TO HER AT ONE TIME.  EE UNDERSTOOD./ T ZAMMIELLO

[ACS1] - On 11/11/2004 13:55 - For 699501171006

> OGC INDEX DCN 041110033372

[ACS1] - On 11/15/2004 16:10 - For 699501171006
Call-Up For: [APUT] - On 11/15/2C    Call-Up Complete: [UB27] - On 11/24/2004

> MED/VOC INDEX DCN 041115F05222

[ACS1] - On 11/19/2004 14:11 - For 699501171006
Call-Up For: [APUT] - On 11/19/2C    Call-Up Complete: [UB27] - On 11/24/2004

> MED/VOC INDEX DCN 041119000368

[U816] - On 11/23/2004 15:06 - For 699501171006

> INCOMING CALL FROM EE- SHE WANTED TO REQUEST COPY OF PLAN- CMS
> ADVISED THAT SHE WOULD NEED TO REQUEST THAT FROM IBM.  SHE WILL DO
> THIS.  SHE IS PLANNING TO FILE AN APPEAL, AND WILL BE DOING THIS
> SHORTLY.  / T ZAMMIELLO

[UB27] - On 11/24/2004 08:19 - For 699501171006
Call-Up For: [U816] - On 11/24/20    Call-Up Complete: [U816] - On 11/24/2004

> APPEAL NOTE: FORTHCOMING FURTHER SUBSTANTIATION OF APPEAL. LETTER
> TO EE MAILED ADVISING OF 180 DAYS TO SUBMIT COMPLETE APPEAL.
> DATABASE COMPLETED. -KC

[UB27] - On 11/24/2004 08:20 - For 699501171006
Call-Up For: [APUT] - On 04/19/2C    Call-Up Complete: [U475] - On 12/14/2004

> APPEAL FOLLOWUP: 180TH DAY UP, START APPEAL PROCESS. UPDATE
> DATABASE. -KC

[ACS1] - On 11/29/2004 12:49 - For 699501171006

> OGC INDEX DCN 041126020102

[ACS1] - On 12/06/2004 10:29 - For 699501171006
Call-Up For: [APUT] - On 12/06/2C    Call-Up Complete: [U026] - On 12/08/2004

> APPEAL MAIL DCN 041203007846

[U026] - On 12/08/2004 11:19 - For 699501171006
Call-Up For: [U816] - On 12/08/20    Call-Up Complete: [U816] - On 12/08/2004

> APPEAL NOTE APPEAL STARTED DATABASE UPDATED ACK LTR SENT RTK

ML00705

Diary Review - Report

[U026] - On 12/08/2004 11:47 - For 699501171006
Call-Up For: [U478] - On 12/08/20  Call-Up Complete: [U475] - On 12/14/2004

APPEAL NOTE: APPEAL ASSIGNED TO SHELLEY GEARY U478 PLEASE HANDLE.

[U475] - On 12/14/2004 08:11 - For 699501171006
Call-Up For: [U475] - On 01/05/20  Call-Up Complete: [U475] - On 01/06/2005

APPEAL 45TH DAY IS 1/20/05

[U475] - On 12/14/2004 08:11 - For 699501171006
Call-Up For: [U475] - On 01/13/20  Call-Up Complete: [U475] - On 01/06/2005

APPEAL NOTE-F\U FOR STATUS LTR

[U475] - On 12/14/2004 08:12 - For 699501171006
Call-Up For: [U475] - On 12/29/20  Call-Up Complete: [U475] - On 01/06/2005

APPEAL REFERRAL TO IPC MT PROSPECT

[U475] - On 01/06/2005 12:42 - For 699501171006

APPEAL DETERMINATION BY APPEAL UNIT UPHELD
THIS IS A 52YR OLD FEMALE WHO SUSTAINED A L3 BURST FRACTURE. LDW:
11/21/94-BENEFITS TERM 11/18/04. EE APPEALED AND SENT IN LTR
FROM AP
FILE WAS REVIEWED BY IPC BOARD CERIFIED IN PHYSICAL MEDICAL AND
REHAB-
THE CONSULTANT INDICATED THAT WERE ABLE TO LIVE INDEPENDENTLY TAKING
CARE OF YOUR PERSONAL NEEDS, COOKING AND LAUNDRY.  YOU WERE ABLE TO
DRIVE SHORT DISTANCES AND PARTICIPATE IN AN EXERCISE PROGRAM SUCH AS
DEEP WATER WALKING ON A CONSISTENT BASIS.  YOU ALSO INDICATED THAT
WHEN ABLE, YOU VOLUNTEER AT A LIBRARY ASSISTING CLIENTS WITH THE USE
OF THE INTERNET. THE CONSULTANT STATED THAT IT APPEARS YOU ARE
LIMITED BY YOUR PERCEPTION OF YOUR PAIN AND THE DISABILITY THAT IT
LEAVES YOU WITH.

OBJECTIVELY, THE CONSULTANT CONCLUDED THAT YOU WERE ABLE TO
PARTICIPATE IN SEDENTARY-TO-LIGHT ACTIVITIES THAT YOU CHOOSE TO
PURSUE SUCH AS LAUNDRY, DRIVING, COMPUTER USE, OCCASIONAL VOLUNTEER
AT THE LIBRARY, ETC.  THE CONSULTANT DID NOT SEE A REASON TO
RESTRICT SEDENTARY-TO-LIGHT ACTIVITY THAT YOU WISHED TO PURSUE ON A
MEDICAL BASIS.  HOWEVER, YOU SHOULD BE RESTRICTED IN REGARD TO
LIFTING GREATER THAN 15-20 POUNDS ON AN OCCASIONAL BASIS, FREQUENT
PUSH/PULL WORK AND FREQUENT OVERHEAD WORK WHICH IS WARRANTED GIVEN
YOUR HISTORY OF A L3 COMPRESSION FRACTURE WITH MILD DEGENERATIVE
DISK DISEASE AND RIGHT SHOULDER TENDINOPATHY.  YOU ALSO SHOULD
CHANGE POSITIONS ON AN EVERY 30- TO 60-MINUTE BASIS.
DEF OF DISAB
'UNDER THE LONG-TERM DISABILITY PLAN, TOTALLY DISABLED MEANS THAT
DURING THE FIRST 12 MONTHS AFTER YOU COMPLETE THE WAITING PERIOD,
YOU CANNOT PERFORM THE IMPORTANT DUTIES OF YOUR REGULAR OCCUPATION
WITH IBM BECAUSE OF A SICKNESS OR INJURY. AFTER EXPIRATION OF THAT
12 MONTH PERIOD, TOTALLY DISABLED MEANS THAT, BECAUSE OF A SICKNESS
OR INJURY, YOU CAN NOT PERFORM THE IMPORTANT DUTIES OF YOUR
OCCUPATION OR ANY OTHER GAINFUL OCCUPATION FOR WHICH YOU ARE
REASONABLY FIT BY YOUR EDUCATION, TRAINING OR EXPERIENCE. YOU MUST
BE UNDER THE APPROPRIATE CARE AND TREATMENT OF A DOCTOR ON A
CONTINUING BASIS. AT YOUR OWN EXPENSE, PROOF OF DISABILITY,
SATISFACTORY TO METLIFE, MUST BE SUBMITTED TO METLIFE.'
IN COMPLETING OUR APPEAL REVIEW, YOUR MEDICAL RECORDS DO NOT
INDICATE ANYTHING THAT WOULD PREVENT YOU FROM DOING WORK AT A
SEDENTARY LEVEL.  THE INFORMATION IN YOUR FILE DOES NOT PROVIDE
EVIDENCE OF ANY NEW COMPLICATION OR DETERIORATION IN YOUR CONDITION
THAT WOULD PREVENT YOU FROM PERFORMING ANY OCCUPATION, BASED ON YOUR
EDUCATION, TRAINING AND EXPERIENCE.

IN SUMMARY, BENEFITS MUST BE ADMINISTERED IN ACCORDANCE WITH THE
EMPLOYER'S PLAN AND THIS REQUIRES THAT THE DISABILITY IS DEFINED AND
MEDICALLY SUBSTANTIATED BY THE PROVIDERS WITH COMPREHENSIVE AND
SPECIFIC INFORMATION.  THIS IS NOT TO SAY YOU WERE NOT EXPERIENCING
DIFFICULTY. HOWEVER, WITH THE MEDICAL RECORDS AVAILABLE FOR REVIEW,
WE WERE UNABLE TO CONCLUDE ANY FUNCTIONAL LIMITATIONS OR
RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING JOB DUTIES OF

ML00706

Diary Review - Report

Claim #:699501171006    Name: GAIL KERNAGHAN

Status: Ended

[U475] - On 01/06/2005 12:42 - For 699501171006

| |
|---|
| OTHER OCCUPATIONS.  THEREFORE, THE ORIGINAL DETERMINATION TO TERMINATE LONG TERM DISABILITY BENEFITS AS OF NOVEMBER 18, 2004 WAS APPROPRIATE. |
| LROGERS |

[U475] - On 01/06/2005 12:43 - For 699501171006

Call-Up For:  [U816] - On 01/07/20    Call-Up Complete:  [U816] - On 01/06/2005

| APPEAL REFERRAL TO CMS |
|---|
| FILE WAS UPHELD-UPHOLD LTR MAILED PLEASE NOTIFY FIRM IF NECESSARY |
| LROGERS |

[U475] - On 01/06/2005 12:43 - For 699501171006

| APPEAL NOTE-UPHOLD LTR MAILED |
|---|

[U816] - On 01/06/2005 16:40 - For 699501171006

| CASE MANAGEMENT NOTES- UPHOLD NOTIFICATION SENT TO ER VIA E-MAIL/ T ZAMMIELLO |
|---|

[U816] - On 01/10/2005 12:37 - For 699501171006

| INCOMING CALL FROM EE- STATUS OF APPEAL- CMS ADVISED OF UPHOLD, AND LTR MAILED TO HER/IBM ON 1/6/05.  EE STATED THAT SHE HAS ATTY AND WILL BE FILING SUIT./ T ZAMMIELLO |
|---|

ACS1] - On 01/12/2005 10:08 - For 699501171006

| OGC INDEX DCN 050110015862 |
|---|

M077] - On 01/31/2005 16:21 - For 699501171006

| REHAB CALL - FROM EE WHO HAS RECEIVED A LETTER INFORMING HER THAT TERMINATION OF HER CLAIM WAS UPHELD ON APPEAL.  HOWEVER, IT INCLUDED A LIMITED OFFER OF VOC ASSISTANCE TO RE-ENTER THE WORK FORCE. I EXPLAINED THAT ANOTHER VRC IS NOW HANDLING VOC FOR THE IBM ACCOUNT. EE ASKED ME TO HAVE D.BEJIAN CALL HER.  I SENT EMAIL TO VRC TO LET HER KNOW.  D.DENMEAD/VRC |
|---|

JA16] - On 01/31/2005 16:40 - For 699501171006

Call-Up For:  [UA16] - On 02/01/2C    Call-Up Complete:  [UA16] - On 02/09/2005

| OUTGOING CALL TO  EE.  UNABLE TO CONTACT. BS. VRC WILL TRY LATER.  I READ THE UPHOLD LTTR AND THERE IS NO MENTION OF OFFERING HER LIMITED VOC ASSISTANCE.  IT MAY HAVE BEEN OFFERED IN A PREVIOUS LTTR TO EE WHILE CLAIM WAS STILL ACTIVE BUT WAS NOT MENTIONED IN MOST RECENT LTTR SENT TO EE. VRC WILL TRY AND CONTACT EE AGAIN. DBEJIAN/VRC |
|---|

JA16] - On 01/31/2005 16:46 - For 699501171006

| REHAB UPDATE-LIMITED VRC ASSISTANCE WAS OFFERED IN INITIAL TERM LTTR. EE HAD TO CONTACT MET W/IN 30 DAYS OF RECEIPT OF THAT LTTR WHICH WAS DATED 10/19/04, AS EE DID NOT ACCEPT OFFER OF PLACEMENT ASSISTANCE WITHIN A TIMELY MANNER, FILE HAS ENDED AND ALL ADMINISTRATIVE APPEALS HAS BEEN EXHAUSTED.  ERISA LANGUAGE SUPPLIED TO EE IN UPHOLD LTTR. DBEJIAN/VRC |
|---|

JA16] - On 02/09/2005 10:47 - For 699501171006

| REHAB NOTE-EE STATED SHE WOULD CALL ME MONDAY 2/7/05 IF SHE WANTED VOC ASSISTANCE. AS SHE HAS NOT CONTACTED ME, I WILL CLOSE OUT MY C/UP.  PER UM, EE HAD OPP FOR VOC ASSISTANCE WELL BEFORE CLAIM TERMINATION AND WOULD NOT OFFERED TO EE NOW THAT CLAIM HAS ENDED. |
|---|

ML00707

Claim #:699501171006    Name: GAIL KERNAGHAN

Status: Ended

[UA16] - On 02/09/2005 10:47 - For 699501171006

```
DBEJIAN/VRC
```

[UA16] - On 02/10/2005 09:51 - For 699501171006
Call-Up For: [UA16] - On 02/10/20   Call-Up Complete: [UA16] - On 02/11/2005

```
REHAB CALL FROM/TO EE.  NOT HAPPY THAT WE WILL NOT BE PROVIDING HER
PLACEMENT SERVICES. WOULD LIKE TO KNOW CONTACT PERSON AT IBM.  VRC
LEFT VM W/UM TO REQUEST APPROPRIATE CONTACT INFO FOR EE.  TOLD EE
SOMEONE WOULD LET HER KNOW AS SOON AS THE INFORMATION IS AVAILABLE.
EE STATED IF SHE WAS NOT AT HOME, WE COULD LEAVE A DETAILED VM ON
HER ANSWERING MACHINE AS NO ONE HAS ACCESS TO IT BUT HER.
DBEJIAN/VRC
```

[U816] - On 02/11/2005 12:15 - For 699501171006

```
OUTGOING CALL TO EE: EE NOT HOME, FEMALE ANSWERED PHONE- CMS COULD
NOT PROVIDE DETAILED INFO, DUE TO CONFIDENTIALITY.  CMS PROVIDED PH#
FOR EE TO CONTACT IBM- EMPLOYEE SVC CENTER PH# 1-800-796-9876.  THE
PERSON THEN BECAME IRATE AND STATED THAT THAT IS NOT HE # THAT EE
WANTED.  CMS EXPLAINED THAT THIS IS THE ONLY PH# THAT METLIFE IS
AUTHORIZED TO PROVIDE FOR IBM, IF EE NEEDS THE DIRECT LINE OF A
SPECIFIC PERSON AT IBM, SHE WILL NEED TO REQUEST THAT THROUGH THE
ESC.  THE PERSON THEN DISCONNECTED THE CALL/ T ZAMMIELLO
```

[ACS1] - On 02/22/2005 11:03 - For 699501171006
Call-Up For: [M077] - On 02/22/20   Call-Up Complete: [M077] - On 02/28/2005

```
APPEAL MAIL DCN 050221006242
```

[U816] - On 02/25/2005 15:05 - For 699501171006

```
CASE MANAGEMENT NOTES- DCN 050221006242 IS NOT APPEAL MAIL- THIS IS
A VENDOR INVOICE FOR VRC/ T ZAMMIELLO
```

[M077] - On 02/28/2005 11:57 - For 699501171006
Call-Up For: [U086] - On 03/04/20   Call-Up Complete: [U003] - On 03/02/2005

```
REFERRAL TO POAP - INVOICE PAYMENT
2 INVOICES FROM CRAWFORD  AND  SENT TO SS MGR. FOR APPROVAL
   INVOICE #  306-13798    $450.00    DUE DATE 9/29/04
   INVOICE #  306-12837    436.75     DUE DATE 3/17/04

D.DENMEAD/VRC
```

[N015] - On 07/05/2005 10:27 - For 699501171006
Call-Up For: [N015] - On 07/05/20

```
***LITIGATION MATTER***
```

74 Diaries
ound

ML00708

# PHYSICIAN CONSULTANT REVIEW

DATE OF REVIEW:    12/28/04

CLAIMANT NAME:    GAIL KERNAGHAN

CLAIM NUMBER:    699501171006

CLAIMANT SS#:    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

REFERRAL SOURCE:    Linda Rogers, 315-792-1783

## Diagnosis (es):

L3 compression fracture with chronic low back pain.

## File History/Summary:

The employee is a 52-year-old software engineer for IBM with a last date of work of 11/21/94. She apparently was involved in a sledding accident in 1993 with an L3 compression fracture. She returned to work part time for a period of time but was never able to increase her hours to a full-time basis and the part-time work she did after her fracture, she apparently was never consistent in her ability to maintain her schedule. Benefits were paid through 11/18/04 and terminated based on information indicating she could perform sedentary work duties and transferable skills analysis indicating job availability. I am currently being asked to review the medical on appeal for ongoing long-term disability at any occupation.

## Summary of Activity:

Physician Statement of Functional Capacity from Dr. Mousari, neurology, 03/07/01, indicated no environmental limitations. Physically, there was limitation of transportation, standing for 30 minutes, sitting for 10 minutes, change of position every 30-60 minutes, inability to assume cramped positions, reach forward, push/pull, twist, climb, balance, bend, stoop, squat, operate small and heavy equipment, operate electrical equipment and 30 minutes of concentrated visual attention. She was felt to be able to lift and carry less than 10 lb. She was felt to be disabled for any occupation.

Page 1 of 11

Independent Physician Consultant Review For MetLife Disability

Page 2 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AB-LINYFAXSVR04.

A208      ML00709

CLAIMANT NAME:    **GAIL KERNAGHAN**

CLAIM NUMBER:    **699501171006**

CLAIMANT SS#:    **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**

Independent evaluation by Dr. Bonner, 04/15/02, indicated Ms. Kernaghan suffered a back injury while sledding in 1993 causing a burst fracture to L3. At the time, she was diabetic but diet controlled. Since that time, she complained of back pain and intermittent right lower extremity pain with intermittent paresthesias. She reported cognitive changes due to her medication. Her medications at the time of evaluation included Zanaflex, Neurontin and Vicodin. She was treating with pain management physician who apparently left the country and had not returned and recently started treating with another physician. She reported a 60 lb weight gain since her accident.

Her examination showed full range of motion of the cervical spine and intact and symmetric reflexes of the upper extremities and knees. She had absent ankle reflexes. Straight leg raising was positive at the right at 70° and negative on the left. She had a moderate degree of guarding in the lumbar spine in the area of L3, 4, 5. She was also tender in the right greater sciatic notch and right sacroiliac joint and right greater trochanteric area. She ambulated independently without an assistive device. She was able to come within 4" of touching her toes and complained of discomfort. She had limited right lateral flexion, and full lateral flexion-extension was also limited due to pain. Sensation was intact to light touch. Dr. Bonner felt she had evidence of chronic pain syndrome secondary to her burst fracture at L3 with ongoing evidence of lumbar radiculopathy.

She was felt to have evidence of some cognitive dysfunction secondary to medication, but he did not delineate what findings in his examination lead to this conclusion. He reported she was now an insulin-dependent diabetic. He felt her objective findings correlated with respect to complaints. He indicated her physical capacities would fall in the classification of sedentary-to-light with the ability to get up and move around but was significantly limited by her present medications.

In a followup letter to Ms. Harbin, RN, Dr. Bonner indicated 05/02/02 that Waddell signs were negative, and he recommended continued medical followup, analgesic medication and intermittent outpatient physical therapy.

Page 2 of 11

**Independent Physician Consultant Review For MetLife Disability**

Page 3 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AS-LINYFAXSVR04.

A209      ML00710

CLAIMANT NAME:    GAIL KERNAGHAN

CLAIM NUMBER:    699501171006

CLAIMANT SS#:    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

Records from physical medicine rehabilitation physician Dr. Upabhyay begin 04/05/02. On that day she was following up with complaints of right shoulder and back problems. She was noted to be on Vicodin and Xanax. Neurontin and Paxil were started but caused hallucinations. She was documented to be 5'5" tall and 198 lb. She was noted to have a non-antalgic gait and mount and dismount from the exam table readily. She had tenderness of extension in the glenohumeral joint, and no impingement documented on examination. She was tender over the SI joint on the right and over the greater trochanteric bursa. The iliotibial band also increased in tone and tenderness, I assume, on the right. The assessment was for chronic low back pain secondary to right SI joint dysfunction, lumbar facet syndrome improved and right shoulder pain, rule out rotator cuff injury.

An MRI of the right shoulder was ordered, and she was instructed to continue her home exercise program. She was continued on her Vicodin and Zanaflex, and Depakote was added to titrate up to 1 gm over the next month. Paxil and Neurontin were discontinued. She was noted to be working full time without restrictions and was recommended to continue to do so.

Laboratory evaluation from 04/08/02 documented an ANA borderline at 1-80 both homogenous and speckled pattern, negative lime antibodies, normal CBC, hepatic functional panel, sed. rate, creatinine, kinase and aldolase levels.

MRI of the right shoulder 04/08/02 shows minimal supraspinatus tendinosis without rotator cuff tear, minimal-to-mild subacromial bursal fluid consistent with very low grade bursitis. No labral tear was documented.

Attending Physician Statement of Functional Capacity from Dr. Upabhyay, 04/19/02, indicated she needed to avoid extremes of temperatures, ladders, stairs, scaffold heights, enclosed spaces, drafts and damp areas, cramped and unusual positions, climbing, balancing, bending, stooping, squatting, operating small vehicles, heavy equipment and electrical equipment. She was felt to have no limitation in regard to change of position, grasping, handling, finger dexterity and concentrated visual attention. She was felt to be able to sit a maximum of 30-60 minutes and stand a maximum of 30 minutes. She was able to lift 15 lb less than 20% of the day.

Page 3 of 11
    Independent Physician Consultant Review For MetLife Disability

Page 4 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server A9-LINYFAXSVR04.

A210

ML00711

CLAIMANT NAME:       GAIL KERNAGHAN

CLAIM NUMBER:        699501171006

CLAIMANT SS#:        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

He noted medications caused station and decreased concentration. She was felt to be unimproved but stable on medications with permanent injury and totally disabled for any occupation as well as her own occupation.

Letter to Dr. Reyes 04/22/02 indicates a referral to a rheumatologist for evaluation of positive ANA and sed. rate.

Followup with Dr. Upabhyay 06/06/02 indicated evaluation by Dr. Tamesis, her right shoulder and elevated rheumatoid neurology. Her pain was stable at 5/10, and she was sleeping well at night. Her depression anxiety resolved on Effexor. Her medications included Effexor XR 75 mg a day, Vicodin 1/2 tablet 2 times a day, Zanaflex 8 mg at night and Neurontin 200 mg at night without side effects. Her examination showed her to have bilaterally tender SI joints. Biceps tendon was nontender. She had tenderness over the anterior deltoid with negative near-impingement sign but positive Hawkins in an equivocal manner. She was felt to have SI joint dysfunction causing low back pain, reactive anxiety and depression, right rotator cuff tendinopathy, elevated sed. rate and ANA followed by rheumatology. Again, she was directed to her home exercise program.

On 08/01/02 followup, Dr. Upabhyay indicates Dr. Tamesis found no significant rheumatologic diagnosis. She reported difficulty dressing due to right shoulder problems. She reported Effexor making her sedated and wished to stop that medication.

On examination, her weight was 206 lb. She moved around the exam room without difficulty. Neurologically, she was intact. Range of motion of the right shoulder showed limitations of forward flexion to 170°, abduction to 90°, and extension to 40°, and low back tenderness in the SI joints bilaterally with range of motion of forward flexion to 50° and extension to around 30°. Her reflexes were 2+ and symmetric in the lower extremities. She was weaned off Effexor over a week's period of time and started on Celexa and continued on Neurontin, Zanaflex and Vicodin. Suggestion of switching from Vicodin to Kadian since she was using her Vicodin regularly was discussed.

Laboratory 08/28/02 showed a normal CBC and hepatic function panel.

Page 4 of 11

Independent Physician Consultant Review For MetLife Disability

ML00712

CLAIMANT NAME:    GAIL KERNAGHAN

CLAIM NUMBER:    699501171006

CLAIMANT SS#:    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

Followup 08/29/02 indicated ongoing myofascial pain in the right upper trapezius and cervical spine discomfort without any exterior radicular symptoms. She describes some deconditioning in leg weakness and back pain worsened with bad weather. She remained on insulin, Vicodin 3 a day, Celexa, Zanaflex and Neurontin at night. Her weight was stable at 206 lb. Her gait remained non-antalgic, and she was able to mount and dismount the exam table readily. Examination showed tenderness of the trapezius muscles, negative Neer and Hawkins impingement, intact lower extremity reflexes and no ankle clonus. The Impression was for right shoulder myofascial pain, chronic low back pain status post L3 burst fracture and diabetes. She was excused from work and jury duty, and no changes in her medications were noted.

Physical Capacity Evaluation from that day indicated 6 hours of sitting and 2 hours each of standing and walking. She could frequently lift 10 lb and occasionally to 20 lb, and occasionally carry 10 lb. She is capable of simple grasping and fine manipulating on a repetitive basis but no push/pulling. She was felt to be occasionally able to bend, squat, reach above shoulder level but never crawl or climb. She was felt to have moderate restriction in regard to exposure to dust and fumes and mild restrictions in regard to moving machinery and its exposure to changes in temperature and humidity.

In 10/01/02 followup she continued to have ongoing back pain with some pain in her neck. Average back pain was a level of 6. She had no clear radicular symptoms. Her medications were unchanged. Her weight was 208 lb. Her examination was unchanged. Dr. Upabhyay indicated she was unable to use Kadian or MS Contin due to her history of sulfa allergy. Consideration for Duragesic was noted. OxyContin in the past had made her lethargic and irritable. He indicated he would attain a second opinion from his colleague, Dr. Ameer, in regard to drug enforcement administration recommendations.

Personal Profile from 12/2002 from Ms. Kernaghan indicated she was unable to work due to pain resulting from an accident in her lower back and right hip area severe enough to limit her functional thinking. She reported taking Vicodin 3 times a day, -------adine, Celexa, Neurontin, Bextra and insulin. Medications were of no benefit. She was residing with her husband. She documented her height as 5'5" tall and weight as 200 lb. She indicated she arose in the morning at 9 a.m. and retired at 11:30 p.m.

Page 5 of 11
Independent Physician Consultant Review For MetLife Disability

Page 6 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AE-LINYFAX6VR04.

ML00713

A212

CLAIMANT NAME:     **GAIL KERNAGHAN**

CLAIM NUMBER:     **699501171006**

CLAIMANT SS#:     **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**

She indicated she simplified her personal care and wore simple clothing. She indicated she volunteered in the local library one day a week for 3 hours. She generally assisted patrons on the internet. She did not anticipate return to any type of work due to her illness and erratic ability to be active. She indicated she did laundry, dusting and dishes when she was able to and relied upon her husband to do all heavy housework, lawn care and household repairs. She drove short distances less than 30 minutes with frequent stops. She indicated she participated in reading, television, computer use and deep water walking twice a week for 45 minutes.

Physical Capacity forms filled out by Dr. Upabhyay 03/31/03 and 11/20/03 indicate no change from that filled out on 08/29/02.

Home visit from Crawford representative, Ms. Palish, RN, on 02/11/04 indicated Ms. Kernaghan was pleasant and cooperative during the interview. Her sister and brother-in-law were visiting but were not present for the interview. She wore casual pants and top and comfortable shoes. She ambulated slowly and required change of position every 30 minutes. She was noted to be left-hand dominant and she relates the specifics in regard to her sledding injury with her daughter on 11/22/94.

She initially wore a body brace for a period of 6 months and then on and off for an additional 2 years to reduce her low back pain. Physical therapy has not been helpful for her pain. Though Dr. Upabhyay has provided work capacities for her, she indicates she is concerned she would not be able to perform within these capacities on a consistent basis. She indicated she had right hip radicular discomfort 3-4 times per month described as a burning-type of pain. This was relieved with bedrest and medication. She reported ability to lift 5-10 lb, being able to lift small bags of groceries without difficulty. She reported sitting and standing ability to 30 minutes at a time and ability to walk approximately 2 hours with rest. She reported an 80 lb weight gain since her injury. Though she was independent with all activities of daily living, she reported assistance required with housework and driving short distances only.

For pain, she was taking Vicodin 3 x a day. She was water walking at the YMCA 2 days per week. She was unable to increase her Neurontin dosage due to hallucinations. She had recently started Lidoderm patches as needed for her pain relief.

Page 6 of 11
    Independent Physician Consultant Review For MetLife Disability

Page 7 of 12 received at 3/28/2006 3:26:00 PM [Eastern Standard Time] on server AS-LINYFAXSVR04.

A213                                         ML00714

CLAIMANT NAME: **GAIL KERNAGHAN**

CLAIM NUMBER: **699501171006**

CLAIMANT SS#: **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**

She reported cognitive dysfunction secondary to narcotic pain medication such as forgetting to turn off the stove and inability to drive more than short distances. She perceived herself as totally disabled because she was uncertain when her pain would increase and how long it would last. She reported at times her pain lasted for 2-3 days requiring bedrest.

Her weight was reported at 204 lb. She indicated she arose at 9 a.m. taking 1 hour to get moving and requiring a hot shower. She ate breakfast of bacon or sausage and talked on the phone, read, watched TV and has lunch between 1-2 p.m., generally half a sandwich. She made her own dinner and then watched TV or read. She got tired at 11 p.m. She was going through a divorce of her husband of 18 years. Her 22-year-old daughter was noted to live close by. Her husband continued to assist with bills. Her home was well kept, neat and clean and uncluttered. She was noted to have a donkey residing in the back barn which was cared for by her husband. She was documented to be able to do small loads of laundry, drive less than 30 minutes, sit up to 1 hour and have problems with decreased range of motion of her right shoulder making it difficult to hook and unhook her bra.

She had no plans to attempt to return to work given her prior attempt to work several years ago. She considered herself totally disabled. She felt she would not be able to perform consistently at the capacities delineated by Dr. Upabhyay 11/20/03. Potential to return to work was felt to be impacted by her perception of her pain.

Subsequent to this, a Functional Capacity Evaluation was completed 04/26 and 04/27/04. This was felt to be consistent with a sedentary level demanding 8 hours per day with the need to alternate sitting and standing activities frequently. The patient was felt to give maximal effort during the evaluation. Range of motion of the right shoulder was limited to forward flexion of 170°, extension to 30°, abduction to 170°?-, internal rotation to 20° and external rotation to 80°. Right shoulder strength was noted to be in the 4+ to 4- range. Left shoulder range of motion was within normal limits, and strength was 4+ range throughout. Her reflexes were noted to be 2+ and symmetric bilaterally in the upper and lower extremities.

Ms. Kernaghan completed all tests items regarded of the reported pain level. She demonstrated safe performance of body mechanics with occasional verbal cuing.

Page 7 of 11
    Independent Physician Consultant Review For MetLife Disability

A214                    ML00715

CLAIMANT NAME:       **GAIL KERNAGHAN**

CLAIM NUMBER:        **699501171006**

CLAIMANT SS#:        **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**

She demonstrated appropriate pacing and good general awareness of safe techniques. Her movement was smooth and coordinated throughout all test items. She is felt to have excellent ability to elevated work rotational activities, crawling, kneeling, crouching, standing tolerance and ambulation activities, good ability to forward reaching, repetitive squat and sit tolerance. She is below average in general grip strength and hand coordination.

There is a Labor Market Survey dated 04/25/03 in the file. This would appear to be from a different claimant given the diagnosis of asthma and respiratory irritated exposure and job title of territory manager.

Transferrable skills and Labor Market Survey dated 08/23/04 regarding Gail Kernaghan indicates she would be qualified to perform as a procurement manager, customer service manager or employment manager within the Delaware geographic area earning between $40,000-50,000 a year. Positions were considered to be sedentary with considerable capabilities. The only deterrent is due to the fact that she has been out of the workforce for many years.

Letter dated 10/19/04 to Ms. Kernaghan from MetLife indicated termination of benefits effective 11/19/04, given her Employment Stability Assessment and Labor Market Analysis and restrictions and limitations to sedentary-type work. She was, therefore, not felt to be disabled from any occupation.

Letter dated 10/26/04 from Ms. Kernaghan regarding appeal for her disability benefits.

Letter from Dr. Upabhyay dated 10/09/04 indicates there was an original dictation 05/04 that was lost and not recovered. He reviewed her history in his 2-page letter. He notes a history of diabetes, rheumatic fever with subsequent heart murmur, family history of coronary artery disease, hypertension. She is noted to have diagnosis of chronic low back pain status post L3 compression burst fracture along with mechanical back pain and SI joint dysfunction with right greater trochanteric bursitis and iliotibial band syndrome. He notes a diagnosis of anxiety disorder secondary to chronic illness. He notes dates of treatment from 01/04/02 through 09/13/04. Of note, we do not have his office records subsequent to 08/29/02.

Page 8 of 11
  Independent Physician Consultant Review For MetLife Disability

Page 9 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AS-LINYFAXSVR04.

ML00716

A215

CLAIMANT NAME:    GAIL KERNAGHAN

CLAIM NUMBER:    699501171006

CLAIMANT SS#:    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

As of last office visit 09/04 her medications included Neurontin, Prozac, Vicodin and Zanaflex.

MRI from 10/12/02 showed a right S1 sacral region bone contusion with compression fracture and endplate fractures or Schmorl nodes at L3.

X-ray of the lumbar spine from 09/14/00 demonstrated 25% destruction of L3 vertebral body with degenerative disk at L2-3 and L3-4.

Dr. Upabhyay felt the Function Test Evaluation from 05/2004 was inaccurate and did not include or test the effects of prolonged sedentary activity with prolonged sitting, standing or workplace environment activities for more than 4-hour period. He indicates Ms. Kernaghan suffers from chronic lumbosacral spine pain secondary to L3 burst fracture with resulting disk disruption at L2-3 and L3-4 with permanent injury. He felt she was unable to occupationally work in any capacity due to her lumbar spine condition, and she should be restricted at home to sedentary duty activity.

Letter from Ms. Kernaghan dated 11/05/04 indicates a well-written and typed 4-page letter in regard to the appeal of her disability claim. Subsequent to this, her ex-husband indicates 11/10/04 that ex-wife cannot use his assistance because he is unable to provide it any longer. He reports that there are days on end where she does not get dressed. He indicates he was too young to be married to an invalid. She is now the responsibility of their daughter and son-in-law.

Teleconference with Linda Rogers indicates that social security disability at the ALJ level was declined due to sub-substantial evidence of impairment. This occurred in 12/2000.

Questions Posed and Answers:

1) What specific restrictions and limitations are supported by the medical documentation in file? Is there any evidence of impairment for functional activities related to medication?

Page 9 of 11
Independent Physician Consultant Review For MetLife Disability

ML00717

CLAIMANT NAME:   **GAIL KERNAGHAN**

CLAIM NUMBER:   699501171006

CLAIMANT SS#:   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

Records would indicate a history of L3 burst fracture in a sledding accident either in 1993 or 1994. Subsequent to this, she developed a chronic back pain problem with a failed attempt to return to work at IBM. There are no treatment records in file 1993 until 2001. There is indication she was being treated by a physician who left the country. It is unclear whether she had continuous treatment for her back pain condition over the number of years.

When the records begin in more detail 04/2002, she is being treated for rotator cuff tendinopathy. This subsequently is diagnosed as a right shoulder myofascial pain syndrome. Independent medical exam by Dr. Bonner in 04/2002 indicated she was physically capable of participating in sedentary-to-light activity but he felt she was limited due to her present medications. Unfortunately, his dictation does not delineate what type of impairment she has related to her medications. There is no objective evidence in terms of psychological testing to indicate that there is cognitive impairment in file.

Subsequent home visit in 2004 indicated she was an engaging individual to interview. There is no evidence of cognitive impairments delineated in that interview. Subsequent Functional Capacity Evaluation delineated capacity to participate in sedentary activities with ability to change position on a frequent basis.

Ms. Kernaghan lives independently getting assistance for heavier housework tasks from her daughter. She is able to drive at least short distances and prepare her own meals. There has been no recent documentation or documentation for quite some years in terms of her being cognitively impaired in regard to her cooking. Per Dr. Upabhyay's evaluation, he notes some tenderness over the shoulder and back, she is generally noted to move around the exam room without difficulty and be able to get on and off the exam table again without difficulty. There is no description of any abnormalities in gait. Dr. Upabhyay on 04/05/02 indicated that Ms. Kernaghan was working full time without restriction. I assume that was a typographical error.

Records indicate presence of a L3 compression fracture since 1993 or 1994, mild degenerative disk disease above that level, and a history of some right shoulder tendinopathy. She is able to live independently taking care of her personal needs, cooking and laundry.

Page 10 of 11
    Independent Physician Consultant Review For MetLife Disability

ML00718

CLAIMANT NAME:      GAIL KERNAGHAN

CLAIM NUMBER:       699501171006

CLAIMANT SS#:       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

She is able to drive short distances and participate in an exercise program such as deep water walking on a consistent basis. She has also indicated that when able, she volunteers at a library assisting clients with the use of the internet. She was not approved for social security disability due to sub-substantial evidence of impairment. She is limited by her perception of her pain and disability that it leaves her with.

Objectively, she is able to participate in sedentary-to-light activities that she chooses to pursue such as laundry, driving, computer use, occasional volunteer at the library, etc. I do not see a reason to restrict sedentary-to-light activity that she wishes to pursue on a medical basis. Restrictions in regard to lifting greater than 15-20 lb on an occasional basis, frequent push/pull work and frequent overhead work is warranted given her history of L3 compression fracture with mild degenerative disk disease and right shoulder tendinopathy. She should be allowed to change position on an every 30- to 60-minute basis.

Name, Title/Specialty:      *Valerie Y. Ito MD.*
                            Valerie Y. Ito, M.D.
                            Board Certified Physical Medicine
                            and Rehabilitation

Page 11 of 11
RKS/ks-69635

Independent Physician Consultant Review For MetLife Disability

Page 12 of 12 received at 3/28/2006 3:28:00 PM [Eastern Standard Time] on server AS-LINYFAXSVR04.

A218          ML00719          TOTAL P.12