# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GAIL KERNAGHAN,

        Plaintiff,

        v.

METROPOLITAN LIFE INSURANCE
COMPANY, as fiduciary and administrator of The
IBM Long-Term Disability Plan,

        Defendant.

:
:
:  C.A. No. 05-402 (GMS)
:
:
:
:
:
:
:
:

---

## DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MCCARTER & ENGLISH LLP

Paul A. Bradley (DE ID No. 2156)
Tanya Pino Jefferis (DE ID No. 4298)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware 19899
(302) 984-6300
Attorneys for Defendant
Metropolitan Life Insurance Company

Date: April 13, 2006

ME1\5591596.1

## TABLE OF CONTENTS

**TITLE**                                                                                              **PAGE**

TABLE OF CITATIONS ........................................................................................................ii

NATURE AND STAGE OF THE PROCEEDINGS .........................................................1

SUMMARY OF ARGUMENT ........................................................................................2

COUNTERSTATEMENT OF FACTS .............................................................................3

ARGUMENT ....................................................................................................................9

    I.      SUMMARY JUDGMENT STANDARD .................................................9

    II.     ERISA STANDARD OF REVIEW ........................................................9

    III.   METLIFE'S DECISION TO DISCONTINUE PLAINTIFF'S LTD BENEFIT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE .......................................9

CONCLUSION ................................................................................................................19

## TABLE OF AUTHORITIES

### FEDERAL CASES

**Page**

*Abnathya v. Hoffman-LaRoche, Inc.,*
    3 F.3d 40 (3d. Cir. 1993) ...................................................................18

*Black & Decker Disability Plan v. Nord,*
    538 U.S. 822 (2003) ................................................................... 14, 15

*Byrom v. Delta Family Care Disability and Survivorship Plan,*
    344 F. Supp. 2d 1163 (N.D. Ga. 2004)...................................................14

*Cord v. Reliance Standard Life Insurance Co.,*
    362 F. Supp. 2d 480 (D. Del 2005) ................................................. passim

*Lasser v. Reliance Standard Life Insurance Co.,*
    344 F.3d 381 (3d Cir. 2003)...............................................................13

*Manninger v. Hartford Ins. Co.,*
    160 Fed.Appx. 578 (9th Cir. 2005) ......................................................14

*Migliaro v. IBM Long Term Disability Plan,*
    231 F. Supp. 2d 1167 (M.D. Fla. 2002)..................................................17

*Schlegel v. Life Insurance Co. of North America,*
    269 F. Supp. 2d 612 (E.D. Pa. 2003)......................................................12

### STATE CASES

*Carpenter v. Proctor & Gamble Disability Benefit Plan,*
    2006 WL 860060 (M.D. Pa.) ......................................................11, 15, 16

*DeLong v. Aetna Life Ins. Co.,*
    2006 WL 328348 (E.D. Pa.) ...............................................................15

*Donnell v. Metropolitan Life Insurance Co.,*
    2003 WL 21655189, *aff'd,* 2006 WL 297314 (4th Cir.)............................14

*Hoover v. Metropolitan Life Insurance Company,*
    2006 WL 343223 (E.D. Pa.) .................................................11, 12, 13, 15

ME1\5591596.1

*Vick v. Metropolitan Life Ins. Co.,*
    2006 WL. 416185 (E.D. Mich.) .............................................................................. 16

*O'Reilly v. Rutgers,*
    2006 WL 141895 (D.N.J.) ........................................................................................ 9

*Oody v. Kimberly-Clark Corp. Pension System,*
    2005 WL 2811825 (E.D. Tenn. 2005)...................................................................... 14

## FEDERAL STATUTES

29 U.S.C. §1132(a)(1) ....................................................................................................... 1

Fed. R. Civ. P. 56(c).......................................................................................................... 9

## NATURE AND STAGE OF THE PROCEEDINGS

On June 15, 2005, Plaintiff Gail Kernaghan ("Plaintiff") filed a complaint under the Employee Retirement Security Act of 1974 ("ERISA") against Metropolitan Life Insurance Company ("MetLife") pursuant to 29 U.S.C. §1132(a)(1)(B). Plaintiff alleges that MetLife's decision to terminate her long-term disability ("LTD") benefits was arbitrary and capricious because it was not supported by substantial evidence. On August 12, 2005, MetLife filed an answer to the Complaint denying Plaintiff's allegations. The parties have exchanged discovery.

On March 30, 2006, Plaintiff filed her opening brief in support of her motion for summary judgment.

This is MetLife's Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment.

1

## SUMMARY OF ARGUMENT

Plaintiff is not entitled to summary judgment because:

1.      MetLife's decision to discontinue Plaintiff's long-term disability benefits was supported by substantial evidence in the record and, therefore, was not arbitrary and capricious;

2.      MetLife did not act in an arbitrary and capricious manner when it considered but rejected conflicting evidence contained in the administrative record that Plaintiff was disabled and instead relied on the substantial evidence concluding that Plaintiff was not totally disabled; and

3.      MetLife's consideration and rejection of sparse and subjective evidence in the administrative record regarding Plaintiff's cognitive dysfunction was neither arbitrary nor capricious.

ME1\5591596.1

## COUNTERSTATEMENT OF FACTS[1]

Plaintiff's statement of facts fails to show that MetLife's decision to discontinue benefits was arbitrary and capricious. Rather than showing there are objective and reliable facts that establish that MetLife's decision was arbitrary and capricious, Plaintiff has selectively cherry picked facts that she believes support her claim of disability and glossed over or ignored facts that support MetLife's decision to terminate her benefits.

Plaintiff's selective description of Dr. Yanez' conclusions from the Independent Medical Exam ("IME") he conducted in 1997 is misleading and does not support Plaintiff's claim of total disability as Plaintiff seems to suggest. Plt. OB at 3. A complete review of Dr. Yanez' report reveals that he was unable to detect the source of Plaintiff's lower back pain. ML00246-00248.[2] Dr. Yanez noted a normal MRI and an absence of neurological damage. ML00248. He also noted that Plaintiff walks without any obvious difficulty or abnormalities of gait. ML00297. Importantly, Dr. Yanez concluded there was "no neurological foundation for [Plaintiff's] inability to work." *Id.* at ML00249.

Two years later, in June 1999, Dr. Mousavi conducted a Functional Capacity Exam which does not strongly support Plaintiff's claim of disability as Plaintiff suggests. Plt. OB at 3. Indeed, Dr. Mousavi's opinion of Plaintiff's alleged disability was quite equivocal. Although he indicated that Plaintiff was totally disabled, Plaintiff failed to mention that he also stated that he could not determine that plaintiff was totally disabled. ML00147. This apparent equivocation may be explained by Dr. Mousavi's findings that Plaintiff only had some limitation with

---

[1] MetLife incorporates by reference the Statement of Facts contained in its Opening Brief in Support of its Motion for Summary Judgment electronically filed on April 3, 2006. *See* Def. OB at 3-8.

[2] References to "ML___" refer to Appendix to Plaintiff's Opening Brief in Support of Her Motion for Summary Judgment. *See* D.I. 22.

transportation, standing, sitting, and changing positions. *See* ML00146. It appears that Dr. Mousavi's finding of disability was solely based on Plaintiff's subjective complaints. Dr. Mousavi clearly indicates that he was unable to find any objective evidence supporting that determination and that he was uncertain as to whether Plaintiff was totally disabled. Furthermore, Plaintiff's statement that Dr. Mousavi repeated his diagnosis of depression in March 2001 is incorrect. Def. OB at 3. Dr. Mousavi's March 2001 report unequivocally indicates that Plaintiff was no longer suffering from depression or any other psychological problems that might interfere with Plaintiff's ability to work. ML00502.

In February 2002, although Plaintiff's treating physician, Dr. Uphadhyay, opined that Plaintiff was totally disabled from both her own and any other occupation (ML00492), his prognosis dramatically improved six months later. In August 2002, Dr. Upadhyay conducted a Physical Capacity Evaluation ("PCE") which indicated that, within an 8-hour workday, Plaintiff can sit for 6 hours, stand for 2 hours, and walk for 2 hours. *See* A57. Dr. Uphadhyay reconfirmed Plaintiff's ability to work an eight-hour day on March 31, 2003 and November 20, 2003. *Id.* Plaintiff mischaracterizes the PCE (Plt. OB at 4) by stating that Dr. Uphadhyay "restricted Plaintiff to a total of six hours sitting per day." Plaintiff completely glosses over the fact that the PCE is based on an eight-hour work day.

In February 2004, a nurse consultant performed a Home Visit/Medical Assessment and found that Plaintiff's "potential to return to work is impacted by the [Plaintiff's] perception of her pain". Plt. OB at 5. However, Plaintiff's perception of her pain is subjective. The nurse did not observe any objective evidence suggesting that Plaintiff's pain prevented her from returning to work. The assessment revealed that although Plaintiff had limitations on certain activities, she functioned mostly independently and was able to carry out all activities of daily living.

4

ML00098. Plaintiff's only limitation to returning to work were her self-imposed restrictions. Indeed, the nurse noted that Plaintiff "stated that although mentally she would like to work, she has no desire to seek employment because physically she considers herself to be totally disabled." A52. Although Plaintiff claims she is disabled by cognitive dysfunction, Plaintiff failed to mention this during the home visit and the nurse did not notice any symptoms of cognitive dysfunction. The Plan is not designed to pay disability benefits simply because a claimant considers themselves to be disabled. Objective medical evidence must coordinate this self diagnosis.

Following the nurse consultant's recommendation, MetLife conducted a functional capacity exam ("FCE") to determine Plaintiff's functional capabilities. ML00101. The FCE concluded that Plaintiff had the ability to work an eight-hour day, five days a week at a sedentary level during which time she would need to alternate her sitting time between walking and standing. ML00082 and ML00092. Unsurprisingly, Plaintiff failed to mention that the FCE concurred with the conclusions of Dr. Upadhyay's PCEs and Dr. Bonner's conclusion that Plaintiff was capable of working at a sedentary level. Plt. OB at 6.

On appeal of the decision to discontinue benefits and, in support of her claim of disability, Plaintiff submitted a report from Dr. Uphadhyay in which he criticized the FCE and concluded that Plaintiff was unable to work in any capacity. Plf. OB at 7; 0-11. Dr. Uphadhyay's report was noticeably void of any objective evidence supporting his criticism of the FCE. He stated the FCE was inadmissible because it did not test the effects of prolonged sedentary activity (Plf. OB at 7) but he failed to provide any evidence indicating that if this factor was tested, the results would contradict those of the FCE. Dr. Uphadhyay's conclusion that Plaintiff was unable to work was also questionable because it contradicted the conclusions he

5

reached in the PCEs he conducted in August 2002, March 2003 and as late as November 2003. A57. Dr. Uphadhyay's report provided no evidence to explain or support these contradictions.

In January 2004, MetLife hired Dr. Valerie Ito, an Independent Medical Consultant to review Plaintiff's appeal. Plaintiff offers no factual support for the contention that the conclusions reached by Dr. Ito in her report constituted a "restatement" of the findings found in some of the medical records she reviewed. Plt. OB at 8. Indeed, Dr. Ito eleven page report contains a comprehensive and thorough review and analysis of the medical records. Plaintiff is correct that Dr. Ito "noted Dr. Upadhyay's critique of the FCE as a diagnostic tool," (*id.*) but this comment was made within the context of providing a recitation of the records she reviewed and considered. *See* A216. Dr. Ito was not required to offer an opinion about Dr. Upadhyay's general critique of a well established and widely recognized diagnostic tool. As an independent physician consultant reviewer, Dr. Ito was to analyze the file in order to assist MetLife in its determination regarding Plaintiff's disability.

Contrary to Plaintiff's suggestion, there is no indication in Dr. Ito's report that there was "evidence in the file that the plaintiff suffered from cognitive dysfunction." *See* Plt. OB at 8 (citing ML00718). Quite the opposite, Dr. Ito noted that "[t]here is *no evidence* of cognitive impairments delineated in the [2004 home visit interview]." *See* A217 (emphasis added). Dr. Ito also noted that Dr. Bonner's report did not "delineate what type of impairment [Plaintiff] has related to her medications. There is no objective evidence in terms of psychological testing to indicate that there is cognitive impairment in file." *See* A217. Plaintiff has shown no facts contradicting Dr. Ito's conclusion that the administrative record is void of objective evidence supporting Plaintiff's claim of cognitive dysfunction. Furthermore, even if there was some

6

evidence of cognitive dysfunction, Plaintiff has shown no evidence that the cognitive

dysfunction renders her totally disabled from any occupation.

Plaintiff mischaracterizes Dr. Bonner's opinion by stating that he concluded that Plaintiff

was totally disabled from any occupation. Plt. OB at 9. Dr. Bonner concluded only that Plaintiff

"remains disabled from **her** occupation." *See* A144 (emphasis added) . Dr. Bonner concluded

that plaintiff's physical capacities fell in the sedentary/light work category with the ability to get

up and move around. *Id.* This finding is consistent with the findings in the Functional Capacity

Exam that was conducted in April 2004 (the "FCE"). Despite his October 29, 2004 report, Dr.

Uphadhyay concluded on three separate occasions that Plaintiff could work an eight hour day

with some limitations. *See* A57. Plaintiff suggests that Dr. Ito's report is deficient because she

did not comment on Plaintiff's alleged depression or anxiety disorder secondary to chronic

illness. *See* Plt. OB at 9. However, Plaintiff fails to note that Dr. Mousavi did not diagnose

depression in his latest attending physician's statement in March 2001, despite plaintiff's claim

to the contrary. ML00501-00502. In addition, Dr. Upadhyay never opined that the undefined

anxiety disorder caused any disability. A11. Indeed, in February 2002, he stated that Plaintiff

did not suffer from a psychological problem that would interfere with Plaintiff's ability to work.

ML00491-00492. Dr. Uphadhyay concluded Plaintiff was disabled by her "lumbar spine

condition" not cognitive dysfunction. ML00501-00502.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when there are no genuine material facts in dispute

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When, as

here, there are cross motions for summary judgment and the material facts are not in dispute, the

issue presented is purely legal. *O'Reilly v. Rutgers*, 2006 WL 141895 at *3 (D.N.J.) Here, the

undisputed facts in the administrative record support the conclusion that MetLife's decision to

discontinue Plaintiff's LTD benefits was not arbitrary or capricious.

### II.    ERISA STANDARD

The parties agree that in this ERISA case, the court reviews MetLife's decision to

discontinue benefits under an arbitrary and capricious standard. *Cord v. Reliance Standard Life

Ins. Co.*, 362 F. Supp. 2d 480, 484 (D. Del 2005). Plt. OB at n.4. The Plaintiff concedes that the

heightened standard of review does not apply. *Id*.

### III.    METLIFE'S DECISION TO DISCONTINUE PLAINTIFF'S LTD BENEFITS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE[3]

Plaintiff argues that the Independent Physician Consultant ("IPC") report is deficient

because she did not review the entire medical file. Def. OB at 12. Plaintiff, however, fails to

show that the IPC did not consider any material evidence in Plaintiff's medical file that supports

her claim of disability. Plaintiff furthermore argues that MetLife's decision to discontinue

benefits "conflicts with medical evidence ..." and that it "abused its discretion" by placing undue

weight on the opinion of the Independent Physician Consultant ("IPC") and "rejected without

explanation" the opinions of her treating physician, Dr. Uphadhyay, and Dr. Bonner, defendant's

---

[3] Defendant incorporates by reference its arguments submitted to the court in its Opening Brief in
Support of Its Motion for Summary Judgment as if more fully stated herein.

MEI\5591596.1

Independent Medical Examiner ("IME"). Plt. OB at 12. Plaintiff ignores the substantial

evidence supporting the decision to discontinue benefits, some of which was provided by Dr.

Uphadhyay and Dr. Bonner including:  1) the FCE; 2) the nurse consultant home visit; 3) Dr.

Uphadhyay PCE; 4) Dr. Bonner's opinion stating that Plaintiff was able to work in a sedentary

capacity; and 5) the IPC. A143-A144.

The IPC,  Dr. Valerie Ito, Board Certified in Physical Medicine and

Rehabilitation, reviewed and evaluated the IME report and found that:

> An independent medical exam by Dr. Bonner in April 2002
> indicated she was physically capable of participating but he felt she
> was limited due to her present medications. Unfortunately his
> dictation does not delineate what type of impairment she has
> related to her medications. There is no objective evidence in terms
> of psychological testing to indicate that there is cognitive
> impairment in file.

A217.

Plaintiff argues that Dr. Bonner's IME report found that Plaintiff was totally disabled and

therefore MetLife ignored his results and did not seek another IME. Plt. OB at 13, 18, 21.

However, Plaintiff mischaracterized Dr. Bonner's report. Dr. Bonner stated that Plaintiff was

disabled only from her own occupation. A144. Dr. Bonner clearly classified Plaintiff's physical

capacities as sedentary/light. A144.

Plaintiff also incorrectly claims Dr. Bonner opined that Plaintiff suffered from a cognitive

dysfunction and was totally disabled as a result.[4] Plt. OB at 8-9. Dr. Bonner, a Physical

---

[4] Plaintiff incorrectly states that her condition has not improved. Plt. OB at n. 6. In 1999, Dr.
Mousavi found that Plaintiff could not lift any weight and had depression. ML00147. In March
2001, Dr. Mousavi found that Plaintiff had no psychological problems. In 2002, Dr. Uphadhyay
found that Plaintiff could sit for six hours, stand and walk for two hours within an eight-hour
workday. ML00106.   Dr. Uphadhyay also found that Plaintiff could frequently lift up to 10
pounds and occasionally lift 11-20 pounds. Id. Plaintiff is also incorrect in suggesting that
MetLife has an obligation to show improvement in Plaintiff's condition to justify discontinuing

ME1\5591596.1

Medicine and Rehabilitation Specialist, opined only that Plaintiff had "some evidence of cognitive dysfunctions secondary to medications" ML00484. His opinion was not supported by any objective evidence and was only based on her subjective complaints. *Id.* Despite Plaintiff's complaints of cognitive dysfunction, Dr. Bonner concluded that Plaintiff could work in a sedentary/light capacity. *Id.* Indeed, the IPC considered and evaluated Dr. Bonner's report and determined that there was "no objective evidence" supporting a diagnosis of cognitive dysfunction much less total disability as a result of that diagnosis. A217.

There is also no evidence from Dr. Uphadhyay, Plaintiff's treating physician, that cognitive dysfunction renders Plaintiff totally disabled. In February 2002, Dr. Uphadhyay found that Plaintiff did not suffer from any psychological disorder that would interfere with her ability to work. ML00491-00492. Dr. Uphadhyay's most recent opinion stated Plaintiff was disabled only as a result of her "lumbosacral spine condition" and noted her medications but never said she was disabled as a result of cognitive dysfunction. A10-A11. Dr. Uphadhyay found she had been previously diagnosed with an anxiety disorder but again did not state it caused her any disability. *Id.* Dr. Uphadhyay's findings in the PCE are consistent with the FCE and the IME's finding that Plaintiff is able to work in a sedentary capacity. A54-A55.

In the absence of objective evidence of cognitive dysfunction, MetLife was within its discretion to find that Plaintiff was not disabled. *Cord*, 362 F. Supp. 2d at 486; *Hoover v. Metropolitan Life Insurance Company*, 2006 WL 343223, at *7-9 (E.D. Pa.). The burden is on the insured to establish total disability. *Cord*, 362 F. Supp. 2d at 486; *Hoover*, 2006 WL 343223,

---

her benefits. The court rejected a similar argument in *Carpenter v. Proctor & Gamble Disability Benefit Plan*, 2006 WL 860060, at *8 (M.D. Pa.). In *Carpenter*, the court held that when a claims administrator determines that an employee ceases to be eligible for benefits, the claim administrator is not required to obtain proof that a substantial change in the claimant's condition occurred after the initial determination of eligibility. *Id.*

at *8. MetLife afforded Plaintiff numerous opportunities to supplement the record with objective evidence supporting her claim of cognitive dysfunction and Plaintiff failed to do so. *Cord*, 362 F. Supp. 2d at 486; *see Hoover*, 2006 WL 343223, at *8.

In *Hoover v. Metropolitan Life Ins. Co.*, the court found that MetLife did not act improperly by relying on the absence of objective evidence in making its decision to deny benefits. 2006 WL 343223   Similarly, in *Cord v. Reliance Standard Life Insurance Co.*, the Plaintiff failed to provide evidence that cognitive dysfunction prevented her from working and the court found, even under a heightened standard of review, that the claim administrator acted within its discretion to terminate benefits. 362 F. Supp. 2d at 486. The findings in *Hoover* and *Cord* apply to the case at bar. MetLife is entitled to require Plaintiff to prove that cognitive dysfunction exists and that it renders her totally disabled. *Hoover*, 2006 WL 343223 at *8-9; *see also Schlegel v. Life Ins. Co. of North America*, 269 F. Supp. 2d 612 (E.D. Pa. 2003) (company properly relied on lack of objective evidence to support its decision to discontinue total disability benefits). In the absence of objective evidence of cognitive dysfunction, MetLife is within its discretion to find that Plaintiff is not totally disabled by cognitive dysfunction.

Plaintiff also argues that MetLife did not address the diagnosis of depression made by Dr. Mousavi in 1999 (Plf. OB at 9), some five years before the benefits were discontinued. Plaintiff fails to mention that in March 2001, Dr. Mousavi, changes his opinion and found that Plaintiff had no past or present psychological problems that would interfere with her ability to work. ML00502. In light of Dr. Mousavi and Dr. Uphadhyay's more recent opinions which indicate that Plaintiff no longer suffers from any psychological problems, it was reasonable for MetLife to disregard Dr. Mousavi's five-year old diagnosis.

11

Plaintiff also relies on Dr. Uphadhyay's bald assertion that the FCE was "inadmissible" because it does not "include or test the effects of prolonged sedentary activity... for more than a four hour period" rendering any reliance on the test improper. A13. Dr. Uphadhyay submitted no objective evidence supporting this opinion. Indeed, his assertion contradicts his own findings in the PCE's which consistently showed on three occasions between August 2002 and November 2003 that Plaintiff had the physical capacity to work an eight-hour day with certain limitations. A57. It was reasonable for MetLife to discredit Dr. Uphadhyay's opinion because he submitted no objective evidence supporting his opinion that the FCE was admissible or that Plaintiff was incapable of performing prolonged sedentary activity. *Cord*, 363 F. Supp. 2d at 486; *Hoover*, 2006 WL 343223 at *7-8. Because a significant amount of evidence contradicted his opinion, including his own findings in the PCEs, it was reasonable for MetLife to disregard his opinion. A11.

Plaintiff relies on *Lasser v. Reliance Standard Life Ins. Co.*, 344 F. 3d 381, 391 (3d Cir. 2003) for the proposition that it is MetLife's burden to produce scientific testimony to refute Dr. Upadhyay's opinion. Plt. OB at 17. Plaintiff's reliance on *Lasser* is misplaced. The court in *Lasser* stated that the insurer must support the basis of its objection only after the claimant makes a prima facie showing of disability through physician reports. 344 F. 3d at 391.

Here, Dr. Uphadhyay's report did not make a prima facie showing of disability because it provided no support for his opinion that the test was improper. As it is Plaintiff's burden to prove her disability, Dr. Uphadhyay should have presented evidence to support his position. Dr. Uphadhyay's opinion was also unreliable because it contradicted his own previous findings in the PCE's he conducted in which he concluded that Plaintiff was able to work an eight-hour day with restrictions. A57. Furthermore, the results of the FCE, which concluded that Plaintiff can

12

work in a sedentary capacity, are supported by the PCE's. The burden of proving disability lies with the insured. *Cord*, 362 F. Supp. 2d at 486. *Lasser* does not shift the burden to the claim administer when, as here, the plaintiff's treating physician's opinion is unsupported by objective evidence and contradicts his previous conclusions.

Plaintiff's reliance on *Byrom v. Delta Family Care Disability and Survivorship Plan*, 344 F. Supp. 2d 1163 (N.D. Ga. 2004) is also misplaced. In *Byrom*, the Court stated that the FCE provided some support for the denial of LTD benefits but that it was unreasonable to rely on this FCE to the exclusion of all other evidence, including a competing FCE, by an Aetna-selected specialist who performed an IME and an FCE. Treating physicians, as well as the doctor who performed the IME, concluded that plaintiff was totally disabled. *Byron,* 344 F.Supp.2d at 1184-85. Here, the FCE does not stand along. The FCE, PCE, IPC reports and the IME doctor all supported the conclusion that Plaintiff was able to work in a sedentary capacity. Many courts have upheld a company's reliance on FCE's to support the denial or discontinuance of benefits. *See* Def. OB at 13-18; *Donnell v. Metropolitan Life Ins. Co.,* 2003 WL 21655189, *aff'd,* 2006 WL 297314 (4th Cir.); *Manninger v. Hartford Ins. Co.,* 160 Fed.Appx. 578 (9th Cir. 2005); *Oody v. Kimberly-Clark Corp. Pension Sys.*, 2005 WL 2811825, at *4 (E.D. Tenn.) (FCE is "objective medical evidence [that] is more reliable and warrants more consideration than subjective statements...").

Plaintiff argues that MetLife acted arbitrarily and capriciously because it did not rely on her treating physician's opinion that she is totally disabled. (Plt. OB at 18). However, MetLife is neither required to "accord special weight to the opinions of a claimant's physician" nor may courts impose on the administrator a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation. *See Black & Decker Disability*

13

*Plan v. Nord,* 538 U.S. 822, 824 (2003); *see also* Def. OB at16-19. MetLife credited Dr.

Upadhyay's diagnosis, even though it considered his total disability opinion but rejected it in

favor of the mounting evidence, to the contrary the FCE, the IPC, the TPA, even the PCE's

completed by Dr. Upadhyay, as well as the nurse consultant's home visit.

Plaintiff also argues that the treating physician is entitled to deference because he

physically examined plaintiff whereas the IPC performed a record review. Plaintiff completely

ignores that Plaintiff was also seen by a nurse consultant in a home visit and that an FCE was

performed as well as a Transferable Skills Analysis and Market Survey ("TSA"). Plaintiff

wishes to isolate and argue one piece of evidence while ignoring other parts of the record. In

determining whether MetLife acted arbitrarily or capriciously, the Court considers the entire

administrative record. Furthermore, Plaintiff's argument that special deference should be

afforded to the physician who physically examined Plaintiff is meritless. Plt. OB at 12. The

claim administrator is entitled to rely on the opinions of the doctors it hires to review a

claimant's records even if the doctors do not conduct a physical exam. *DeLong v. Aetna Life Ins.*

*Co.,* 2006 WL 328348, at *5 (E.D Pa.); *Hoover,* 2006 WL 3431223, at *9. The claim

administrator is under no obligation to afford more weight or credibility to a physician's opinion

simply because the physician conducted a physical exam. *Id.*

In granting defendant's motion for summary judgment, the court in *Carpenter v. Proctor*

*& Gamble Disability Benefit Plan,* 2006 WL 860060 (M.D. Pa.), found that the plan trustees did

not act arbitrarily and capriciously in discontinuing plaintiff's benefits. In *Carpenter,* Plaintiff's

treating physician found plaintiff was totally disabled and submitted a physical capacities

statement indicating plaintiff could perform some activities. *Id.* at *8. The plan administrator

subsequently ordered an FCE which found plaintiff could perform duties in a light capacity

14

position in a eight-hour day.   The court determined that the plan administrator had no duty to accord special deference to the treating physician's opinions and that the PCE by plaintiff's treating physician and the FCE were consistent.

*Carpenter* is analogous to the case at bar.  Dr. Upadhyay's opinion was considered but so were the PCE's he completed in 2002 and late 2003 finding that plaintiff could sit, stand and walk during an eight-hour work day.  A1-A4; ML00101-00102.  The PCEs were consistent with the FCE, finding that she could work in a sedentary capacity.  A38-A48.  The FCE found she had excellent abilities in elevated work, rotational activities, crawling, kneeling and crouching, good abilities in forward bending, repetitive squat and sit tolerance.  A47.  It also found that she had excellent abilities in standing tolerance and walking and recommended alternating sitting with standing and walking.  A38; A47.  The PCE's and FCE were both consistent with the nurse consultant's home visit.  The IPC reviewed this and other information and concluded that there was no medical basis to restrict plaintiff from engaging in sedentary-to-light activities.  A208-A218.  All this constitutes more than substantial evidence upon which MetLife relied to discontinue plaintiff's benefits.  The decision clearly was rooted in objective medical evidence justifying the decision.

Plaintiff relies on *Vick v. Metropolitan Life Ins. Co.*, _____ F. Supp. 2d __, 2006 WL 416185 (E.D. Mich.).  In *Vick*, the court found that the two IPC reports were deficient for a number of reasons, including the failure to review certain critical medical records.  The court found that the defendant did not credit reliable evidence and credit the non-examining doctors over the four treating physicians with no valid explanation and no medical exam though allowed under the plan.  *Vick* is clearly inapplicable here since there was a medical exam in 2002 by Dr. Bonner finding Plaintiff could work in a sedentary/light capacity, ML00484, a home visit

15

wherein Plaintiff admitted that "mentally" she would like to work but she felt she was physically unable to do so despite her own doctor's physical capacities evaluation, ML00098-00101, an FCE finding she could work in a sedentary capacity, ML00092, and a TSA identifying specific jobs she could perform within her limitations. This information provides more than a scintilla of evidence justifying defendant's discontinuance of benefits.

Plaintiff's reliance on *Migliaro v. IBM Long Term Disability Plan*, 231 F. Supp. 2d 1167 (M.D. Fla. 2002)[5] is also misplaced. To begin with, *Migliaro* applied a heightened standard of review. Furthermore, the decision to deny benefits in *Migliaro* was based on findings by the IME and FCE that plaintiff was exaggerating her complaints of pain. The court found that the IME and FCE provider's opinions of exaggeration was subjective medical evidence. The FCE found that plaintiff could not work an eight hour day. Here, no one claimed that Plaintiff exaggerated her complaints. The FCE's objective results demonstrated Plaintiff could work an eight hours a day in a sedentary capacity. The *Migliaro* court did not state the FCE as a diagnostic tool, was subjective; the court stated that finding plaintiff exaggerated her complaints was a subjective finding by the provider. *Migliaro*, 231 F. Supp. 2d at 1180.

MetLife did not take the termination of Plaintiff's benefits lightly. For several years although there was evidence that Plaintiff was not disabled, MetLife afforded Plaintiff every opportunity to prove she was disabled from any work. It was not until after information was gathered from various sources, the PCE's of her own attending physician, the nurse consultant's home visit, the FCE and the evaluation by an independent physician consultant, did MetLife make the first, well-supported determination that Plaintiff was not disabled.

---

[5] Plaintiff states that the standard applied in *Migliaro* is different then that applied here. However, Plaintiff has conceded the applicable standard here is arbitrary and capricious based on discovery filed herein stating that IBM funds the plan.

16

There is substantial evidence to support MetLife's decision to terminate LTD benefits and the Court should grant summary judgment in favor of MetLife. It is Plaintiff's burden to prove her total disability and Plaintiff has failed to provide objective evidence supporting her claim of disability. *Abnathya v. Hoffman-LaRoche, Inc.*, 3 F.3d 40, 46 (3d. Cir. 1993) (Court reversed summary judgment for insured in part, because district court placed burden to prove disability on the plan.)

MEI\5591596.1

## CONCLUSION

Substantial evidence exists in the administrative record to support MetLife's decision to discontinue Plaintiff's long-term disability benefits. Consequently, that decision was not arbitrary and capricious. Therefore, this Court should deny Plaintiff's Motion for Summary Judgment.

MCCARTER & ENGLISH LLP

/s/ Paul A. Bradley
Paul A. Bradley (DE ID No. 2156)
Tanya Pino Jefferis (DE ID No. 4298)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware  19899
(302) 984-6300
Attorneys for Defendant
Metropolitan Life Insurance Company

Date:   April 13, 2006

18