IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GAIL KERNAGHAN, | ) | |
| | ) | C.A. No.  05-402 (GMS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, as fiduciary and administrator | ) | |
| of The IBM Long-Term Disability Plan, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERING BRIEF
IN OPPOSITION TO DEFENDANT'S MOTION
<u>FOR SUMMARY JUDGMENT</u>**

Rick S. Miller (#3418)
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899-1351
(302) 575-1555
Attorney for Plaintiff

Dated: April 17, 2006

# **TABLE OF CONTENTS**

<u>Page</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Statement of the Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . 1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        The Defendant's Decision to Terminate the
        Plaintiff's LTD Benefits is an Abuse of Discretion . . . . . . . .  4

        A.  Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . 4

        B.  ERISA Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.  Merits of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# <u>TABLE OF AUTHORITIES</u>

Page

## <u>Cases</u>

Blakely v. WSMW Indus., Inc.,
   2004 WL 1739717 (D. Del.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Blickenstaff v. R.R. Donnelly & Sons Co. Short Term Disability Plan,
   378 F.3d 669 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Borys v. Metropolitan Life Ins. Co.,
   2005 WL 1037469 (S.D. Ohio) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Calvert v. Firstar Finance, Inc.,
   409 F.3d 286 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Donnell v. Metropolitan Life Ins. Co.,
   2006 WL 297314 (4th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gannon v. Metropolitan Life Ins. Co.,
   360 F.3d 211 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hoover v. Metropolitan Life Ins. Co.,
   2006 WL 343223 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Klecher v. Metropolitan Life Ins. Co.,
   2005 WL 1337509 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lasser v. Reliance Standard Life Ins. Co.,
   344 F.3d 381 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Maninger v. Hartford Ins. Co.,
   160 Fed. Appx. 578 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATEMENT OF THE NATURE AND STAGE
## <u>OF THE PROCEEDINGS</u>

Defendant Metropolitan Life Insurance Company ("defendant" or

"MetLife") filed its motion for summary judgment on April 3, 206.  (D.I.

23). This is plaintiff Gail Kernaghan's ("plaintiff") answering brief in

opposition to defendant's motion for summary judgment.

## <u>SUMMARY OF THE ARGUMENT</u>

The defendant is not entitled to summary judgment because its decision to terminate the plaintiff's long-term disability ("LTD") benefits was not supported by substantial evidence.  The medical evidence in the record demonstrates that the plaintiff continues to be disabled from any gainful occupation.  Even if required, objective evidence exists that the plaintiff suffers from cognitive dysfunction secondary to her use of narcotic pain medications.

## STATEMENT OF FACTS

The plaintiff relies on the Statement of Facts contained in her Opening Brief in Support of Plaintiff's Motion for Summary Judgment, which is incorporated herein by reference.  (D.I. 20).

**ARGUMENT**

**THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS DECISION TO TERMINATE THE PLAINTIFF'S LTD BENEFITS IS AN ABUSE OF DISCRETION.**

   A.  **Standard for Summary Judgment.**

Plaintiff relies on the Standard for Summary Judgment contained in her Opening Brief in Support of Her Motion for Summary Judgment. (D.I. 20).

   B.  **ERISA Standard of Review.**

Plaintiff relies on the ERISA Standard of Review contained in her Opening Brief in Support of Her Motion for Summary Judgment. (D.I. 20).

   C.    **The Defendant's Termination of the Plaintiff's LTD Benefits was an Abuse of Its Discretion.**

In this brief, plaintiff will attempt to not repeat the arguments set forth in her Opening Brief in Support of Her Motion for Summary Judgment, which is incorporated herein by reference. ("Pl. Op. Br.")(D.I. 20).  This brief will attempt to focus on responding to the arguments made by the defendant in its Opening Brief in Support of its Motion for Summary Judgment.  However, some overlap will be unavoidable.

The defendant argues that there is substantial evidence to support its

4

decision that the plaintiff is capable of performing sedentary work on a full-time basis. First defendant points to the FCE as providing a basis for its decision. The plaintiff has already argued that the FCE is a flawed test in that it provides only a "snap shot" of the plaintiff's physical abilities and can not measure the impact of work on the plaintiff over a period of time. (Pl. Op. Br. at 18-20). The FCE administered in this case shows the impact of just a single day's activity on the plaintiff. On day 1 of the FCE, the plaintiff reported pain at level 5, which increased to level 8 on day two. (ML89,91). The provider of the FCE found the plaintiff's pain behavior consistent (ML91) a finding he shared with the IME doctor, Dr. Bonner, who concluded that the plaintiff's complaints correlated to the objective findings. (ML484). Neither the provider of the FCE nor Dr. Bonner found any reason to doubt the plaintiff's pain complaints. If one day of light activity caused such a marked increase in the plaintiff's pain, it is unreasonable to assume she can return to work on a full-time basis.

The FCE provides a measurement of tasks the plaintiff can physically accomplish within a specific time frame. Here, there is no reason to doubt the accuracy of the FCE because the plaintiff gave a maximum effort and because the FCE findings are consistent with the findings of the physicians

5

who have examined the plaintiff.  For example, the FCE concludes the plaintiff can sit between 1/3 and 2/3 of an 8-hour day (ML92) which is actually a bit less than Dr. Upadhyay's estimate of 6 hours per day. (ML106).

The problem with the FCE is that it does not address the fact that the plaintiff is, in the words of Dr. Bonner, "significantly limited" by her pain medications.  (ML484).  These limitations are not physical, in fact the pain medication is what enables the plaintiff to function physically.  The limitations are on a mental or cognitive level and deal with the plaintiff's ability to concentrate and to maintain focus and attention.[1]  Such limitations are particularly significant where, as here, the positions the vocational expert has identified are management positions which require a great deal of mental acuity, interpersonal interaction, and analytical skills.  (ML41).  Indeed, for the types of jobs identified by the vocational expert, the plaintiff's cognitive difficulties are far more troublesome than her physical limitations.

The defendant next points to the IPC's report.  As the plaintiff argued in her Opening Brief, there are significant reasons to discount the IPC's

---

[1]The FCE provider, for example, noted that the plaintiff occasionally needed verbal cueing (ML91).

report including a) the IPC never examined the plaintiff; b) the IPC was hired by the defendant to state a conclusion that the defendant wanted; c) the IPC only conducted a record review; d) the IPC does not specifically refute the findings of any of the examining or treating physicians; e) the IPC does not give an opinion as to the accuracy of the FCE, or the plaintiff's use of pain-killers; and f) the IPC concludes only that the plaintiff can participate in daily living activities of a sedentary nature, the IPC does not opine that the plaintiff can work full-time in the type of managerial positions identified by the defendant for the plaintiff.

Moreover, the defendant fails to provide any differential analysis of the opinions of the IPC and the examining and treating physicians. The defendant ordered the IPC report only after it had already made its decision to terminate the plaintiff's benefits. The defendant was looking for a "rubber stamp" for its decision, and the IPC obliged the defendant.[2] The defendant saw no need to perform any analysis of the findings of the doctors

---

[2]One of the puzzling aspects of the defendant's handling of this claim is why the defendant did not simply send the results of the FCE to Dr. Bonner, who had the benefit of already having examined the plaintiff, and ask for an updated opinion. Having seen the plaintiff first-hand, Dr. Bonner's file review would have more meaningful than that conducted by the IPC. The obvious conclusion to be drawn is that the defendant was afraid Dr. Bonner would have maintained his conclusion that the plaintiff was disabled because that conclusion was not based on an evaluation of the plaintiff's functional capacity but rather on her cognitive dysfunction.

and state reasons and bases for crediting one opinion over the other.  The

defendant never explains, for example, why the IPC's conclusions (to the

extent the defendant believes they support the defendant's decision) are

more valid than those of Dr. Bonner, who was hired to examine the plaintiff.

Predictably, the defendant is fond of repeating the decision of the

Supreme Court in <u>Nord</u> that it need not give controlling weight to the

opinions of treating doctors.  But as this Court has explained, <u>Nord</u> is not a

license to reject the conclusions of treating (and in this case also IME)

doctors out-of-hand.  <u>See</u> <u>Blakely v. WSMW Indus., Inc.</u>, 2004 WL 1739717

(D. Del.) at *10.  The defendant must provide an objective basis to credit the

opinions of the non-treating doctors over those of the treating doctors.  <u>Id.</u>

(citing <u>Black & Decker Dis. Plan v. Nord</u>, 538 U.S. 822, 834 (2003)).  The

defendant has completely failed this task.   There is simply no reason (let

alone an objective one)stated why      the IPC's decision is more credible

than those of the IME doctor and the plaintiff's treating physicians.

In its brief (although not in its benefits decisions), the defendant tries

to discredit the opinion of its IME doctor, Dr. Bonner, claiming that Dr.

Bonner only found that the plaintiff was disabled from her own occupation.

The defendant argues that Dr. Bonner does not state that she can not perform

8

the sedentary tasks of the jobs found by the vocational expert. That argument, however, is based on the fallacy that the physical requirements of the plaintiff's former job are any different than the jobs located by the vocational expert. The fact is that the plaintiff's former occupation as a programming manager was a white collar, sedentary job, just like the management positions identified by the vocational expert. She was not laying bricks for a living. The physical requirements of the position are minimal, but the mental and inter-personal requirements are significant. Dr. Bonner's conclusion that the plaintiff was disabled from her former occupation can only mean that she is also disabled from the positions identified by the defendant's vocational expert.

The defendant cites Donnell v. Metropolitan Life Ins. Co., 2006 WL 297314 (4th Cir.) to support its case.[3]  The facts are easily distinguishable. In Donnell, the medical evidence, even that submitted by the treating doctors, did not establish that the plaintiff suffered from a disabling condition. Id. at *4.  Moreover, although an FCE was performed, there was no medical evidence in the file challenging its reliability under the facts of

---

[3]The defendant's brief appears to cite to the District Court decision in Donnell, however a review of the Westlaw cite provided by the defendant shows that particular decision relates to discovery. Therefore, the plaintiff concludes that the defendant relies on the Sixth Circuit opinion found at 2006 WL 297314.

that plaintiff's condition, and there was no medical evidence of cognitive dysfunction.  Id.  Here, there is no medical conclusion in the record other than that the plaintiff suffers from a chronic disabling condition that is managed with narcotics and other medications that cause her cognitive dysfunction.  Furthermore, there is an un-refuted medical opinion in the record that given the facts of this plaintiff's particular disability, the FCE is an inappropriate indicator of her ability to hold a full-time position.

The defendant also cites Maninger v. Hartford Ins. Co., 160 Fed. Appx. 578 (9th Cir. 2005) and Blickenstaff v. R.R. Donnelly & Sons Co. Short Term Disability Plan, 378 F.3d 669 (7th Cir. 2004).  These cases are likewise unpersuasive.  The Maninger decision does not expound on the medical evidence in the record, so it is impossible to know whether the facts of that case are similar to this case or not.  The Blickenstaff case has very different facts.  Unlike this case, the plaintiff's treating physicians could not provide definitive diagnoses of her allegedly disabling condition.  378 F.3d at 680.  Furthermore, the treating physicians agreed with the findings of the FCE that the plaintiff could perform a light duty job.  Id. at 681.  In the case at bar, the physicians have provided a firm diagnosis based on objective medical evidence and the treating and examining physicians have concluded

10

that the plaintiff is disabled from any occupation.

Next, the defendant relies on Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211 (1st Cir. 2004), but again there are significant factual differences. In Gannon, the FCE stated that the plaintiff did not put forth her maximum effort and that her performance was inconsistent. The FCE concluded that the plaintiff's pain was exaggerated. Id. at 213. In contrast, neither the FCE nor the examining doctors have found Kernaghan's pain behavior to be inconsistent with the objective medical evidence, or to be exaggerated in any manner. Furthermore, unlike the case at bar, there was no evidence of cognitive dysfunction in Gannon, and there was video surveillance of the plaintiff showing behavior inconsistent with the plaintiff's complaints. Id. at 214-215. In this case there is evidence of cognitive dysfunction and the video surveillance did not reveal any inconsistent behavior on the part of the plaintiff.

The case of Klecher v. Metropolitan Life Ins. Co., 2005 WL 1337509 (S.D.N.Y.) is also unhelpful to the defendant. In that case, the employee's subjective complaints were found to be inconsistent with the objective findings of the IME doctor. Id. at *4. That conclusion has never been made by any physician who has examined or treated Kernaghan. There was also

11

video surveillance in <u>Klecher</u> which called that plaintiff's claims into question. Not so here.

The defendant also relies on <u>Hoover v. Metropolitan Life Ins. Co.</u>, 2006 WL 343223 (E.D. Pa.) again in the face of various factual differences. In <u>Hoover</u>, the plaintiff's benefits were terminated because she was not under the regular care of an appropriate health care provider. <u>Id.</u> at *6. Kernaghan, in contrast, has consistently been under the care of a pain management specialist. The <u>Hoover</u> plaintiff also had a lessening of her physical symptoms. <u>Id.</u> There is no medical evidence in Kernaghan's file that her symptoms have gotten any better over the years. The <u>Hoover</u> plaintiff also failed to provide any medical evidence to support her complaints of cognitive impairment and fatigue. <u>Id.</u> at *8. In this case, we have an affirmative diagnosis by the IME doctor of cognitive dysfunction secondary to pain medication use which, as argued more fully below, is objectively supported by reference to Kernaghan's pain management regimen.

The defendant argues that there is no objective support in the record for a finding that the plaintiff suffers from cognitive dysfunction. This is despite the fact that the medical doctors who have actually examined and

treated the plaintiff have all concluded otherwise.  The defendant believes that the IPC's report is a mandate for requiring objective evidence.  However, a close reading of the IPC's report undermines the defendant's reliance on it.

The IPC does not state that the plaintiff does not suffer from cognitive dysfunction.  Instead, the IPC writes,

> Independent medical exam by Dr. Bonner in 04/2002 indicated she was physically capable of participating in sedentary-to-light activity but he felt she was limited to her present medications.[4] Unfortunately, his dictation does not delineate what type of impairment she has related to her medications.  There is no objective evidence in terms of psychological testing to indicate that there is cognitive impairment in file.  (ML718).

The IPC does not refute Dr. Bonner's diagnosis.  The IPC does not state that Dr. Bonner is wrong in his assessment.  The IPC does not challenge Dr. Bonner or the plaintiff's treating physicians in the medication regimen they have prescribed for the plaintiff.  All the IPC states is that no psychological testing has been done.

But psychological testing is not the only objective way to arrive at a diagnosis.  The fact is that there is objective evidence which supports the

---

[4] Dr. Bonner actually stated the plaintiff was "significantly" limited by her medications. (ML484).

13

plaintiff's claim. The diagnosis is "cognitive dysfunction secondary to medication." The etiology is known. The plaintiff's medications are causing her problems.[5] It is undisputed that the plaintiff is taking several strong medications including narcotic pain killers to cope with her injury. One need only consult the known side effects of the drugs she has taken to determine whether there is "objective" evidence to support her subjective complaints.

At the time of Dr. Bonner's examination, the plaintiff was taking Zanaflex, a muscle relaxant, and Neurontin, a seizure medicine, and Vicodin, a pain-killer.[6] According to Drugs.com, a well-known drug information website,[7] Vicodin does not only have its own list of severe side effects including "dizziness, tiredness or lightheadedness" but it also can cause a severe reaction when it is combined with muscle relaxants and seizure medicines :

> Vicodin may increase the effects of other drugs that cause
> drowsiness, including antidepressants, alcohol, antihistamines,

---

[5]Dr. Bonner is not the only physician who arrived at this conclusion. The treating doctor, Dr. Upadhyay stated definitively "medications will cause sedation and [decreased] concentration." (ML492).

[6]According to Dr. Uphadhyay, she has since switched to OxyContin, a pain killer, and Baclofen, a muscle relaxant. (ML10).

[7]See http://www.drugs.com/vicodin.html.

14

> pain relievers, anxiety medicines, *seizure medicines*, and *muscle relaxants*. Dangerous sedation, dizziness, or drowsiness may occur if Vicodin is taken with any of these medications.

A review of the interaction warnings for Neurontin

(http://www.drugs.com/neurontin.html) and Zanaflex

(http://www.drugs.com/zanaflex.html) confirm that these drugs not only

cause sedation and drowsiness on their own, but are exacerbated by

interaction with each other and painkillers.   The plaintiff has since switched

to different drugs including Baclofen, a muscle relaxant, and OxyContin, a

narcotic pain killer.  But these drugs have the same side effects and

interaction warnings.  (See http://www.drugs.com/baclofen.html and

http://www.drugs.com/oxycontin.html).

Perhaps the reason why neither Dr. Bonner nor the plaintiff's treating

physicians have seen the need to order "psychological" testing to confirm

the plaintiff's complaints is because such testing is completely unnecessary.

The physicians who have examined the plaintiff, and who treat her pain, and who treat her pain,

know that her complaints are the common side effects of the common drugs

she takes.  The better question is why neither the defendant nor the IPC the

defendant paid to perform a file review spent the fifteen minutes that it took

plaintiff's counsel to learn about these medications and their effects on the

15

patient.  This is information that was readily available to the defendant and the IPC.  Objectivity is a two way street.  The defendant demands objective evidence of disability, and yet the defendant approaches the plaintiff's disability from a completely subjective viewpoint by picking and choosing what evidence it will credit based upon its pre-determined result.

The plaintiff takes very strong medicines for pain management which cause sedation and cognitive dysfunction.  There is no medical evidence in the record that calls her pain management regimen into question.[8]  Not even the IPC questions the need for the pain medications the plaintiff takes.  As a result of these pain medications, the plaintiff is, in the words of the IME doctor, Dr. Bonner, "significantly limited."  This raises the rhetorical question of whether the vocational expert asked the potential employers if a person who experiences chronic sedation, drowsiness and cognitive dysfunction and who would be constantly under the influence of narcotics would be qualified to hold down one of their management positions.  Obviously the question was not asked, and if it had been, the answer would have been "no."

---

[8]Dr. Bonner stated, "[p]resently, her objective findings do correlate with her subjective complaint and she was a credible historian with no evidence of inappropriate pain behavior." (ML484).

16

Finally, the defendant misunderstands its role in adjudicating ERISA claims. The defendant believes it can sit back and do nothing and make the plaintiff prove she has cognitive dysfunction with whatever evidence the defendant deems worthy of acceptance. But as the Third Circuit explained in <u>Lasser v. Reliance Standard Life Ins. Co.</u>, 344 F.3d 381 (3d Cir. 2003), the burden shifts to the insurer once the plaintiff makes a *prima facie* showing of disability through physician reports. <u>Id.</u> at 391. <u>See also</u> <u>Borys v. Metropolitan Life Ins. Co.</u>, 2005 WL 1037469 (S.D. Ohio) at *9 (finding that when faced with inconsistent or inadequate medical evidence insurer has a duty to order appropriate testing to support its conclusion to decline benefits). In this case, the plaintiff met her burden of proof on this issue by presenting physician reports, one of which was an IME ordered by the defendant, establishing the cognitive dysfunction. If the defendant chooses not to believe that diagnosis, it must act affirmatively to disprove it. The defendant has failed to do that. The best the defendant can do is claim that the plaintiff's problems have not been confirmed through psychological testing even though the problems are well-known side effects of the well-known drugs the plaintiff takes. The defendant has the ability under the Plan to order additional examinations or testing to attempt to refute the findings

17

of the physicians who have seen the plaintiff. Instead, it chose to rely on a file review which calls into question whether its benefits determination was thorough and accurate. <u>See</u> <u>Calvert v. Firstar Finance, Inc.</u>, 409 F.3d 286, 295 (6th Cir. 2005). To her credit, the IPC did not question the plaintiff's credibility or indulge in idle speculation about the plaintiff's motives. Thus, it is clear that the IPC understood her role in the process, which was <u>not</u> to offer a diagnosis contrary to those offered by Dr. Bonner and the treating physicians. But where does this leave the defendant? It leaves the defendant with un-refuted and objectively reasonable medical diagnoses of cognitive dysfunction secondary to pain medications. Without a contrary diagnosis in the record, the defendant has nothing to choose from. There is not even a scintilla of evidence to challenge the diagnosis, let alone substantial evidence. Because the plaintiff's cognitive dysfunction was not factored into the decision to terminate her LTD benefits, that decision must be reversed and her benefits re-instated.

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons set forth in plaintiff's Opening Brief in Support of Her Motion for Summary Judgment, plaintiff respectfully requests that the Court deny the defendant's motion for

18

summary judgment, grant the plaintiff's motion for summary judgment and find that the defendant abused its discretion in terminating the plaintiff's LTD benefits.

Respectfully submitted,

FERRY, JOSEPH & PEARCE, P.A.

By:  /s/Rick S. Miller
     Rick S. Miller (#3418)

Dated: April 17, 2006

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies of the foregoing

Plaintiff's Answering Brief in Opposition to Defendant's Motion for

Summary Judgment were served on April 17, 2006, upon the following

counsel of record in the manner indicated:

**By Hand:**

Tanya Jefferis, Esquire
McCarter & English, LLP
919 N. Market Street, Suite 1800
Wilmington DE 19801

Under penalty of perjury, I declare the foregoing is true and correct.

/s/Rick S. Miller_____
Rick S. Miller (#3418)