IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GAIL KERNAGHAN, ) | |
| ) | C.A. No. 05-402 (GMS) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY, as fiduciary and administrator ) | |
| of The IBM Long-Term Disability Plan, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY BRIEF
IN SUPPORT OF HER MOTION
FOR SUMMARY JUDGMENT**

        Rick S. Miller (#3418)
        FERRY, JOSEPH & PEARCE, P.A.
        824 Market Street, Suite 904
        P.O. Box 1351
        Wilmington, DE 19899-1351
        (302) 575-1555
        Attorney for Plaintiff

Dated: April 20, 2006

# TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## **TABLE OF AUTHORITIES**

Page

Carpenter v. Proctor & Gamble Dis. Ben. Plan,
    2006 WL 860060 (M.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# ARGUMENT

## THE DEFENDANT'S DECISION TO TERMINATE THE PLAINTIFF'S LTD BENEFITS IS AN ABUSE OF DISCRETION.

In its Answering Brief, the defendant takes great pains to spin Dr. Bonner's report as a statement supporting the conclusion that the plaintiff can work full-time in a sedentary capacity. But Dr. Bonner's report says no such thing. Dr. Bonner's conclusion was that the plaintiff was <u>physically</u> capable of performing sedentary work, but that she was "significantly limited" by her cognitive dysfunction caused by the narcotics she takes on a daily basis to control her pain. (ML484). Dr. Bonner understands what the defendant and its IPC must know but will not admit: a person's physical capabilities are irrelevant if their mind is not functioning properly. This is especially so where, as here, the vocational expert has identified professional careers that rely much more on the functioning of the plaintiff's mind than her ability to sit in a chair.

The defendant's desire to distance itself from Dr. Bonner's findings (and Dr. Bonner is not alone, Dr. Upadhyay agrees - ML492) is understandable. Dr. Bonner's conclusions undermine the defendant's entire case. The fact that Dr. Bonner was an IME doctor selected by the defendant,

1

in addition to adding some irony to the issue, should make his findings all the more credible. Yet, the defendant uses Dr. Bonner's findings selectively. The defendant believes Dr. Bonner is perfectly capable of rendering an opinion as to the plaintiff's physical functioning but that he is incapable of expressing a reliable opinion on the side effects of the medications she takes. For that opinion, the defendant chooses to defer, ultimately, to a nurse who did not examine the plaintiff,[1] based solely on the fact that the nurse did not mention whether she observed any cognitive disabilities. One can not argue that the IPC concludes otherwise because she has not challenged the diagnoses of Drs. Bonner and Upadhyay, notwithstanding the fact that she knew what medications the plaintiff was taking. All the IPC did was decry the lack of "psychological tests" and note that the nurse did not "delineate" any evidence of cognitive impairment. (ML718).

Accordingly, the evidence in this case fairly boils down to the opinions of physicians who have examined the plaintiff and concluded that she can not work because of her pain medications, and the observations (or more appropriately, the lack thereof) of a nurse who did not examine the

---

[1] The nurse who visited the plaintiff in 2004 performed only an "interview" of her. (ML97-101).

plaintiff.  The defendant chose the latter, and the plaintiff submits that choice was completely unreasonable and unsupportable by the record.

In its Answering Brief, the defendant relies on the case of <u>Carpenter v. Proctor & Gamble Dis. Ben. Plan</u>, 2006 WL 860060 (M.D. Pa.).  In <u>Carpenter</u>, the Court upheld the use of the FCE to support a finding that the plaintiff was not totally disabled.  The defendant's reliance on <u>Carpenter</u> points out the infirmity in its analysis of the facts of the case at bar.  As the <u>Carpenter</u> Court pointed out, that case "principally involves a difference of opinion among medical experts" regarding the degree of that plaintiff's disability.  <u>Id.</u> at *8.

The case at bar is different because the FCE is not challenged by the plaintiff on the basis that it is inconsistent with the findings of the examining physicians.  To the contrary, all the FCE did in this case was confirm the functional evaluations of both Drs. Bonner and Upadhyay.  In reality, the FCE is only cumulative evidence.  The problem for the defendant is what the FCE is evidence of.  As Dr. Upadyhay explains, the FCE can not measure the day-in and day-out wear and tear of full-time employment on a disabled body.  And furthermore, the FCE proves nothing about the cognitive difficulties present in a woman who takes narcotics and other medicines on a

3

daily basis simply to get through the day.  The FCE does not, and can not, contradict these critical findings of the physicians who have examined the plaintiff.

The findings of Dr. Bonner and Dr. Upadhyay also undermine the basis of the report prepared by the vocational expert.  There is no evidence the vocational expert reviewed the records of these doctors before she prepared her report.  The only records the vocational expert reviewed were the nurses' assessment and the FCE.  (ML26).  Therefore, the vocational expert assumed that the plaintiff was intact from a cognitive standpoint and was cleared for sedentary work.  Had the vocational expert considered Dr. Bonner's assessment that the plaintiff was "significantly limited" by her use of narcotic pain medications, it is very doubtful that she would have concluded that the plaintiff could work as, for example, a "Quality Team Leader/Department Manager" for Bank of America where she would need, among other things, "action-oriented and strong leadership and implementation skills."  (ML29).

## **CONC LUSION**

For the foregoing reasons, and those set forth in the plaintiff's Opening Brief in Support of Her Motion for Summary Judgment (D.I. 21) and her Answering Brief in Opposition to the Defendant's Motion for Summary Judgment (D.I. 41), plaintiff respectfully requests that the Court grant plaintiff's motion for summary judgment and find that the defendant abused its discretion in terminating the plaintiff's LTD benefits.

                                                Respectfully submitted,

                                                FERRY, JOSEPH & PEARCE, P.A.

                        By:   /s/Rick S. Miller
                                Rick S. Miller (#3418)

Dated: April 20, 2006

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that two copies of the foregoing Plaintiff's Reply Brief in Support of Her Motion for Summary Judgment were served on April 20, 2006, upon the following counsel of record in the manner indicated:

**By Hand:**

Tanya Jefferis, Esquire
McCarter & English, LLP
919 N. Market Street, Suite 1800
Wilmington DE 19801

Under penalty of perjury, I declare the foregoing is true and correct.

/s/Rick S. Miller
Rick S. Miller (#3418)