IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GAIL KERNAGHAN, : 
  : 
  Plaintiff, : C.A. No. 05-402 (GMS)
  : 
v. : 
  : 
METROPOLITAN LIFE INSURANCE : 
COMPANY, as fiduciary and administrator of The : 
IBM Long-Term Disability Plan, : 
  : 
  Defendant. : 

**DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S REPLY
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

McCarter & English LLP

Paul A. Bradley (DE ID No. 2156)
Tanya Pino Jefferis (DE ID No. 4298)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware 19899
(302) 984-6300
Attorneys for Defendant
Metropolitan Life Insurance Company

Date: April 24, 2006

ME1\5605901.1

# TABLE OF CONTENTS

**TITLE** **PAGE**

TABLE OF CITATIONS ................................................................................................................ ii

ARGUMENT .................................................................................................................................. 1

    A.    SUMMARY JUDGMENT STANDARD ......................................................................... 1

    B.    ERISA STANDARD OF REVIEW ................................................................................ 1

    C.    PLAINTIFF HAS FAILED TO SHOW THAT METLIFE'S DECISION TO TERMINATE PLAINTIFF'S BENEFITS IS NOT SUPPORTED BY SUBSTANTIVE EVIDENCE IN THE ADMINISTRATIVE RECORD ................................................................................ 1

        1.    MetLife Did Not Abuse Its Discretion In Finding That Plaintiff Is Not Disabled Due to Cognitive Dysfunction .............................. 1

        2.    The Plaintiff Fails To Show That The FCE Does Not Support MetLife's Finding That Plaintiff Is Not Totally Disabled ............................... 5

        3.    Plaintiff Has Failed To Show That MetLife's Reliance On The IPC Report Was An Abuse Of Discretion ....................................................... 8

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Federal Case Law**

*Black & Decker Disability Plan v. Nord,*
   538 U.S. 822 (2003) ............................................................................................... 5

*Blackely v. WSMW Indus., Inc.,*
   2004 WL 1739717 (D.Del.) ................................................................................... 5

*Cord v. Reliance Standard Life Insurance Co.,*
   362 F. Supp. 2d 480 (D. Del. 2005) ................................................................... 1, 6

*DeLong v. Aetna Life Ins. Co.,*
   2006 WL 328348 (E.D. Pa.) ................................................................................... 8

*Gannon v. Metropolitan Life Insurance,*
   360 F.3d 211 (1st Cir. 2004) .................................................................................. 8

*Hoover v. Metropolitan Life Insurance Company,*
   2006 WL 343223 (E.D. Pa.) ............................................................................... 8, 9

*Hyatt, II v. Unum Life Insurance Co. of America,*
   2001 WL 826551 (D.Del.) ..................................................................................... 7

*O'Reilly v. Rutgers,*
   2006 WL 141895 (D.N.J.) ..................................................................................... 1

ME1\5605901.1

## ARGUMENT

### A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted when there are no genuine material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When, as here, there are cross motions for summary judgment and the material facts are not in dispute, the issue presented is purely legal. *O'Reilly v. Rutgers*, 2006 WL 141895 at *3 (D.N.J.) Here, the undisputed facts in the administrative record support the conclusion that MetLife's decision to discontinue Plaintiff's LTD benefits was not arbitrary or capricious.

### B. ERISA STANDARD OF REVIEW

The parties agree that in this ERISA case, the court should review MetLife's decision to discontinue benefits under an arbitrary and capricious standard. *Cord v. Reliance Standard Life Ins. Co.*, 362 F. Supp. 2d 480, 484 (D. Del 2005); Plt. OB at n.4; Plt. AB at 4. The Plaintiff concedes that the heightened standard of review does not apply. Plt. OB at n. 4; Plt. AB at 4.

### C. PLAINTIFF HAS FAILED TO SHOW THAT METLIFE'S DECISION TO TERMINATE PLAINTIFF'S BENEFITS IS NOT SUPPORTED BY SUBSTANTIVE EVIDENCE IN THE ADMINISTRATIVE RECORD

In addition to the reasons stated below, MetLife incorporates by reference its arguments submitted to the Court in its Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment.

#### 1. MetLife Did Not Abuse Its Discretion In Finding That Plaintiff Is Not Disabled Due To Cognitive Dysfunction

Plaintiff relies heavily on the fact that MetLife did not find Plaintiff to be disabled due to cognitive dysfunction to support her claim that the termination of her benefits was arbitrary and capricious. Despite that Plaintiff has <u>not</u> had a single diagnostic test or exam performed on her cognitive function and not a single physician has observed any evidence of cognitive

1

dysfunction, Plaintiff repeatedly argues that there is "objective medical evidence" that she is disabled due to cognitive dysfunction. Plt. AB at 10, 11, 12, 13, 14. Saying it does not make it so. The fact of the matter is that from an extensive administrative record consisting of approximately 10 years worth of reports, opinions and evaluations from multiple doctors, nurses, physical therapists and other professionals, Plaintiff's evidentiary support for her claim of cognitive dysfunction primarily consists of a single comment made by Dr. Bonner, the Independent Medical Examiner who submitted an opinion to MetLife after examining Plaintiff in 2001, three years before Plaintiff was found to no longer be disabled.[1]

Dr. Bonner, a physical therapy physician, did not conduct an examination of Plaintiff's cognitive function. A143-144. Dr. Bonner conducted a physical exam which consisted of a verbal interview of the Plaintiff and an exam of her head, neck, spine, arms, legs, knees and ankles. *Id.* at A143 Dr. Bonner also reviewed a number of medical records. *Id.* at A144. Dr. Bonner made a number of observations of Plaintiff's physical condition as they relate to his exam of the different parts of her body and ultimately classified Plaintiff's physical capacity as sedentary/light. *Id.* Dr. Bonner qualified Plaintiff's physical capacity by stating that it was "significantly limited" by her medications. *Id.* Plaintiff argues that this is objective evidence of her disabling cognitive dysfunction. Plt. AB at 6.

Importantly, Dr. Bonner did not say that Plaintiff was <u>disabled</u> by her medications. Surely a physical therapy physician appreciates the difference between "significantly limited" and "disabled" and Dr. Bonner would have said Plaintiff was disabled if that was his conclusion.

---

[1] Plaintiff argues that MetLife attempts to spin Dr. Bonner's report as a statement supporting its decision to terminate Plaintiff's benefits. Plt. Reply Brief at 1. MetLife did not rely on Dr. Bonner's opinion when it decided to terminate Plaintiff's benefits. Dr. Bonner's opinion was rendered three years before MetLife's decision to terminate. In making its decision to terminate

2

Dr. Bonner did not even explain the type of limitations from which Plaintiff suffered, i.e., memory-loss, fatigue, disorientation, etc. Dr. Bonner's statement can hardly be considered a diagnosis of cognitive dysfunction when it does not specify the type of dysfunction. Obviously Dr. Bonner believed that the side-effects of the drugs impacted Plaintiff's physical capacity to a certain degree but he clearly did not believe that the drugs incapacitated Plaintiff to the degree that rendered her disabled.

Even assuming, *arguendo*, that Dr. Bonner intended to opine that Plaintiff was disabled by her medications, his opinion was unreliable because it was not based on any tests, evaluations or observations that he noted in his report. In other words, Dr. Bonner's opinion was not based on any objective evidence. His opinion could only have been based on Plaintiff's subjective complaints of her medications. A reliable diagnosis of any condition must be based on something more than a patient's subjective complaints. Dr. Bonner's opinion hardly qualifies as diagnosis of cognitive dysfunction let alone a firm or affirmative diagnosis as it is characterized by Plaintiff. Plf. AB at 10, 11, 14, 18.

Plaintiff also relies on Dr. Uphadhyay's opinion that her "medications will cause sedation and decreased concentration". Plt. AB at n. 5 (citing ML 492). Sedation and decreased concentration do not equate to total disability. As a pain management specialist, surely Dr. Uphadhyay is fully aware of the side-effects of Plaintiff's pain medications and could recognize if the side-effects are disabling to her. *Cf.* Plt. AB at 14. In the same report in which he stated that her medications will cause sedation and decreased concentration, Dr. Uphadhyay also stated that Plaintiff did not suffer from any present "psychological problem that might interfere with

---

Plaintiff's benefits, MetLife relied on the FCE, the home visit, the IME and Dr. Uphadhyay's PCEs.

3

patient's ability to work." ML00492. Clearly Dr. Uphadhyay did not believe that the level of sedation and decreased concentration which Plaintiff experienced was significant enough to interfere with her ability to work. As such, Dr. Uphadhyay's opinion did not indicate that Plaintiff was disabled by cognitive dysfunction. Dr. Uphadhyay's opinion that Plaintiff was disabled was based entirely on her physical capacity. Accordingly, Plaintiff's argument that the "known side effects of the drugs [Plaintiff] has taken" constitute objective evidence to support her subjective complaints of cognitive dysfunction fails. Plt. AB at 14.

Dr. Uphadhyay has never stated that Plaintiff is cognitively disabled by the side-effects of her medication. Even in his October 14, 2004 report, upon which Plaintiff heavily relies to criticize the FCE (Plt. AB at 10), Dr. Uphadhyay stated that Plaintiff is "unable to work in any capacity <u>due to her lumbar spine condition</u>". A13. He did not say that the side-effects of her pain medications render her disabled. Furthermore, Dr. Uphadhyay does not, as Plaintiff seems to suggest, criticize the FCE because it does not test Plaintiff's cognitive function. Plt. AB at 10. He criticizes the FCE because it does not test the physical effects of prolonged physical activity. A13.

As a pain management specialist, Dr. Upadhyay presumably appreciates the short and long term side-effects of the medications he prescribes and is capable of recognizing when a patient is experiencing disabling cognitive functions due to the medications. Plaintiff speculates that Dr. Bonner and Dr. Upadhyay have not ordered psychological testing to confirm Plaintiff's complaints of cognitive dysfunction because they know her complaints are due to the drugs' side-effects. Plt. AB at 15. Plaintiff's reasoning is flawed because it is just as likely that the reason they have not ordered psychological testing is because they know that she is not significantly cognitively impaired. This is, indeed, the more likely explanation because Dr.

4

Upadhyay, the physician most experienced with pain medication's side-effects, would likely have ordered such a test if he thought Plaintiff was suffering from disabling cognitive dysfunction.

Plaintiff's reliance on *Black& Decker Disability Plan v. Nord*[2] and *Blackely v. WSMW Indus., Inc.*,[3] to support its argument that MetLife abused its discretion by rejecting the opinions of Plaintiff's treating physicians without an objective bases is misplaced. Plt. AB at 8. *Blakely* and *Nord* held that a claim administrator cannot discredit *reliable* evidence from a treating physician. *Nord*, 538 U.S. at 834; *Blakely*, 2004 WL 1739717, *10. In *Blakely*, there were two years of documented disability and treatment records from three physicians that supported Plaintiff's claim of disability. 2004 WL 1739717, *9. Here, Plaintiff relies on two pieces of evidence to support her claim of cognitive dysfunction: 1) Dr. Bonner's three year old statement that Plaintiff was "significantly limited" by her medications; and 2) Dr. Uphadyay's statement that Plaintiff's medications caused her sedation and decreased concentration. As was explained above, neither piece of evidence is reliable to show that Plaintiff suffers from a disabling cognitive dysfunction. Accordingly, MetLife acted within its discretion in discrediting these findings from Dr. Bonner and Dr. Uphadyay.

### 2. The Plaintiff Fails to Show that the FCE Does Not Support MetLife's Finding that Plaintiff is Not Totally Disabled

Plaintiff has failed to show that it was an abuse of discretion for MetLife to rely upon the FCE in making its decision that Plaintiff is not totally disabled. Plaintiff criticizes the FCE because she argues that it does not measure the impact of work on her over a period of time. Plf. AB at 5. Plaintiff's argument is based on Dr. Uphadyay's criticsm of the FCE. Plt. AB at 10;

---

[2] 538 U.S. 822, 834 (2003).
[3] 2004 WL 1739717, *10 (D. Del.)

A13. In making this argument, Plaintiff expects the Court and MetLife to assume that if the FCE did measure the impact of work on Plaintiff over a period of time, the FCE would show that Plaintiff is totally disabled. MetLife was not required to make such an assumption based merely on Plaintiff's speculation and the Court should not either. There is no objective evidence in the record that contradicts the FCE. On the contrary, the FCE is supported by Dr. Uphadhyay's conclusions in the PCEs that Plaintiff was capable of working an eight-hour day with certain limitations (A57) and Dr. Bonner's conclusion that Plaintiff was capable of working a sedentary/light occupation (A144).

Dr. Uphadhyay's criticisms of the FCE in his October 14, 2004 opinion did not indicate that they are based on any objective evidence indicating that Plaintiff is incapable of prolonged occupational activity at a sedentary level. Dr. Uphadhyay did not even explain the contradiction between his criticisms and his recent conclusions in the PCEs which support Plaintiff's ability to work an 8 hour day. If a more appropriate test to evaluate Plaintiff's physical capacity existed, then Plaintiff had the burden to submit the results of this test to support her claim of disability. *Cord*, 362 F.Supp.2d at 486.

Plaintiff's argument that it was MetLife's burden to act affirmatively to disprove her physician's opinions by ordering additional exams or tests is meritless. Plt. AB at 17-18 and n.2; *Cord*, 362 F.Supp. at 486. When a claimant appeals a denial of benefits, the claim administer has no duty to investigate or gather more information about the claimant's claim of disability. *Cord*, 362 F.Supp. at 486. As it is Plaintiff's burden to prove her claim of disability, it is Plaintiff's burden to make a complete administrative record. *See id.* The claim administrator is entitled to rely on the administrative record before it. *Id.* Accordingly, Plaintiff's argument that MetLife should have considered information that was not part of the administrative record is

6

meritless. *Hyatt, II v. Unum Life Insurance Co. of America*, 2001 WL 826551, *2 (D.Del.). MetLife was entitled to rely on the FCE as part of the administrative record and the fact that nothing in the record contradicted the findings of the FCE.

The fact that when the FCE was conducted Plaintiff's pain level increased from a level five on day one to level eight on day two, does not indicate that the FCE was an unreliable test or that Plaintiff is not capable of enduring prolonged sedentary occupational activity. *But see* Plt. AB at 5. Although Plaintiff may be experiencing some pain with her movements, it does not necessarily follow that her pain renders her totally disabled. On the contrary, the FCE indicates that although her pain level increased to a level eight on day two, the Plaintiff's capacity to perform certain physical activities remained relatively the same on day two as they were on day one. A42-46. As the FCE clearly indicated, despite Plaintiff's increased level of pain, she was still capable of performing physical activities that would be required for her to work in a sedentary position.

Plaintiff also criticizes the FCE because it does not address Plaintiff's cognitive abilities and therefore, is not a reliable indicator of Plaintiff's ability to work. Plf. AB at 6, 9, 10. Plaintiff's argument it dependent on her argument that there is objective medical evidence of Plaintiff's cognitive dysfunction. *Id.* at 9, 10, 11. Plaintiff's' argument is meritless because as was explained earlier (*supra* Section C.1.), Dr. Bonner's and Dr. Uphadhyay's statements do not reliably support Plaintiff's claim of cognitive dysfunction.

Also, as the FCE is a physical exam, it is not designed to test cognitive or psychological function. Interestingly, although Plaintiff claims Dr. Uphadyay's opinions support her claim of cognitive dysfunction, he did not criticize the FCE for not addressing her cognitive dysfunction. The Home Visit conducted by the nurse consultant in 2004 was a more appropriate indicator of

7

Plaintiff's cognitive function as the evaluation consisted of an in-person interview of the Plaintiff. A51-55. Plaintiff never mentioned to the nurse that she was experiencing cognitive dysfunction and the nurse did not observe any evidence of it. *Id.*; A217. The nurse consultant's visit combined with the FCE gave a clear picture of Plaintiff's condition, both physically and cognitively.

If Plaintiff believed that she suffered from some cognitive dysfunction that rendered her disabled, then she should have undergone testing of her cognitive function and submitted her test results to MetLife. Plaintiff has provided no objective evidence of cognitive dysfunction much less any evidence that it renders her disabled.

### 3. Plaintiff Has Failed to Show that MetLife's Reliance on the IPC Report Was an Abuse of Discretion

Plaintiff's criticisms of the IPC report (Plt. AB at 7) have no basis in fact or law. First, MetLife was entitled to rely on the IPC report even thought the IPC conducted a paper review and did not exam the Plaintiff. *But see* Plf. AB at 7; *See* Def. AB at 14; *DeLong v. Aetna Life Ins. Co.*, 2006 WL 328348, at *5 (E.D Pa.); *Hoover v. Metropolitan Life Insurance Company*, 2006 WL 343223, *9 (E.D. Pa.); *Gannon v. Metropolitan Life Insurance.*, 360 F.3d 211, 214 (1st Cir. 2004). Secondly, Plaintiff's suggestion that the IPC's decision was preordained by MetLife (Plt. AB at 7) is mere conjecture and is unsupported by the record. Plaintiff can point to nothing in the record to discredit the independence of the IPC. Furthermore, Plaintiff has not shown any precedent which states that an IPC's opinion is inherently unreliable because the IPC is hired by the claim administrator to "rubber stamp" the claim administrator's decision. Particularly in a case where, as here, the heightened standard of review is not applied, there is no basis to second guess the independence of the IPC.

Also, Plaintiff's argument that the IPC did not refute the findings of the examining physicians is incorrect. Plf. AB at 7, 8, 13. The IPC was not obligated to address every single finding from every doctor. The IPC addressed the findings that were material. For example, the IPC considered Dr. Bonner's opinion that Plaintiff's physical capacity was limited by her medications. A217. The IPC noted that Dr. Bonner did not "delineate what type of impairment she has related to her medications" and that "no objective evidence" exists in the record supporting a diagnosis of cognitive dysfunction. A217.

Plaintiff's attempt to distinguish *Hoover v. Metropolitan Life Ins. Co.*, 2006 WL 343223 (E.D. Pa.) fails. Plt. AB at 12. First, Plaintiff's assertion that she has consistently been under the regular care of a pain management specialist is untrue. *Id.* The IPC found that it was unclear whether Plaintiff had continuous treatment for her back pain over the years because she found no treatment records in the administrative record from 1993 to 2001. A217. Second, Plaintiff's argument that the administrative record lacks evidence that Plaintiff's condition has improved is also untrue. Plt. AB at 12. There are several indicators in the record of Plaintiff's improved physical condition. To name only a few, in 1999, Dr. Mousavi found that Plaintiff could not lift any weight and had depression. ML00147. In March 2001, Dr. Mousavi found that Plaintiff no longer had any psychological problems. ML00502. In 2002, Dr. Uphadhyay found that Plaintiff could sit for six hours, stand and walk for two hours within an eight-hour workday. ML00106. Dr. Uphadhyay also found that Plaintiff could frequently lift up to 10 pounds and occasionally lift 11-20 pounds. *Id.*

## **CONCLUSION**

Plaintiff has failed to show that MetLife's decision to discontinue Plaintiff's long-term disability benefits is not supported by substantial evidence in the administrative record. Consequently, Plaintiff has failed to show that MetLife's decision was arbitrary and capricious and this Court should grant MetLife's Motion for Summary Judgment.

**MCCARTER & ENGLISH LLP**

/s/ Tanya Pino Jefferis
Paul A. Bradley (DE ID No. 2156)
Tanya Pino Jefferis (DE ID No. 4298)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware 19899
(302) 984-6300
Attorneys for Defendant
Metropolitan Life Insurance Company

Date: April 24, 2006